1
2
RONALD J. SCHUTZ (admitted *pro hac vice*)
Email: rschutz@robinskaplan.com
PATRICK M. ARENZ (admitted *pro hac vice*)
Email: parenz@robinskaplan.com
RUTH L. OKEDIJI (admitted *pro hac vice*)
Email: rokediji@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:  612–349–8500
Facsimile:   612–339–4181

MICHAEL A. GEIBELSON (STATE BAR NO. 179970)
Email: mgeibelson@robinskaplan.com
**ROBINS KAPLAN LLP**
2049 Century Park E., Suite 3400
Los Angeles, CA 90067
Telephone:  310-552-0130
Facsimile:   310-229-5800

Attorneys for Plaintiffs Denise Daniels and
The Moodsters Company

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Denise Daniels and The Moodsters Company; | Case No. 2:17−cv−04527−PSG−SK |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| The Walt Disney Company; Disney Enterprises, Inc.; Disney Consumer Products and Interactive Media, Inc.; Disney Interactive Studios, Inc. Disney Shopping, Inc.; and Pixar | **Judge:** Hon. Philip S. Gutierrez |
| Defendants. | **Date:**   January 29, 2018<br>**Time:**   1:30 p.m.<br>**Place:**  Courtroom 6A |
| | **Action Filing Date:**  June 19, 2017 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# Table of Contents

**Page**

Introduction.................................................................................................1

Factual Background ....................................................................................2

I.     Denise Daniels is a nationally recognized child development expert.............2

II.    Daniels founded The Moodsters Company to continue her dedication
for children's social and emotional development. ............................................3

III.   One year after Moodsters Co.'s five years of pitches, Disney started
working on Inside Out in 2010, which became one of its most
successful movies of all time. ..........................................................................4

Argument ....................................................................................................5

I.     Moodsters Co. pled a plausible claim for copyright infringement. .................5

     A.    *The Moodsters* characters are protected by copyright. ........................6

          1.    Moodsters Co. has sufficiently alleged that it owns the
copyright in *The Moodsters* characters......................................6

              a.    Moodsters Co. has pled a plausible claim that the
individual Moodster characters are protected by
copyright......................................................................6

              b.    Moodsters Co. has pled a plausible claim that the
ensemble of Moodster characters is protected by
copyright......................................................................9

              c.    Moodsters characters even meet the heightened,
inapplicable test for copyrightability of literary
characters.....................................................................9

          2.    Disney's argument that animated characters are protected
only under "exceptional circumstances" is wrong and
inconsistent with Disney's past representations.........................10

          3.    Disney's case law is procedurally irrelevant to this
motion. .......................................................................................13

B.    The Amended Complaint alleges a plausible claim of substantial similarity. ....................................................................... 13

    1.    Disney ignores the impact of the inverse-ratio rule here.......... 13

    2.    The Amended Complaint sets forth a plausible claim for substantial similarity................................................................ 14

    3.    Disney's strawman arguments do not meet its heavy burden to dismiss this case, and at a minimum involve issues of fact that Disney cannot resolve in its favor on a motion to dismiss. .................................................................. 16

        a.    *The Moodsters* characters are more than the idea of anthropomorphized emotions.......................................... 17

        b.    Moodsters Co.'s selection of particular emotions and a particular number of emotions is original. .......... 19

        c.    Disney's attempts to litigate the use of colors in the two works is improper and irrelevant for this motion.................................................................................. 19

    4.    Other differences cannot negate the substantial similarities set forth in the Amended Complaint..................... 21

II.    Daniels' *Desny* claim is plausible because Daniels disclosed her idea about *The Moodsters* characters to Disney. ................................................. 21

A.    Disney's arguments about the statute of limitations should not be decided as a matter of law on the pleadings because Daniels filed this suit within two years of the theatrical release of *Inside Out*.......................................................................................................... 21

B.    Disney's arguments about publication are factually and legally wrong........................................................................................................ 23

C.    Daniels has alleged a sufficient *Desny* claim based on the substantial similarity between the ideas for the characters and premise for *Inside Out*. ...................................................................... 24

Conclusion ............................................................................................................... 25

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# Table of Authorities

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ....................................................................................... 13

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ......................................................................................... 5

*Bach v. Forever Living Prods., Inc.*,
　473 F. Supp. 1127 (W.D. Wash. 2007) ..................................................... 7, 8, 9, 11

*Baxter v. MCA, Inc.*,
　812 F.2d 421 (9th Cir. 1987) ..................................................................... 13, 21

*Benay v. Warner Bros. Entm't*,
　2012 U.S. Dist. LEXIS 183791 (C.D. Cal Feb. 14, 2012) ........................... 21, 22

*Benay v. Warner Bros. Entm't, Inc.*,
　607 F.3d 620 (9th Cir. 2010) ............................................................. 21, 22, 24

*Blaustein v. Burton*,
　9 Cal. App. 3d 161 (Ct. App. 1970) ................................................................. 22

*Blizzard Entertainment, Inc. v. Lilith Games Co.*,
　149 F. Supp. 3d 1167 (N.D. Cal. 2015) ....................................................... 12, 13

*Blizzard Entertainment, Inc. v. Lilith Games Co.*,
　2017 U.S. Dist. LEXIS 74639 (N.D. Cal. May 16, 2017) ................................. 13

*Cap Co., Ltd. v. McAfee, Inc.*,
　2015 U.S. Dist. LEXIS 83522 (N.D. Cal. June 26, 2015) .................................... 5

*Cavalier v. Random House, Inc.*,
　297 F.3d 815 (9th Cir. 2002) ........................................................................... 14

*DC Comics v. Towle*,
　802 F.3d 1012 (9th Cir. 2015) ........................................................................ 6, 7

*Dezendorf v. Twentieth Century-Fox Film Corp.*,
　99 F.2d 850 (9th Cir. 1938) ............................................................................ 18

*Disney Enterprises, Inc. v. Sarelli,*
   No. 1:16-cv-02340, Dkt. No. 60 (S.D.N.Y. Oct. 13, 2017) ......................... 11, 12

*Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Studies,*
   2016 U.S. Dist. LEXIS 68890 (C.D. Cal. May 25, 2016).................................. 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) .................................................................................. 6, 18

*Feltner v. Columbia Pictures,*
   523 U.S. 340 (1998) ......................................................................................... 14

*Fleischer Studios, Inc. v. A.V.E.L.A. Inc.,*
   772 F. Supp. 2d 1135 (C.D. Cal. 2008)......................................................... 10, 11

*Fun v. Leapfrog,*
   2010 U.S. Dist. LEXIS 14641 (C.D. Cal. Sept. 10, 2010)............................. 8, 15

*Gaiman v. McFarlane,*
   360 F.3d 644 (7th Cir. 2004) ..................................................................... 7, 8, 11

*Gilligan v. Jamco Dev. Corp.,*
   108 F.3d 246 (9th Cir. 1997) ....................................................................... 5, 16

*Green v. Schwarzenegger,*
   1995 U.S. Dist. LEXIS 14031 (C.D. Cal. July 11, 1995) .................................. 23

*Jones v. Johnson,*
   781 F.2d 769 (9th Cir. 1986) ............................................................................... 5

*KSR Int'l Co. v. Teleflex Inc.,*
   550 U.S. 398 (2007) ............................................................................................ 18

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.,*
   676 F.3d 841 (9th Cir. 2012)........................................................ 9, 14, 16, 20, 21

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001) .............................................................................. 19

*Metcalf v. Bocho,*
   294 F.3d 1069 (9th Cir. 2002)................................................................. 9, 13, 16

*Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.,*
   900 F. Supp. 1287 (C.D. Cal. 1995).............................................................. 9, 15

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Midway Mfg. Co. v. Bandai-America, Inc.*,
   546 F. Supp. 125 (D.N.J. 1982)...................................................................9

*NBC Universal Media, LLC v. Superior Court*,
   225 Cal. App. 4th 1222 (Ct. App. 2014) ...............................................22

*Neilson v. Union Bank of Cal.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...................................................5

*North Coast Indus. v. Jason Maxwell, Inc.*,
   972 F.2d 1031 (9th Cir. 1992) ...................................................................6

*Optima Tax Relief LLC v. Channel Clarity, Inc.*,
   2015 U.S. Dist. LEXIS 186829 (C.D. Cal. Aug. 26, 2015) .........................15, 17

*Paramount Pictures Corp. v. Axanar Prods.*,
   2017 U.S. Dist. LEXIS 19670 (C.D. Cal. Jan. 3, 2017)........................7, 8, 9, 16

*Park v. Booth*,
   102 U.S. 96 (1880) .................................................................................18

*Pasillas v. McDonald's Corp.*,
   927 F.2d 440 (9th Cir. 1991) ...................................................................5

*Quirk v. Sony Pictures*,
   2013 U.S. Dist. LEXIS 47954 (N.D. Cal. Apr. 2, 2013)....................................23

*Quirk v. Sony Pictures*,
   2012 U.S. Dist. LEXIS 107362 (N.D. Cal. July 5, 2012) ..................................23

*Roth Greeting Cards v. United Card*,
   429 F.2d 1106 (9th Cir. 1970) ...................................................................6

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990) .........................................................13, 15

*Sheldon v. Metro-Goldwyn Pictures, Corp.*,
   81 F.2d 49 (2d Cir. 1936) .......................................................................20

*Smith v. Jackson*,
   84 F.3d 1213 (9th Cir. 1996) ...................................................................13

*Stacy v. Rederite Otto Danielsen*,
   609 F.3d 1033 (9th Cir. 2010) .................................................................23

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Stewart v. Abend*,
   495 U.S. 207 (1990) ......................................................................................... 12

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) .............................................................. 13, 14, 15, 16

*Teixeira v. City of Alameda*,
   873 F.3d 670 (9th Cir. 2017) .............................................................................. 5

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ............................................................................ 14

*Walt Disney Prods. v. Air Pirates*,
   581 F.2d 751 (9th Cir. 1978) ................................................................... 6, 7, 10

*Warner Bros. v. Columbia Broad. Sys.*,
   216 F2d 945 (9th Cir. 1954) ............................................................................... 9

*Wilder v. CBS Corp.*,
   2013 U.S. Dist. LEXIS 190059 (C.D. Cal. Feb. 13, 2013) ................................ 22

**Statutes**

17 U.S. Code § 302 ................................................................................................ 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 5, 19

Fed. R. Evid. 201 ................................................................................................... 19

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Introduction**

Denise Daniels and her company, The Moodsters Co., expressed an idea that Disney had never done before: an animated entertainment program featuring five single-emotion characters to help children develop their emotional intelligence. Unlike the garden-variety copyright case, Daniels and her team pitched this program and the particularized expression of those characters to the highest levels of Disney—including the director of *Inside Out*, Pete Docter—over the course of four years from 2005 to 2009. One year later, in 2010, Docter and Disney started working on *Inside Out*, which became one of Disney's most successful movies of all time. Now faced with detailed, concrete, and above all, plausible allegations of copying, Disney moves to dismiss this case through a mini-trial—relying on over 200 exhibits comprising over 1,300 pages. But this Court does not decide facts in copyright cases. Juries do. None of Disney's arguments warrant any relief, especially on the pleadings.

Disney's first argument that *The Moodsters* characters are not protected by copyright is based on a misstatement of the law. The law requires far less than the "exceptional circumstances" or high bar that Disney argues for in this motion. In 1978, for instance, Disney helped solidify the law that animated characters, like Mickey Mouse, are protected by copyright under a lesser standard than literary characters, like James Bond. And just weeks ago when Disney enforced its copyrighted characters in a different federal district court, Disney made no mention of this purportedly high standard. The fact is *The Moodsters* characters satisfy the three-part test set forth by the Ninth Circuit. At a minimum, challenges to originality are issues of fact which Disney cannot resolve in its favor on the pleadings.

Nor is Disney's argument about substantial similarity any different. To start, Disney is silent on controlling precedent about the inverse-ratio rule, which requires a lower standard of similarity when high degree of access to the protected work is

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

shown. Here, Disney's access—presumed true and not even denied by Disney—reached executives, decision makers, and the director of *Inside Out*. Disney may want to ignore this lowered standard and these facts; this Court may not. The Amended Complaint sets forth detailed and specific expressive elements that, individually and collectively, set forth a claim for copyright infringement. If there was any doubt, the extrinsic test often requires expert testimony, which Moodsters Co. should have an opportunity to provide on a proper record.

Finally, Disney's arguments about Daniels' *Desny* claim warrant little attention. All three arguments on this claim present clear issues of fact. First, the Ninth Circuit and this Court have already rejected Disney's argument that the statute of limitations begins to run as a matter of law before the release of a motion picture in theaters. Second, Disney's arguments about publication improperly attempt to draw inferences in Disney's favor, and in any event fall far outside the lone unpublished case (decided on summary judgment) that it relies on. Finally, there is no merit to Disney's suggestion that Daniels' *Desny* claim cannot cover the premise and characters of *Inside Out*.  Daniels and Moodsters Co. respectfully requests the Court deny Disney's motion in full, so this case can addresss the merits on a full record.

## Factual Background

### I.     Denise Daniels is a nationally recognized child development expert.

Denise Daniels has over 40 years of experience promoting children's social and emotional development. *E.g.*, Am. Compl. ¶¶26-35. In 1986, Daniels co-founded the national non-profit National Childhood Grief Institution. *Id.* ¶27. In that role and through her work, she helped children cope with grief and loss, including with the U.S. Military during Operation Desert Storm, and through events associated with Columbine, Hurricane Katrina, and September 11th, among other tragedies and national disasters. *Id.* ¶¶28-29. Over 15 million copies of her First Aid for Feelings workbook have been distributed to school children. *Id.* ¶28. Based on

- 2 -

Daniels' expertise, she became the first parenting expert for NBC's Today show in 1991. *Id.* ¶29. Pfizer retained Daniels as a consultant to develop a program—which has been used in 200 pediatric units across the U.S.—to help pediatric patients cope with emotions issues. *Id.* ¶34. She has also published nine children's self-help books. *Id.* ¶35. In short, Daniels has dedicated her entire career to the development of emotional wellbeing in children.

## II. Daniels founded The Moodsters Company to continue her dedication for children's social and emotional development.

Daniels conceived of *The Moodsters* characters to foster emotional intelligence in children. *The Moodsters* starred five color-coded anthropomorphic characters, each individually representing a single emotion— happiness (yellow), sadness (blue), anger (red), fear (green), and love (pink)—inside an abstract world *inside a child*. *Id.* ¶37, Ex. 2. Daniels recruited industry-leading talent to execute her vision for *The Moodsters*. Lisa Simon and Louise Gikow, for instance, served as co-executive producers, bringing 15 Emmy Awards and experience developing successful Disney and PBS shows (*e.g.*, Sesame Street). *Id.* ¶¶40-41. A.J. Dewey was the creative director, whose past clients included Disney, Sesame Street, and Marvel, among others. *Id.* ¶42. Finally, Professor Marc Brackett, currently the Founder and Director of the Yale Center for Emotional Intelligence, served as a curriculum advisor to ensure that The Moodsters was based on a science and evidence-based curriculum. *Id.* ¶43-48.

Daniels and her team at Moodsters Co. developed pitch materials, which took two general forms: (1) the Moodsters Bible, which outlines the television series' characters, setting, and other elements, and (2) an animated full-length pilot episode. *Id.* ¶¶48-49, Exs. 2-7. Precisely because emotions are an abstract concept which no one has ever seen, these materials detail the characters' original, expressive characteristics. *See, e.g., id.* ¶¶52-58; 146-47; 170-71; 184-85; 198-99; 211-12. The anger character, for example, designated by the color red, explodes

- 3 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

with sparks when she becomes furious. *E.g., id.* ¶56.

Daniels and Moodsters Co. then pitched The Moodsters to Disney *every* year from 2005 through 2009. *Id.* ¶60-72. For instance, Moodsters Co. had multiple meetings and discussions with Nancy Kanter and Paula Rosenthal at Disney Junior (formerly Playhouse Disney). *Id.* ¶65-66. Thomas Staggs, the CFO of The Walt Disney Company, received pitch materials about The Moodsters, who also then shared those materials with Rich Ross. In 2009, Ross became Chairman of Walt Disney Studios, which distributes films under various banners including Walt Disney Pictures and Pixar. *Id.* ¶¶67-69. Even Roy E. Disney, the son and nephew of the founders of The Walt Disney Corporation had access to The Moodsters. *Id.* ¶68. Finally, Daniels had a detailed telephone conversation with Pete Docter. *Id.* ¶71.

**III.   One year after Moodsters Co.'s five years of pitches, Disney started working on Inside Out in 2010, which became one of its most successful movies of all time.**

Disney had never before *Inside Out* released an animated feature that anthropomorphized emotions as individual characters. *Id.* ¶¶ 96-105. In fact, such a premise clashed with Disney's original approach to multi-dimensional characters that made Disney so famous. *Id.* ¶104. In 2010, nevertheless, Disney and—specifically Docter—started working on Disney's first ever film with single-emotion characters. *Id.* ¶¶73, 96. Docter has since described the purported challenges he encountered in the development, including the challenge in how to express the idea of an abstract nature of emotions; Disney's empty experience with such works in the past; as well as the range of options, including the number of emotions to use as characters, and the particular emotions to select. *Id.* ¶¶74-79. Disney ultimately settled on copying *The Moodsters*' number of five emotions as characters, and four of the five specific emotions. *Id.* ¶¶80-81. Disney released *Inside Out* in theaters on June 19, 2015. *Id.* ¶82. Disney has generated revenue in excess of $1 billion for *Inside Out*. Daniels filed her original Complaint on June 19, 2017, and an Amended Complaint on September 20, 2017, which joined Moodsters

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Co. as a co-plaintiff to assert five copyright claims.[1]

2                                **Argument**

3          Disney's motion fails to apply the law governing its motion to dismiss. "The

4    motion to dismiss for failure to state a claim is viewed with disfavor and is rarely

5    granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

6    Moodsters Co. does not need to prove its case in the Complaint. *Cap Co., Ltd. v.*

7    *McAfee, Inc.*, 2015 U.S. Dist. LEXIS 83522, at *3 (N.D. Cal. June 26, 2015).

8    Indeed, Moodsters Co. must only allege a *plausible* claim, even if it is not probable.

9    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court presumes all facts alleged

10   in the Complaint to be true, and resolves all reasonable inferences in Moodsters

11   Co.'s favor. *Teixeira v. City of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). "In

12   reviewing the sufficiency of a complaint, '[t]he issue is not whether the plaintiff

13   will ultimately prevail but whether the claimant is entitled to offer evidence to

14   support the claims.'" *Gilligan*, 108 F.3d at 248 (internal citation omitted). Perhaps

15   most importantly, and which Disney errs by ignoring, "[a]ny weighing of the

16   evidence is inappropriate on a 12(b)(6) motion." *Jones v. Johnson*, 781 F.2d 769,

17   772 n.1 (9th Cir. 1986); *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1151

18   (C.D. Cal. 2003) ("[T]he court may not weigh evidence in deciding a motion to

19   dismiss."); *Glen Holly Entm't, Inc. v. Tekronix, Inc.*, 100 F. Supp. 2d 1086, 1089

20   (C.D. Cal. 1999) ("On a motion to dismiss, the Court evaluates only the legal

21   sufficiency of a complaint and not the weight of the evidence supporting it."). The

22   Amended Complaint, read in full, sets forth plausible claims.

23   **I.     Moodsters Co. pled a plausible claim for copyright infringement.**

24         A claim for copyright infringement requires that the plaintiff prove (1) its

25   ownership of the copyright in a particular work, and (2) the defendant's copying of

26   _____

27   [1] Daniels is the owner of the idea behind *The Moodsters*. Am. Comp. ¶112. Her
     company, Moodsters Co., is the owner of all copyrights in *The Moodsters*. *Id.*
28   ¶¶134-36.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

a substantial, legally protectable portion of such work. *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991). Moodsters Co. has pled both elements. Disney has no basis for dismissal on this record.

### A. *The Moodsters* characters are protected by copyright.

#### 1. Moodsters Co. has sufficiently alleged that it owns the copyright in *The Moodsters* characters.

The Amended Complaint sufficiently alleges that Moodsters Co. owns a valid copyright in *The Moodsters* characters. "Under our copyright law, the registration of the copyright certificate itself establishes a *prima facie* presumption of the validity of the copyright in a judicial proceeding." *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992). Moodsters Co. pled it has registered with the United States Copyright Office *The Moodsters* materials. Am. Compl. ¶¶131-132. Ownership in the copyright of *The Moodsters* includes "all the copyrightable component parts of the work copyrighted," such as animated characters. *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 753 (9th Cir. 1978).

Nothing more is required of Moodsters Co. at this stage of the case to plead ownership of a copyright. Originality is the touchstone of copyright law. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). "[T]he requisite level of creativity is extremely low." *Id.* "The originality necessary to support a copyright merely calls for independent creation, not novelty." *Roth Greeting Cards v. United Card*, 429 F.2d 1106, 1109 (9th Cir. 1970). The Moodsters Amended Complaint far exceeds this low standard. *See, e.g.*, Am. Compl. ¶¶36-38; 44-59; 75-81; 95-105; 145-62; 167-75; 181-86; 194-202; 209-16.

##### a. Moodsters Co. has pled a plausible claim that the individual Moodster characters are protected by copyright.

The detailed allegations in the Amended Complaint are sufficient to state a plausible claim that the five identified characters in *The Moodsters* are protected by copyright. The Ninth Circuit applies a three-part test to determine whether animated

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

characters are copyrightable: First, the character must generally have "physical as well as conceptual qualities." Second, the character must be "sufficiently delineated" to be recognizable as the same character whenever it appears. Third, the character must be "especially distinctive" and "contain some unique elements of expression." *DC Comics v. Towle*, 802 F.3d 1012, 1074 (9th Cir. 2015). More generally, the case law on characters focuses on whether the character is more than just a "stock character." *See, e.g., id.* at 1022 ("[The Batmobile] is not merely a stock character."); *Bach v. Forever Living Prods., Inc.*, 473 F. Supp. 1127, 1136 (W.D. Wash. 2007) (finding anthropomorphized seagull copyrighted because "[h]e is not a stock character"); *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004) (explaining that character with specific name and specific appearance was not a stock character); *Paramount Pictures Corp. v. Axanar Prods.*, 2017 U.S. Dist. LEXIS 19670, at *11 (C.D. Cal. Jan. 3, 2017) (affording copyright protection because character's identity sets him apart from a stock spaceship officer).

The Amended Complaint sets forth facts showing that the individual Moodster characters meet this three-part test, and they are assuredly not stock characters. First, all the Moodster characters "appeared graphically" in *The Moodsters* Bible and television pilot, which meets the first element because they are "not a mere literary character." *See DC Comics*, 802 F.3d at 1021 (quoting *Air Pirates*, 581 F.2d at 755); *e.g.*, Am. Compl. ¶¶53-58; Exs. 3-4. Second, *The Moodsters* characters are "sufficiently delineated," so as to be recognizable as the same character whenever they appear because they are identified by individual colors and emotions. *See id.*; *e.g.*, Am. Compl. ¶¶53-58, 168-71; 182-85; 195-99; 210-12; Exs. 3-4. In other words, there is no confusion which character is which when one comes on scene. Finally, each character is "especially distinctive," as opposed to "a stock character such as a magician in standard magician garb." *DC Comics*, 802 F.3d at 1021; Furniss Decl. ¶¶22-23. Far from stock characters, each character is distinguished by individual characteristics such as a signature color and

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

particular behaviors (associated with a particular, respective emotion).

Cases that focus on the issue of copyrightability of characters confirm this conclusion. In *Bach*, for instance, the district court determined on summary judgment that an anthropomorphized seagull character was copyrighted because the character was well-defined as "an ordinary seagull named Jonathan Livingston who is determined to fly higher and faster, who transcends his beginnings, and who teaches others to do the same." 473 F. Supp. 2d at 1136. The character appeared in one novel, and that "his character has not been delineated over time is inconsequential." *Id.* This Court applied a similar analysis and reached the same conclusion on a summary judgment motion in *Fun v. Leapfrog*, 2010 U.S. Dist. LEXIS 14641 (C.D. Cal. Sept. 10, 2010). *Leapfrog* dealt with characters on flash cards to teach phonics to children. *Id.* at *1.The district court concluded that "a yellow letter 'I' dripping with green slime to illustrate the word 'icky'" was a copyrighted character. *Id.* at *29-30. The analysis is particularly relevant to this case. Just as the range of alternatives for expressing this idea, such as "a character stepping in gum, being covered with bugs, eating a worm, or falling into a trashheap," supports the conclusion that green slime on an "i" for the "icky" character is protectable expression, so are the expressions of *The Moodsters* characters. *See, e.g.*, (setting forth various alternative ways to express characters representing emotions) ¶¶152-154 (live action abstractions; animals; real-world phenomena); ¶¶155-58 (extensive range of emotions and number of emotions to use); ¶¶159-61 (expressing emotions without color or different uses of color).

The Seventh Circuit, in *Gaiman*, found a comic-book character copyrighted based on a specific name and a specific appearance alone. 360 F.3d at 660.  "No more is required for a character copyright." *Id.*

///

///

///

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**b.** **Moodsters Co. has pled a plausible claim that the ensemble of Moodster characters is protected by copyright.**

In no more than three sentences, Disney attempts to dismiss an entire claim of copyright infringement. D. Br. at 11. It offers no support for its broad-brush stroke position that an ensemble of characters—which, as stated above are individually protected by copyright—cannot be copyrighted. To the contrary, in *Paramount Pictures*, this Court found groups of characters to be protected by copyright. 2017 U.S. Dist. LEXIS 19670, *12-13. For instance, the "Klingons" are "militaristic, alien species" with "distinctive physical features including ridged foreheads, dark hair and skin, and upward sloping eyebrows;" and the "Vulcans" suppress "emotions in favor of logic and reason" and have "pointed ears and upswept eyebrows." *Id.*; *see also Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 151 (D.N.J. 1982) (finding grouping and sequence of Pacman characters protected by copyright). More general, but highly relevant, is the black letter law that an original combination of elements that expresses an idea falls within the scope of copyright protection. *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012) ("Original selection, coordination, and arrangement of unprotectible elements may be protectable expression."); *Metcalf v. Bocho*, 294 F.3d 1069, 1074 (9th Cir. 2002). Here this principle applies with even greater force because each character is individually copyrightable, and so the combination of those unique characters only further adds to the originality and copyrightability. *See, e.g.*, Am. Compl. ¶¶145-62.

**c.** **Moodsters characters even meet the heightened, inapplicable test for copyrightability of literary characters.**

The Amended Complaint sets forth a plausible claim that *The Moodsters* characters, individually and as an ensemble, are protected by copyright even under the heightened standard for literary characters. Under the Sam Spade test, a literary character may be protectable if he is the "story being told," and not just a "mere

- 9 -

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

chessman in the game of telling the story." *Warner Bros. v. Columbia Broad. Sys.*, 216 F2d 945, 950 (9th Cir. 1954); *see also Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.,* 900 F. Supp. 1287, 1295 (C.D. Cal. 1995). Here, *The Moodsters* characters—*i.e.*, five single-emotion characters living within a child—*is* the story being told in the television program. *See Bach*, 473 F. Supp. at 1136; Furniss Decl. ¶24.

### 2. Disney's argument that animated characters are protected only under "exceptional circumstances" is wrong and inconsistent with Disney's past representations.

Disney is wrong to contend that such a high bar exists to copyright animated characters. In *Walt Disney Products v. Air Pirates*, the Ninth Circuit explained that while *literary* characters "ordinarily are not copyrightable," the same is not true for *animated* characters because they have "physical as well as conceptual qualities" and therefore they are "more likely to contain some unique elements of expression." 581 F.2d 751, 755 (9th Cir. 1978). The court reached this conclusion based on Disney's dramatic advocacy—in support of copyright protection of *twenty-one* Disney characters[2]—on this point:

> It cannot be gainsaid that the Courts of the United States have *long recognized* and *afforded protection* to the creators of fictional characters, and that in each instance the Courts have recognized that characters are often the most valuable portion of the particular works or properties of which they are a part.
>
> ***
>
> The critical fact is that we are *not* here concerned with a character (e.g. Sam Spade) developed in a *work of literature*. We are rather dealing with distinctive depictions created by drawings. The identification of the figures developed by those drawings transcends the works (e.g. comic books) in which they appear.
>
> ***
>
> It is *fundamental to recognize* the difference between literary and cartoon characters. . . . A failure to recognize such basic differences results in the

---

[2] *Air Pirates*, 581 F.2d at 753 n.5.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    kind of *confused* and *inconsistent case analysis* reflected in Appellant's
2    Brief.

3    *Walt Disney Productions v. The Air Pirates, et al.*, Case No. CA-75-3116, filed on

4    Feb. 17, 1976 (Arenz Decl. Ex. A). Disney's argument attacking *The Moodsters*

5    characters suffers from the same confusion and inconsistent analysis that it

6    chastised the Appellant for in *Air Pirates*.

7    Nor does *Air Pirates* stand alone. This Court has applied the same analysis in

8    *Fleischer Studios, Inc. v. A.V.E.L.A. Inc*.: "Generally, literary characters are entitled

9    to somewhat limited copyright protection; however, *far greater protection* has been

10   afforded cartoon characters." 772 F. Supp. 2d 1135, 1144 (C.D. Cal. 2008)

11   (emphasis added). Disney even agrees with such broad copyright protection of

12   characters when it enforces copyrights for its characters. In *Disney Enterprises, Inc.*

13   *v. Sarelli*, for instance, Disney represented to the district court that copyright

14   protection for characters was "longstanding" and broad. No. 1:16-cv-02340, Dkt.

15   No. 60, at 19-21 (S.D.N.Y. Oct. 13, 2017) (Arenz Decl. Ex. B). To make this point,

16   Disney relied on *Gaiman* for the expansive proposition that "a character []has a

17   specific name and a specific appearance . . . [n]o more is required for a character

18   copyright." *Id.* at 21 (modifications in original) (quoting 360 F.3d at 660). At no

19   point in its brief in *Sarelli*—filed within weeks of its motion to dismiss this case—

20   did Disney contend that characters are copyrightable only in "exceptional

21   circumstances" or there exists the high bar that it advocates for here.

22   Disney also errs when it suggests that a copyright only extends to a character

23   that has existed for decades. While longstanding characters like James Bond,

24   Batman, and Godzilla are protected by copyright, that does not mean that *only*

25   characters which have existed for similar lengths of time are copyrightable. In

26   *Fleischer Studios*, for instance, the Court determined that the Betty Boop character

27   was copyrighted once the specific qualities of the character "were sufficiently

28   fixed" by July 1931—a time before the character even adopted "Betty Boop" as her

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

name. 772 F. Supp. 2d at 1147.[3] Thus, while Betty Boop has been around for decades, the copyrightability was established based on the character's creation and irrespective of the character's longstanding existence. *See, e.g., Bach,* 473 F. Supp. at 1136 ("the fact that his character has not been delineated *over time* is *inconsequential*") (emphasis added). More fundamentally, Disney's argument is at odds with the Copyright Act because a copyright term begins "from *creation*." 17 U.S. Code § 302. This statute belies Disney's argument that a copyright on a character only exists if the character has been around for years *after* its creation.

There is something distasteful, if not disingenuous, about Disney's efforts to defend allegations of its own copying by arguing that smaller companies' characters can only be protected by "exceptional circumstances." If anything, copyright law is meant to extend more protection for individual artists and small companies, like Daniels and Moodsters Co., than mega corporations like Disney: "The limited monopoly granted to the artist is intended to provide the necessary bargaining capital to garner a fair price for the value of the works passing into public use." *Stewart v. Abend*, 495 U.S. 207, 229 (1990). Disney was once a small company too, and would not exist today but for broad copyright protection of animated characters. In its 2017 10-K filing with the Securities and Exchange Commission, Disney represented that the book value of its "Intangible assets Character/franchise intangibles and copyrights" is **$5.8 billion**.[4] Arenz Decl. Ex. C. Disney, moreover, is as litigious as any company in the enforcement of its copyrighted characters, such as when Disney sued the Academy Awards for a short, trivial skit at the Oscars which included Snow White. Arenz Decl. Ex. D-1 & D-2; *see also Disney*

---

[3]  This also rebuts Disney's argument that the names of the Moodsters characters matter. *Cf.* D. Br. at 9-10.

[4] This book value likely only covers such assets that Disney purchased (i.e., Marvel), and not assets that it developed (i.e., Mickey Mouse). The total value of all Disney's copyrighted characters is expected to be significantly higher.

*Enterprises*, No. 1:16-cv-02340, Dkt. No. 1. Disney is also famous for aggressively pursuing and obtaining copyright term extensions every time Disney's copyright on the Mickey Mouse character has been set to expire. Am. Compl. ¶126. But the net effect of Disney's argument here is that Disney would be free to copy the characters verbatim without consequence. Such a perverse result neither fits the policy nor the letter of copyright law.

### 3.    Disney's case law is procedurally irrelevant to this motion.

Disney relies on ten cases for its argument about the copyrightability of characters. D. Br. at 8-11. Only *one* of those cases—*Blizzard Entertainment, Inc. v. Lilith Games Co.*—involved a motion to dismiss. The district court dismissed the complaint in *Blizzard*, with leave to amend, because of the vague and conclusory allegations of copyright infringement based on "dozens of characters" from the accused video game. 149 F. Supp. 3d 1167, 1174-75 (N.D. Cal. 2015). Such generality bears no resemblance to the detailed nature of the Amended Complaint in this case. In any event, the plaintiff in *Blizzard* amended its complaint to add further detail, and the district court later denied summary judgment. *Blizzard*, 2017 U.S. Dist. LEXIS 74639 (N.D. Cal. May 16, 2017).

### B.    The Amended Complaint alleges a plausible claim of substantial similarity.

### 1.    Disney ignores the impact of the inverse-ratio rule here.

Disney's brief is silent on the controlling case law about the inverse-ratio doctrine. Under the inverse-ratio rule, courts "require a lower standard of proof on substantial similarity when a high degree of access is shown." *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). The reduced burden is "commensurately lowered" with the high degree of access. *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004); *see also Smith*, 84 F.3d at 1218. This Court may not ignore, as Disney has, the effect this lowered standard of proof has for this dispositive motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Ninth Circuit has reversed a

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

number of *summary judgment* decisions while taking the application of the inverse-ratio rule into account. In *Baxter v. MCA, Inc.*, for instance, the Ninth Circuit reversed a finding of summary judgment "in light of the fact that defendants' concession of access may have lowered the quantum of proof required for a jury to find substantial similarity, had there been a trial." 812 F.2d 421, 425 (9th Cir. 1987); *see also Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990) (reversing summary judgment, and discussing importance of inverse-ratio rule); *Metcalf*, 294 F.3d at 1075 (reversing summary judgment, explaining that copyright owner's case was "strengthened considerably" by the concession of access).

The access alleged in the Amended Complaint is as extensive as it gets. Disney's executives and decision makers who had access to *The Moodsters* materials include: Thomas Staggs (CFO), Docter (director of *Inside Out*), Rick Ross (Chairman of Walt Disney Studios during initial development of *Inside Out*), and Roy E. Disney (son and nephew of Disney founders). Am. Compl. ¶¶7, 60-72. This extensive access commensurately lowers Moodsters Co.'s standard for proving substantial similarity, and serves as a threshold basis for denying Disney's motion.

### 2.    The Amended Complaint sets forth a plausible claim for substantial similarity.

The merits of Moodsters Co.'s five copyright infringement claims are ill suited for a motion to dismiss. Substantial similarity comprises an extrinsic and intrinsic test. The intrinsic test is reserved exclusively for the jury. *Swirsky*, 376 F.3d. at 845. The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria. *Id.*; *L.A. Printex*, 676 F.3d at 848. This test includes factual determinations. *See*, *e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (applying clear error standard for review of "factual determinations regarding extrinsic test"). Such factual determinations are improper to resolve on a motion to dismiss; indeed, the Seventh Amendment undisputedly applies to copyright actions. *See*, *e.g.*, *Feltner v.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Columbia Pictures*, 523 U.S. 340, 348-49 (1998) ("Before the adoption of the Seventh Amendment . . . this country granted copyright owners causes of action for infringement . . . before juries."). The Ninth Circuit has cautioned against granting summary judgment on the issue of substantial similarity. *See, e.g., Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (explaining that summary judgment is "not highly favored" on issue of substantial similarity). Granting a motion to dismiss on the pleadings based on "insubstantial" similarity is likewise inappropriate. This Court may *not* decide the extrinsic test based on "its subjective determination of similarity." *Shaw*, 919 F.2d at 1359.

Moodsters Co. has met its burden to state a plausible claim that far surpasses the extrinsic test. Here, the Amended Complaint identifies expressive, protectable elements, which establish that Moodsters Co.'s infringement claims are not based merely on Disney's use of the idea of anthropomorphized emotions as characters in *Inside Out*. The Amended Complaint, for instance, details expressive characteristics found in *The Moodsters*, including the ensemble selection of five characters associated with single emotions, including happiness, sadness, anger, and fear, which are each specific genders, designated by a core color, and which reside inside a child. *See, e.g.*, Am. Compl. ¶146. Each individual character includes further particularized expressive elements, such as the anger character's explosions from the head, the leadership attributes of the happy character, the slumping posture of the sadness character, and the covering/protecting body tendencies of the fear character. *See, e.g., id.* ¶¶160-61; 168-70; 182-84; 195-98; 210-11. The Amended Complaint further alleges that *Inside Out*'s characters meet each of these expressive elements. *See, e.g., id.* ¶¶163; 177; 190; 205; 219.

Nothing more is required from Moodsters Co. to state a plausible claim for copyright infringement. *See, e.g., Optima Tax Relief LLC v. Channel Clarity, Inc.*, 2015 U.S. Dist. LEXIS 186829, at *12 (C.D. Cal. Aug. 26, 2015) (denying motion to dismiss because complaint identifies "specific expressive elements and

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

articulable similarities between two works is sufficient to state a plausible claim").[5]

Indeed, a final determination on the merits of the extrinsic test often requires expert testimony. *Swirsky*, 376 F.3d at 845; *Metro-Goldwyn-Mayer*, 900 F. Supp. at 1297. Moodsters Co. anticipates offering such expert analysis from Professor Maureen Furniss, a preeminent animation historian at the prestigious CalArts, who expects to opine on the expressive elements above in *The Moodsters* and *Inside Out* characters, as set forth by the Court's Scheduling Order and Federal Rules of Civil Procedure. Furniss Decl. ¶¶1-9, 25-29; *see also Swirksy*, 376 F.3d at 845 (finding extrinsic evidence test met if expert testimony addresses similarity in protected elements of the work). Disney's motion should be denied, and this case should proceed to discovery. *Gilligan*, 108 F.3d at 248 ("In reviewing the sufficiency of a complaint, '[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'").

### 3.   Disney's strawman arguments do not meet its heavy burden to dismiss this case, and at a minimum involve issues of fact that Disney cannot resolve in its favor on a motion to dismiss.

Disney failed to meet its burden to prove that Moodsters Co.'s *five* copyright infringement claims all fail as a matter of law. Indeed, Disney does not even address each individual claim. Nor does it address all the expressive elements set forth in the Amended Complaint, or the totality of these elements. *See, e.g., Metcalf*, 294 F.3d at 1074 (reversing summary judgment because "infringement can 'be based on original selection and arrangement of unprotected elements'"); *L.A. Printex*, 676 F.3d at 849 ("Original selection, coordination, and arrangement of

---

[5] These facts would even surpass the standard for overcoming summary judgment on this issue. *Swirsky*, 376 F.3d at 844 ("If [the copyright owner] present[s] 'indicia of a sufficient disagreement concerning the substantial similarity of [the] two works,' then the case must be submitted to a trier of fact."); *Leapfrog*, 2010 U.S. Dist. LEXIS 146641 at *27.

unprotectible elements may be protectable expression."); *Paramount Pictures*, 2017 U.S. Dist. LEXIS 19670 at *10 ("the court should not overzealously disregard unprotectable elements and 'blind [itself] to the expressiveness of their ensemble'") (internal citation omitted). Instead of addressing the full scope of allegations and the law, Disney presents reductionist strawman arguments that warrant no relief.

### a. *The Moodsters* characters are more than the idea of anthropomorphized emotions.

Disney's attempts to liken this case to raisins, bacteria, and eggs misses the point. D. Br. at 13 n.3. We all know what those tangible items look like. That is not true with emotions. The Director of *Inside Out* conceded as much:

> The idea [for *Inside Out*] was rather abstract, but in my enthusiasm, I didn't realize *just how **difficult** it would be to make it concrete*. Most of our films had somewhere to start: bugs, fish, robots . . . even our monsters were based on some combination of animals. *But what do **emotions** look like*? Or abstract thought? . . . Here we had nothing to measure against, *nothing **concrete*** to tell us when we'd got it right.

Am. Compl. ¶76. Such an admission dooms Disney's argument here—on the pleadings—that the particularized expressive elements that shape both *The Moodsters* and *Inside Out* characters were generic and not original.

Disney's remaining arguments are wrong, and at most an issue of fact. Disney's "angel" and "devil" depictions are not emotions. Nor do the expressive elements set forth in the Amended Complaint include the identifiable expressive features in those images—*i.e.*, devil horns and pitch fork, halo and wings, and miniaturized versions of the underlying character. *Id.* at 13. The same is true for the works identified in the Amended Complaint. *Id.* at 14. None of *Reason and Emotion*, *Cranium Command*, *My Poison Berry Brain*,[6] and *Herman's Head* represent any emotions, let alone the particular emotions used in *The Moodsters*.

---

[6] This movie was released in 2015, moreover, ten years after *The Moodsters*.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    *See* Furniss Decl. ¶27-28.

2          Even more fundamentally for purposes of this motion, Disney's attacks on

3    the originality of *The Moodsters* is an issue of fact—and one the jury should

4    resolve, not this Court on the pleadings. "[T]he question of originality in copyright

5    law 'is one of fact, not of law; one that may not be disposed of upon a motion to

6    dismiss, but which must be established by proof.'" *Optima*, 2015 U.S. Dist. LEXIS

7    186829, at *9; *Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy*

8    *Studies*, 2016 U.S. Dist. LEXIS 68890, at *12-13 (C.D. Cal. May 25, 2016); *see*

9    *also Dezendorf v. Twentieth Century-Fox Film Corp.*, 99 F.2d 850, 851 (9th Cir.

10   1938) ("we are confronted with a 'nice question of originality,' which is one of fact,

11   not of law; one that may not be summarily disposed of upon a motion to dismiss,

12   but which must be established by proof.").[7] This subject is a clear issue for fact and

13   expert discovery, particularly as single-emotion characters have never been done

14   before at Disney—the most successful entertainment company in the world—nor

15   anywhere else identified in Disney's motion. *See* Am. Compl. ¶¶96-105, 149-152;

16   Furniss Decl. ¶25-29; D. Br. at 12-14.[8]

17   _____

18   [7] Disney also ignores the low standard for establishing originality: "Originality does

19   not signify *novelty*; a work may be original even though it closely resembles other

     works so long as the similarity is fortuitous, not the result of copying." *Feist*, 499

20   U.S. at 345 (emphasis added). Even then, patent law—which does focus on novelty—

21   has long recognized that novelty does not require inventing from scratch. *See, e.g.,*

     *Park v. Booth*, 102 U.S. 96, 102 (1880) ("Modern inventions very often consist

22   merely of a new combination of old elements or devices, where nothing is or can be

23   claimed except the new combination."); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398,

     418-19 (2007) ("This is so because inventions in most, if not all, instances rely upon

24   building blocks long since uncovered, and claimed discoveries almost of

25   necessity will be combinations of what, in some sense, is already known.").

26   [8] Disney argues the "idea of representing competing aspects of a person's psyche or

27   personality as characters residing in the person's head" is a non-copyrightable idea

     seen in other works and is "in the public domain." D. Br. at 14. But the use of

28   characters representing single-emotions is a more particular expression of such a

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

### b. Moodsters Co.'s selection of particular emotions and a particular number of emotions is original.

Moodsters Co. does not claim to have "invented" the emotions used by *The Moodsters* and *Inside Out* characters. However, the specific number of single-emotion characters (5) and the particular emotions used for each character is original. The Amended Complaint sets forth a detailed factual background confirming the originality and multitude of options that Moodsters Co. and Disney had available to them. *See, e.g.*, Am. Compl. ¶¶77-81, 155-58. For example, Disney considered a range of single-emotion characters from three to twenty-seven based on disagreement in the scientific community. *Id.* ¶¶78-79, 156. Ultimately, Disney copied Moodsters Co.'s selection of five characters. *Id.* ¶80. The selection of particular emotions was similarly original. Disney publicly stated it considered emotions much different from those used by *The Moodsters*. *E.g., id.* ¶79. But here again, Disney settled on copying four of the five same emotions used by *The Moodsters*. *E.g., id.* ¶81. Disney's lawyers' arguments now, years later, that the number and particular emotions selected by Moodsters Co. and Disney lack originality should be given no weight.

### c. Disney's attempts to litigate the use of colors in the two works is improper and irrelevant for this motion.

Disney's arguments about the use of colors demonstrates how far off the rails its motion to dismiss has travelled. The only materials that this Court may consider on a Rule 12(b)(6) motion are (1) documents that are properly submitted as part of the complaint, (2) documents relied on in the complaint, and (3) matters of public record of which the court may take judicial notice under Federal Rule of Evidence

---

general idea, not part of the other works cited by Disney. The more detailed character-related expressions discussed in the Amended Complaint as being seen in *The Moodsters* and *Inside Out* are also not simply the generalized "idea" Disney articulates.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

201. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Here, Disney relies on ten separate works set forth in "figures" without even providing those works to the Court. Nor are these works, except for a webpage with a purported reprint of a color wheel, part of the 240 exhibits totaling more than 1,300 pages, of which Disney requests this Court take judicial notice. Dkt. No. 33. Disney's arguments not only are contrary to allegations in the pleading, Am. Compl. ¶¶ 159-161, which must be accepted as true, but raise factual issues. Disney is not entitled to trial by motion.

Disney's improper arguments are more than a formality. To start with the obvious, none of the works Disney marshalled pertains to single-emotion animated characters. Nothing in Disney's arguments required, as a scene that "must be done," that the *Inside Out* characters associate with a single color. A cursory review of the materials Disney cites in it motion just makes clear that Disney's particular color choices also is a subject for fact and expert discovery Whether it signifies copying or simple use of "convention" should not be resolved without a full record and an analysis of authoritative works, and not just snippets of cover images or excerpts from the Internet.[9] In fact, Disney's arguments underscore the importance and originality of the selection and identification of the five emotions set forth in the section above. For instance, it is unclear how Disney would have designated a core color to the twenty-seven different characters they considered. And Disney leaves out of its brief what color is associated with awe, schadenfreude, surprise, among other emotions Disney considered but did not use. The use of the selected colors for the five Moodsters characters, individually and in combination with other elements,

---

[9] By way of example, one of Disney's references suggests that the hero should be "red" or "blue," among other designations that are inconsistent with Disney's arguments in its brief.
http://tvtropes.org/pmwiki/pmwiki.php/Main/ColorCodedCharacters

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  is original, and is part of the expression substantially copied by Disney.

2        **4.    Other differences cannot negate the substantial similarities**
3              **set forth in the Amended Complaint.**

4        The law is well settled that Disney cannot evade copyright infringement by

5  claiming it did not copy every aspect of *The Moodsters* work. *L.A. Printex*, 676

6  F.3d at 852 ("But a copyright defendant need not copy a plaintiff's work in its

7  entirety to infringe that work. It is enough that the defendant appropriated a

8  substantial portion of the plaintiff's work."); *Sheldon v. Metro-Goldwyn Pictures,*

9  *Corp.*, 81 F.2d 49, 56 (2d Cir. 1936) ("It is enough that substantial parts were lifted;

10 no plagiarist can excuse the wrong by showing how much of his work he did not

11 pirate."). Nor should this Court resolve Disney's arguments on the pleadings. In

12 *Baxter*, for instance, the Ninth Circuit reversed a finding of summary judgment

13 based on a "six-note sequence" in an introductory song to the movie *E.T.*,

14 eloquently explaining that "the ear of the court must yield to the ears of jurors." 812

15 F.2d at 425. "Even if a copied portion be relatively small in proportion to the entire

16 work, if qualitatively important, the finder of fact may properly find substantial

17 similarity." *Id.* Thus, Disney's arguments, some of which do not even relate to the

18 characters themselves but the works as a whole, do not excuse—as a matter of

19 law—Disney's copying of the key expressive elements. At most, those alleged

20 differences would be relevant to the intrinsic test's "total concept and feel" for the

21 jury to decide. *See, e.g.*, *L.A. Printex*, 676 F.3d at 848.

22 **II.   Daniels' *Desny* claim is plausible because Daniels disclosed her idea**
23        **about *The Moodsters* characters to Disney.**

24        **A.    Disney's arguments about the statute of limitations should not be**
              **decided as a matter of law on the pleadings because Daniels filed**
25            **this suit within two years of the theatrical release of *Inside Out*.**

26       This Court and the Ninth Circuit have rejected Disney's argument that the

27 statute of limitations runs as a matter of law before the movie's release. In *Benay v.*

28 *Warner Bros. Entm't, Inc.*, like this case, the plaintiffs "filed their claim exactly two

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

years after the release of the Film." 607 F.3d 620, 633 (9th Cir. 2010). The Ninth Circuit affirmed this Court's decision denying summary judgment that the claim started to accrue before that release as a matter of law. *Id.* This Court then denied summary judgment again. *Benay v. Warner Bros. Entm't*, 2012 U.S. Dist. LEXIS 183791, at *29-36 (C.D. Cal Feb. 14, 2012). Here, the Amended Complaint alleges that Disney released *Inside Out* on June 19, 2015—two years before Daniels filed this case. To the extent Disney challenges June 19, 2015 as the release date, that is a disputed issue of fact inappropriate for a motion to dismiss. Even then, exhibits Disney requests the Court take judicial notice of confirms June 19, 2015 as the release date. *E.g.*, Dkt. No. 33 Ex. D-1 ("'Inside Out' doesn't hit theaters until June 19, 2015"); D-5 (noting *Inside Out* "opens in theaters on June 19, 2015"); D-6 ("Inside Out opens in U.S. theaters on June 19, 2015").

      *Benay* rejected the remainder of Disney's arguments and case law as well. The defendant, like Disney here, attempted "to muddy the waters by suggesting that the statute of limitations began to run 'upon any other act of disclosure, use, misappropriation or conversion of the idea,' of which the Plaintiffs had notice." *Benay*, 2012 U.S. Dist. LEXIS 183791, at *35. This Court explained that this argument "was addressed and rejected by the Ninth Circuit," noting that the statute run based on the nature of the implied contract and resulting obligation to pay. *See id.* at *35-36 (quoting *Benay*, 607 F.3d at 632; *Blaustein v. Burton*, 9 Cal. App. 3d 161, 185 (Ct. App. 1970)); *see also NBC Universal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1231 (Ct. App. 2014) ("A suit for breach of implied contract not to exploit an idea without paying for it … arises only with the sale or exploitation of the idea. … Whether and when an idea has been exploited—as understood and intended by the parties—may be difficult to ascertain.").

///

///

///

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

As explained in *Blaustein*:

> Since the trier of fact might conclude that the date of release of the picture to the general public was the use intended by the parties to trigger respondents' obligation to pay, it is impermissible to find on motion for summary judgment that appellant's cause of action is barred by the two year statute of limitations.

*Blaustein*, 9 Cal. App. 3d at 186.

Disney's arguments about its pre-release publicity relates to an issue of intent for the trier of fact to resolve.

## B. Disney's arguments about publication are factually and legally wrong.

Daniels' Amended Complaint sets forth a plausible *Desny* claim. To establish a *Desny* claim, a plaintiff must show three elements. *See, e.g., Wilder v. CBS Corp.*, 2013 U.S. Dist. LEXIS 190059, at *8 (C.D. Cal. Feb. 13, 2013). Daniels pled these elements sufficiently. Am. Compl. ¶¶113-21. To the extent Disney wishes to dispute any of these elements, that is an issue of fact to be resolved later. In essence, Disney attempts to convert Daniels' *Desny* claim into a breach of confidence claim. But those are two separate causes of action with different elements. *See, e.g., Green v. Schwarzenegger*, 1995 U.S. Dist. LEXIS 14031, at *16 (C.D. Cal. July 11, 1995). It is improper to find that these separate causes of action are redundant, or to import elements from one cause of action into another.

Nor is Disney entitled to inferences drawn in its favor for purposes of this motion. *See Stacy v. Rederite Otto Danielsen,* 609 F.3d 1033, 1035 (9th Cir. 2010). But that is what Disney asks with its arguments about Daniels' intent regarding "publication"—a legal term of art—of *The Moodsters*. Daniels' distribution of *The Moodsters* "for purposes of further distribution" was the entire point of her repeated efforts at pitching ideas to Disney—Disney would then incorporate her idea into its programing for worldwide distribution. *E.g.*, Am. Compl. ¶60. But as alleged in the Amended Complaint, she did so with the understanding that Disney would compensate her if Disney used her idea. Far from serving as a basis to dismiss this

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    claim, these facts help prove it.

2         *Quirk v. Sony Pictures*—an unpublished case outside of this District—does

3    not justify dismissal either. To start, Disney mistook this case as involving a motion

4    to dismiss, D. Br. at 24, when it is yet another summary judgment decision. 2013

5    U.S. Dist. LEXIS 47954, at *3 (N.D. Cal. Apr. 2, 2013). In fact, the district court

6    had previously denied the defendant's motion to dismiss the *Desny* claim, as this

7    Court should do here as well. *See Quirk v. Sony Pictures*, 2012 U.S. Dist. LEXIS

8    107362, at *7-13 (N.D. Cal. July 5, 2012). In any event, the court's decision on the

9    merits on summary judgment is far different from the circumstances here. The

10   defendant had proven the plaintiff's "wide public distribution" of his published

11   novel. 2013 U.S. Dist. LEXIS 47954, at *32. Disney has not done so here, but

12   instead attempts to rely on *de minimis* purported results from YouTube, which was

13   in its nascent stage in 2007. Even the *Quirk* court recognized the possibility of a

14   *Desny* claim even without the plaintiff's "utmost degree of secrecy and

15   confidentiality." *Id.* at *34. In the end, Disney's argument presents a fact issue.

16   **C.    Daniels has alleged a sufficient *Desny* claim based on the
17          substantial similarity between the ideas for the characters and
            premise of *Inside Out*.**

18        A *Desny* claim is by definition broader than a copyright claim. For that

19   reason, the substantial similarity requirement in a *Desny* claim can be proven (and

20   therefore alleged as well) by elements in a defendant's work that are not protected

21   by copyright. *See, e.g.*, *Benay*, 607 F.3d at 631. And just as copyright claims are not

22   limited to literary scripts but cover characters as well, so should *Desny* as well

23   cover ideas for literary scripts as well as characters. Such a conclusion is

24   particularly appropriate here, where the five original and unique anthropomorphic

25   single-emotion characters make up the premise of both *The Moodsters* and *Inside

26   Out*. At a minimum, the Amended Complaint sets forth a plausible *Desny* claim that

27   warrants discovery. *See, e.g.*, Am. Compl. ¶¶37-38, 44-72, 83-90, 112-121.

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| | |
|---|---|
| 1 | ## Conclusion |
| 2 |      Disney accepted praise for the inventive, unique, and original presentation of |
| 3 | anthropomorphized single-emotion characters in *Inside Out*. Disney's attempts to |
| 4 | defend this lawsuit by trivializing the original expressions that it copied from *The* |
| 5 | *Moodsters* characters ring hollow as a result. Disney's arguments attacking the |
| 6 | sufficiency of the Amended Complaint warrant no relief. Moodsters Co. |
| 7 | respectfully requests that the Court deny the motion, and enter a case schedule for |
| 8 | discovery and trial so this case can be resolved on the merits. |
| 9 | |
| 10 | Dated:  December 22, 2017         ROBINS KAPLAN LLP |
| 11 |             Ronald J. Schutz (pro hac vice)<br>            Michael A. Geibelson (#179970) |
| 12 |             Patrick M. Arenz (pro hac vice)<br>            Ruth L. Okediji (pro hac vice) |
| 13 | |
| 14 | By: */s/ Ronald J. Schutz* |
| 15 |         Ronald J. Schutz (*Pro Hac Vice*) |
| 16 |       Attorneys for Plaintiffs Denise Daniels<br>      and The Moodsters Company |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES