UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** **The Court GRANTS Defendants' Motion to Dismiss**

Before the Court is Defendants Walt Disney Company, Disney Enterprises, Inc., Disney Consumer Products and Interactive Media, Inc., Disney Interactive Studios, Inc., Disney Shopping, Inc., and Pixar's ("Defendants" or "Disney") motion to dismiss Plaintiffs Denise Daniels and The Moodsters Company's ("Plaintiffs") complaint. Dkt. # 32 ("*Mot.*"). Plaintiffs timely opposed, *see* Dkt. # 40 ("*Opp.*") and Defendant replied, *see* Dkt. # 41 ("*Reply*"). The Court heard oral arguments on January 29, 2018. *See* Fed. R. Civ. P. 78; L.R. 7–15. After considering the parties' papers and arguments, the Court **GRANTS** Defendants' motion.

I.      Background

Plaintiff Denise Daniels is a nationally recognized child development expert with over 40 years of experience working in the field of children's social and emotional development. *See* Dkt. # 27, *First Amended Complaint* ("*FAC*") ¶¶ 26?35. She co-founded the national non-profit National Childhood Grief Institute; she has been called upon to help children cope with grief and loss, after such events as Desert Storm, Hurricane Katrina, Columbine, and September 11. *Id.* ¶¶ 28?29. She has appeared on national television and has published nine children's self-help books relating to emotional wellbeing. *Id.* ¶ 35.

Daniels developed *The Moodsters*, a cartoon world populated by characters that embody individual emotions, to help children understand and regulate their emotions. *Opp.* 3. Each Moodster is color-coded and anthropomorphic—happiness (yellow), sadness (blue), anger (red), fear (green), and love (pink). *Id.* ¶ 53. Daniels and The Moodsters Company recruited top industry talent and emotional intelligence experts to develop and produce *The Moodsters*. *Opp.* 3. In November 2005, Plaintiffs published a "bible" for *The Moodsters*, a contemplated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | | Date | January 31, 2018 |
|---|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | | |

"animated TV show for preschoolers." *FAC*, Ex. 3 at 69. In 2007, Plaintiffs posted the pilot episode for *The Moodsters* to YouTube. *FAC*, Ex. 4 (2007 pilot).

Between 2006 and 2009, Plaintiffs allege they pitched *The Moodsters* to Disney every year; many high-ranking Disney executives received the pitch materials, allegedly passing them around to other division heads. *Id*. ¶¶ 67?69. Ultimately, Plaintiffs allege a conversation between Daniels and Pete Docter, director of *Inside Out*, about *The Moodsters* (the "Docter Phone Call"). *Id*. ¶ 71. In 2010, Disney Pixar began development on *Inside Out*, a feature film about the anthropomorphized emotions that live inside the head of an 11-year-old girl. The film features five color-coded emotions as characters—joy (yellow), sadness (blue), anger (red), fear (purple), and disgust (green). *Id*. ¶¶ 86?90. *Inside Out* grossed more than $350,000,000 domestically and over $850,000,000 worldwide. *Id*. ¶ 93.

Plaintiff Daniels filed suit on June 19, 2017, alleging breach of implied-in-fact contract arising from Plaintiffs' disclosure of *The Moodsters* to Disney, which Disney then allegedly used without compensating Plaintiffs. *See* Dkt. # 1, *Complaint*. Daniels amended her complaint on September 20, 2017, adding Plaintiff The Moodsters Company and adding five copyright infringement claims. *See* Dkt. # 27, *First Amended Complaint* ("*FAC*"). Plaintiffs do not allege that *Inside Out* infringes *The Moodsters* as a work; rather, they allege Defendants infringed their copyright in four of the Moodsters characters and in the ensemble of characters. *See id*. Defendant now moves to dismiss the implied-in-fact contract claim and all of the copyright infringement claims. *See Mot*.

II.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed if plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion, the court must first accept the facts pleaded in the complaint as true, and construe them in the light most favorable to the plaintiff. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Cousins v. Lockyer*, 568 F.3d 1063, 1067–68 (9th Cir. 2009). The court, however, is not required to accept "legal conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

After accepting all non-conclusory allegations as true and drawing all reasonable inferences in favor of the plaintiff, the court must then determine whether the complaint alleges a plausible claim to relief. *See Iqbal*, 556 U.S. at 679–80. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. "Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss."). Courts may also, however, consider "attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014), *cert. denied sub nom. Cohen v. Nvidia Corp.*, 135 S. Ct. 2349 (2015).

III.   Judicial Notice

Under Federal Rule of Evidence 201, the court "can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies." *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (quoting *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-CV-1166-IEG (POR), 2009 WL 6598891, at *2 (S.D. Cal. Dec. 23, 2009)); *see also L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937-38 (C.D. Cal. 2011) (noting that public records from the Internet are "generally considered not to be subject to reasonable dispute") (internal quotation marks omitted). Further, "[p]ublic records and government documents are generally considered 'not to be subject to reasonable dispute.'" *United States ex rel. Dingle v. BioPort Corp.,* 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (citing *Jackson v. City of Columbus,* 194 F. 3d 737, 745 (6th Cir.1999)). Rule 201(b) of the Federal Rules of Evidence permits judicial notice of facts that can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Defendant requests judicial notice of over 200 exhibits comprising over 1,300 pages of documents; the Court will consider only those which figure into its analysis below. *See* Dkt. # 33, *Defendants' Request for Judicial Notice* ("*RJN*").

III.   Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

A. <u>Implied-in-Fact Contract Claim</u>

Plaintiffs allege that Defendants used ideas from *The Moodsters* in creating *Inside Out* without compensating Plaintiffs for the use. *FAC* ¶¶ 112-21. Defendants argue that this claim is time-barred and that it fails as a matter of law. The Court determines that the second issue is dispositive, so it need not address the first.

A plaintiff cannot predicate an implied-in-fact contract claim on a work that was publicly disclosed *before* plaintiff disclosed it to defendant in exchange for payment if it is used. The California Supreme Court established the principle underlying this type of claim in *Desny v. Wilder*, 46 Cal. 2d 715 (1956), holding that "after voluntary communication to others, [ideas are] free as the air to common use." *Id.* at 731?32. However, a duty to pay compensation may arise where a person has clearly conditioned the disclosure upon an obligation to pay, and the offeree, with knowledge of that duty, voluntarily accepts the information and uses the idea. *Id.* at 738?39. The court further stated that "[t]he law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue." *Id.* at 739. The *Desny* court cautioned that "[t]he law will not in any event, from demands stated subsequent to the unconditional disclosure of an abstract idea, imply a promise to pay for the idea, for its use, or for its previous disclosure." *Id.*

Citing *Desny*, the court in *Quirk v. Sony Pictures Ent., Inc.*, No. C 11–3773 RS, 2013 WL 1345075, at *12 (N.D. Cal. Apr. 2, 2013), held that a plaintiff's publication of a work prior to defendant's acquisition of the work constituted "unconditional disclosure," and no implied promise to pay for freely available ideas could be implied. *Id.* at *11?12. That court held that the "touchstone" of such a claim is "whether the plaintiff can be said to be disclosing something that is not otherwise freely available to the defendant." *Id.* at *12. The issue, then, is whether Plaintiffs made *The Moodsters* freely available prior to their disclosure of the work to Disney.

Daniels and her team "contacted Disney Pixar in 2006, 2007, 2008, and 2009 about *The Moodsters*." *FAC* ¶ 61. Plaintiffs allege that they submitted *The Moodsters* to Disney, and did so "as is custom and common in the entertainment industry, with a reasonable expectation that Disney Pixar would compensate Daniels if Disney Pixar used their ideas. Thus, Daniels . . . provided ideas and materials to Disney Pixar for sale in exchange for compensation and credit if Disney Pixar used such ideas or materials." *FAC* ¶ 114. They further allege that Disney "accepted the disclosure of the ideas in *The Moodsters* with an expectation that it would have to compensate Daniels and The Moodsters Company if Disney Pixar used this idea in any television, motion picture, merchandise, or otherwise." *Id.* ¶ 115. Plaintiffs have offered limited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

facts in support of the assertion that Disney affirmatively accepted disclosure or had an expectation that it would compensate Daniels; certainly, they have alleged no conversation or writing between the parties to that effect. Plaintiffs' FAC alleges that Daniels "contacted a number of individuals" at Disney, and those individuals "received information" about *The Moodsters*. *FAC* ¶¶ 62?69. Plaintiffs do not provide details of what "sharing the materials" entailed, such as whether there were live discussions, meetings, or simply mailings, and what those discussions entailed. Nonetheless, Plaintiffs have alleged that in 2006 and 2007, Plaintiffs shared *The Moodsters* with Playhouse Disney; that in 2008, Daniels shared the materials with Thomas Staggs (CFO of Walt Disney Company); and that in 2008 Staggs shared them with Roy E. Disney and Rich Ross (President of Disney Channels Worldwide). *Id.* ¶¶ 66-69. Additionally, Plaintiffs have alleged that Daniels spoke directly by telephone to Pete Docter, walking him "through in detail the characters, curriculum, and concept underlying *The Moodsters*." *Id.* ¶ 71.

However, Plaintiffs registered *The Moodsters* bible with the Copyright Office in 2005, and registered *The Moodsters* pilot on July 27, 2007 (as well as posting it to YouTube in 2007). *FAC* ¶¶ 131, 132, 61; *RJN*, Ex. B-1, B-2. The Court takes judicial notice of Plaintiffs' copyright registration in *The Moodsters* bible, as '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies" are properly subject to judicial notice.

Defendants argue that the 2005 registration constitutes "publication" of the work, which "dooms [Plaintiffs'] implied-in-fact contract claim." Indeed, Plaintiffs' copyright registration in *The Moodsters* bible asserts that the "date of publication" of the bible was November 8, 2005. *RJN*, Ex. B-2. "Publication" refers to "the distribution of copies or phonorecords of a work to the public . . ." or "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution." 17 U.S.C. § 101. A work is "published" if it is distributed with "no explicit or implicit restrictions with respect to [the] disclosure of [the] contents" of the work. H.R. Rep. No. 94-1476 at 138 (1976). Plaintiffs' registration states that the work was published in 2005 with no implicit or explicit restrictions, thus constituting publication. Having been unconditionally disclosed both in 2005 and 2007 (with the pilot's copyright registration and posting online), *The Moodsters* work was freely available when Plaintiffs made contact with Disney. Any contact the parties had after November 2005 cannot, therefore, give rise to an implied-in-fact contract claim.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss the implied-in-fact contract claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

B.     Copyright Infringement: *The Moodsters* Characters

Plaintiffs registered *The Moodsters* pilot with the United States Copyright Office on July 27, 2007. *FAC* ¶ 131. They also registered *The Moodsters* bible. *Id.* ¶ 132. Plaintiff claims copyright protection in—and infringement by Defendants of—the individual Moodsters (the characters), not *The Moodsters* work itself. *See generally FAC*. Defendants argue that Plaintiffs' copyright infringement claims fail because the characters are not protectable in the first instance, either independently or as an ensemble, and because the *Inside Out* characters are not substantially similar to *The Moodsters*. *See generally Mot*. Because the Court finds the first issue dispositive, it need not reach the second.

Plaintiffs assert infringement claims only with respect to the individual characters and the ensemble of characters, rather than in the work itself, so the Court analyzes Plaintiffs' copyright protection claims through the lens of the Ninth Circuit's three-part test to determine whether a character deserves copyright protection independent of the work in which it appears.

Characters standing alone "are not ordinarily entitled to copyright protection." *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co*., 149 F. Supp. 3d 1167, 1173?74 (N.D. Cal. 2015). To be copyrightable independent of the underlying work in which the character appears, a character must (1) have "physical as well as conceptual qualities," (2) "be 'sufficiently delineated' to be recognizable as the same character whenever it appears," and (3) be "'especially distinctive' and 'contain some unique elements of expression.'" *DC Comics v. Towle*, 802 F.3d 1012, 1020?21 (9th Cir. 2015).

   i.     *Physical Qualities*

*The Moodsters* have physical as well as conceptual qualities, as they have appeared graphically in both the bible and the pilot. They are not "mere literary character[s]," as they have physical attributes embodied in the 2-dimensional renderings of the characters. Indeed, Defendants argue only that the second and third elements of the three-part test are not met. *See Mot*. 1. The characters therefore meet the first element.

   ii.    *Sufficiently Delineated*

"[C]ourts have deemed the *persistence of a character's traits* and attributes to be key to determining whether the character qualifies for copyright protection." *Id*. (emphasis added). To be protectable, a character must be "recognizable as the same character whenever it appears."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

*DC Comics*, 802 F.3d at 1020?21.  Characters such as Sherlock Holmes, Tarzan, Superman, and James Bond have been deemed to have "certain character traits that have been developed over time, making them instantly recognizable wherever they appear." *MGM, Inc. v. Am. Honda Motor Co.*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995).  In finding James Bond sufficiently delineated, the court looked to his "character traits that have been developed over time through the sixteen films in which he appears," finding that his "cold-bloodedness; his overt sexuality; his love of martinis 'shaken, not stirred;' his marksmanship; his 'license to kill' and use of guns; his physical strength; [and] his sophistication" so delineated the character that his "specific qualities remain constant despite the change in actors."  *Id*.  Similarly, in finding the character of Batman protectable, the court cited to Batman's 63 years of fighting crime, and his "unique, protectable characteristics, such as the iconographic costume elements and his unique life story." *Sapon v. DC Comics*, No. 00 CIV. 8992(WHP), 2002 WL 485730, at *3?4 (S.D.N.Y. Mar. 29, 2002).

Where, on the other hand, characters are "lightly sketched through only short summaries and 'whatever insight into their characters may be derived from their dialogue and action,'" they are not entitled to protection. *Fun with Phonics, LLC v. LeapFrog Enterprises, Inc*., CV 09-916-GHK (VBXx), 2010 WL 11404474, at *5?6 (C.D. Cal. Sept. 10, 2010).  Plaintiffs' characters have been sketched through the short summaries contained in *The Moodsters* bible, and in the pilot episode.  The description of the character Zazz (the happy character), for instance, states that he "wakes up each morning with a smile on his face and a friendly attitude," "he's usually quite optimistic and enthusiastic," and "he spreads cheer wherever he goes."  Dkt. 27-3 Ex. 3, *The Moodsters Bible* at 3.  The anger character is described as "the most likely Moodster to get frustrated and 'blow her top,'" she's "very generous," and "she's determined to do her best."  *Id.* at 4.  The sadness character is "prone to doom and gloom," "weeps copiously," and is "a totally sweet guy" who feels "particularly dejected when he's left out of things."  *Id.* at 6.  These are not specific traits on par with those of the iconic characters noted above, such that they would be "instantly recognizable wherever they appear."

Further, Plaintiffs' characters have been distributed only twice: once in *The Moodsters* bible, and once in the YouTube pilot.  With a viewership of only 1,400, the pilot did not likely engender the kind of "widely identifiable" recognition of the characters' traits envisioned by the Ninth Circuit; that court denied protection for a character that had "appeared in only one home video that sold approximately 17,000 copies," for lack of "consistent, widely identifiable traits." *Rice v. Fox Broadcasting Co*., 330 F.3d 1170, 1175 (9th Cir. 2003).  More problematic for Plaintiffs is the requirement that such traits be persistent enough, over time or over multiple iterations, to produce such recognition.  Here, the characters have appeared only twice—and their names had all changed from the first appearance to the second.  *See FAC* ¶¶ 54-59.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

### iii. *Especially Distinctive*

Courts look at "visual depictions, name, dialogue, relationships with other characters, actions and conduct, personality traits, and written descriptions—to determine whether [a character] is sufficiently delineated such that it is a unique expression." *Fun with Phonics,* 2010 WL 11404474, at *5?6. Characters are "not particularly distinctive" when they "fit general, stereotypical categories . . . Consequently, these characters are not entitled to copyright protection." *McCormick v. Sony Pictures Entm't*, 2009 WL 10672263, at *14 (C.D. Cal. July 20, 2009), *aff'd*, 411 F. App'x 122 (9th Cir. 2011).

In their analysis of the "especially distinctive" prong, Plaintiffs originally pointed to the *Fun with Phonics* case, calling the court's analysis of character copyright protection "particularly relevant to this case" where it concluded that "a yellow letter I dripping with green slime to illustrate the word 'icky' was a copyrighted character." *Opp*. 8. They further argued that the "icky" character was found to be "protectable expression," which "supports the conclusion that . . . so are the expressions of *The Moodsters* characters." *Id*. In fact, the court in that case came to the *opposite* conclusion, finding "Plaintiff's 'characters' *do not* warrant independent copyright protection." *Fun with Phonics*, 2010 WL 11404474, at *6 (emphasis added). Plaintiffs submitted a notice of errata conceding this mistake, *see* Dkt. # 45, *Notice of Clarification/Errata*, but continue to argue that "the principle of law in *Leapfrog* . . . supports the conclusion that certain expressive elements are protectable expression." *Id*. 2. Though that may be so, *characters* must nevertheless meet the elements of the Ninth Circuit's test to be independently protectable.

Plaintiffs claim that their characters are "recognizable as the same character whenever they appear because they are identified by individual colors and emotions" such that "there is no confusion which character is which when one comes on scene." *Opp*. 7. As Defendants correctly note, distinguishing the characters from one another when they appear within the work itself "is not the Ninth Circuit's standard for copyright protection of a character." *Reply* 4. Rather, the characters' actions and conduct, personality traits, and other characteristics must do more than "fit general, stereotypical categories" such that they are especially distinctive vis-à-vis *other characters*, outside of the work in which they appear.

Defendants note that "Plaintiffs' efforts to draw parallels between the Moodsters and [the *Fun with Phonics*] characters—rather than characters with adequately developed and especially distinctive traits—only confirm that the Moodsters are lightly-sketched characters that fail to satisfy the Ninth Circuit's test." *Reply* 3. The Court agrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

The Court determines that the characters within *The Moodsters* do not meet the Ninth Circuit's rigorous test for granting independent copyright protection to characters. Accordingly, Plaintiffs' copyright infringement claim for each character fails, and Defendants' motion to dismiss them is **GRANTED**.

      C.      <u>Copyrightability of the Moodsters Ensemble</u>

Having found the individual characters unprotectable, the Court now turns to whether the ensemble of the characters is copyrightable. Plaintiffs cite to *Paramount Pictures Corp. v. Axanar Prod., Inc.*, No. 2:15-CV-09938-RGK-E, 2017 WL 83506 (C.D. Cal. Jan. 3, 2017), for the position that unprotectable characters can, as an ensemble, be protected. *Opp*. 9. Plaintiffs' reading of this case, however, is incorrect. Plaintiffs contend that the court "found groups of characters to be protected by copyright." *Id*. In fact, the court expressly declined to decide whether the ensemble of Klingons and Vulcans characters was protectable, because "Plaintiffs' allegation [wa]s that Defendants infringe[d] the Star Trek Copyrighted Works as a whole." The court stated that such characters "may be entitled to copyright protection," but discussed the issue only in the context of the characters as one point of comparison, along with plot, costumes, setting, and other elements, in the substantial similarity analysis. *Id*. at *4-5.

Plaintiffs also point to the "more general" proposition that "[o]riginal selection, coordination, and arrangement of unprotectable elements may be protectable expression." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 849 (9th Cir. 2012) (holding that "selecting, coordinating, and arranging floral elements in stylized fabric designs" may be protectable expression). While it is indeed black letter law that original selection and arrangement of unprotectable elements can render the configuration of those elements protectable, Plaintiffs have failed to advance an argument as to how that principle supports protection of the ensemble of "lightly sketched" characters here, offering only the conclusion that "the combination of those unique characters only further adds to the originality and copyrightability." *Opp*. 9.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' Second cause of action, infringement of the ensemble of characters.

IV.      <u>Leave to Amend</u>

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-4527 PSG (SK) | Date | January 31, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. Walt Disney Company, et al. | | |

amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

At the January 29 hearing, Plaintiffs requested leave to amend their complaint, thus indicating to the Court that the FAC could be saved by amendment. Leave to amend is therefore **GRANTED**, only as to the copyright infringement claims.

V.  Conclusion

For the forgoing reasons, the Court **GRANTS** Defendant's motion to dismiss the First cause of action (implied-in-fact contract) **WITHOUT LEAVE TO AMEND**, and **GRANTS** Defendants' motion to dismiss Plaintiffs' Second (ensemble of characters), Third (Happy character), Fourth (Sadness character), Fifth (Anger character), and Sixth (Fear character) causes of action **WITH LEAVE TO AMEND**. Plaintiffs' second amended complaint is due no later than **March 1, 2018**.

**IT IS SO ORDERED.**