1  GLENN D. POMERANTZ (State Bar No. 112503)
   glenn.pomerantz@mto.com
2  ERIN J. COX (State Bar No. 267954)
   erin.cox@mto.com
3  KENNETH M. TRUJILLO-JAMISON (State Bar No. 280212)
   kenneth.trujillo-jamison@mto.com
4  MUNGER, TOLLES & OLSON LLP
5  350 South Grand Avenue
   Fiftieth Floor
6  Los Angeles, California 90071-3426
7  Telephone:   (213) 683-9100
   Facsimile:    (213) 687-3702
8
   Attorneys for Defendants
9

10

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14  DENISE DANIELS and                    Case No. 2:17-cv-04527-PSG-SK
    THE MOODSTERS COMPANY,
15                                         **DEFENDANTS' NOTICE OF
                 Plaintiffs,               MOTION AND MOTION TO
16                                         DISMISS PLAINTIFFS' SECOND
         vs.                               AMENDED COMPLAINT**
17
18  THE WALT DISNEY COMPANY;               **[Request for Judicial Notice filed
    DISNEY ENTERPRISES, INC.;              concurrently herewith]**
19  DISNEY CONSUMER PRODUCTS
    AND INTERACTIVE MEDIA INC.;
20  DISNEY INTERACTIVE STUDIOS,            **Judge**: Hon. Philip S. Gutierrez
    INC.; DISNEY SHOPPING, INC.;
21  PIXAR,                                 **Date**:   May 14, 2018
                                           **Time**:   1:30 p.m.
22               Defendants.               **Place**:  Courtroom 6A
23
                                           **Action Filing Date**: June 19, 2017
24

25

26

27

28

TO PLAINTIFFS DENISE DANIELS AND THE MOODSTERS COMPANY, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 14, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6A of this Court, located at 350 West 1st Street, Los Angeles, California 90012-4565, defendants The Walt Disney Company; Disney Enterprises, Inc.; Disney Consumer Products and Interactive Media Inc.; Disney Interactive Studios, Inc.; Disney Shopping, Inc.; and Pixar (collectively, "Defendants") will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice the Second Amended Complaint of plaintiffs Denise Daniels and The Moodsters Company ("Plaintiffs") on the ground that it fails to state any claim upon which relief can be granted.

This Motion is made following the conference of counsel pursuant to Central District Local Civil Rule 7-3, which took place on March 7, 2018.  This Motion is based on the files, records, and proceedings in this action, this Notice, the following Memorandum of Points and Authorities, Defendants' Request for Judicial Notice (filed concurrently herewith), the reply memorandum that Defendants intend to file, the arguments of counsel, and such other matters as may be presented at the hearing on this Motion or prior to the Court's decision.

DATED:  March 15, 2018

MUNGER, TOLLES & OLSON LLP
GLENN D. POMERANTZ
ERIN J. COX
KENNETH M. TRUJILLO-JAMISON


By:  ___/s/ *Erin J. Cox*___
ERIN J. COX
Attorneys for Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    Introduction.................................................................................1

II.   Background..................................................................................1

      A.    Dismissal of Plaintiffs' First Amended Complaint.................1

      B.    Plaintiffs' Second Amended Complaint..................................2

III.  Plaintiffs' Copyright Infringement Claims Fail. .............................6

      A.    The Moodsters Company's Copyrights .................................6

      B.    *The Moodsters* Characters Are Not Independently Copyrightable.........7

            1.    The Moodsters Are Not Sufficiently Delineated and Recognizable, Nor Especially Distinctive. ...................8

            2.    Plaintiffs Cannot Claim Copyright Protection for an Ensemble of Unprotectable Characters........................12

      C.    *The Moodsters* Characters and the *Inside Out* Characters Are Not Substantially Similar. ...............................................12

            1.    Copyright Claims Are Regularly Dismissed on the Pleadings...13

            2.    The Premise of Plaintiffs' Claims—That the Moodsters Are Anthropomorphized Emotions—Is Contradicted by the Works at Issue and Must Be Disregarded..................15

            3.    Asserted Similarities Between the Characters are Based on Unprotectable Elements and Must Be Filtered Out...................16

                  (a)    Anthropomorphizing Emotions Is Unprotectable. ..........16

                  (b)    The Traits Commonly Associated with Human Emotions Are Unprotectable. ...........................19

                  (c)    The Association of Red With Anger, Blue With Sadness, and Yellow With Joy Is Unprotectable. ............20

            4.    Differences Between the Characters Also Precludes a Finding of Substantial Similarity.................................22

            5.    The Inverse Ratio Rule Does Not Salvage Plaintiffs' Claims....24

IV.   Conclusion ...............................................................................25

1

## TABLE OF AUTHORITIES

2

**Page**

3 **FEDERAL CASES**

4 *Alexander v. Murdoch*,
5     2011 WL 2802899 (S.D.N.Y. May 27, 2011) ........................................................ 10

6 *Benay v. Warner Bros. Entm't, Inc.*,
7     607 F.3d 620 (9th Cir. 2010) ............................................................... 6, 12, 22

8 *Bensbargains.Net, LLC. v. Xpbargains.Com*,
    2007 WL 2385092 (S.D. Cal. Aug. 16, 2007) ........................................................ 25
9

10 *Berkic v. Crichton*,
    761 F.2d 1289 (9th Cir. 1985), *cert. denied*, 474 U.S. 826 (1985) ........................... 21
11

12 *Campbell v. Walt Disney Co.*,
    718 F. Supp. 2d 1108 (N.D. Cal. 2010) ........................................................ 13
13

14 *Cavalier v. Random House, Inc.*,
    297 F.3d 815 (9th Cir. 2002) ........................................................ 12

15 *Christianson v. West Pub. Co.*,
16     149 F.2d 202 (9th Cir. 1945) ........................................................ 13

17 *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
18     697 F. Supp. 1136 (E.D. Cal. 1987) ........................................................ 17

19 *Daniels–Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ........................................................ 15
20

21 *DC Comics v. Towle*,
    802 F.3d 1012 (9th Cir. 2015) ........................................................ 2, passim
22

23 *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*,
    109 F.3d 1394 (9th Cir. 1997) ........................................................ 16
24

25 *Esplanade Prods., Inc. v. Walt Disney Co.*,
    2017 WL 5635027 (C.D. Cal. Nov. 8, 2017) ........................................................ 23
26

27 *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ........................................................ 19

28

-ii-

*Fillmore v. Blumhouse Prods., LLC*,
  2017 WL 4708018 (C.D. Cal. July 7, 2017)..........................................................14, 21

*Fun With Phonics, LLC v. LeapFrog Enters., Inc.*,
  2010 WL 11404474 (C.D. Cal. Sept. 10, 2010) ...................................................9, 24

*Funky Films, Inc. v. Time Warner Ent'mt Co.*,
  462 F.3d 1072 (9th Cir. 2006) ....................................................................................21

*Fusion Windows & Doors, Inc. v. Am. Reliable Windows, Inc.*,
  2013 WL 12126108 (C.D. Cal. July 12, 2013).........................................................13

*Gallagher v. Lions Gate Entm't Inc.*,
  2015 WL 12481504 (C.D. Cal. Sept. 11, 2015) ...................................1, 12, 13, 24

*Gibson v. CBS, Inc.*,
  491 F. Supp. 583 (S.D.N.Y. 1980) .............................................................................17

*Green v. Proctor & Gamble, Inc.*,
  709 F. Supp. 418 (S.D.N.Y. 1989) .............................................................................17

*Hogan v. DC Comics*,
  48 F. Supp. 2d 298 (S.D.N.Y. 1999) .....................................................................21, 22

*Idema v. Dreamworks, Inc.*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) ................................................................16, 24

*Identity Arts v. Best Buy Enter. Servs. Inc.*,
  2007 WL 1149155 (N.D. Cal. Apr. 18, 2007)............................................................1

*Jones v. CBS, Inc.*,
  733 F. Supp. 748 (S.D.N.Y. 1990) .............................................................................10

*Kouf v. Walt Disney Pictures & Television*,
  16 F.3d 1042 (9th Cir. 1994) ......................................................................................21

*Madrid v. Chronicle Books*,
  209 F. Supp. 2d 1227 (D. Wyo. 2002).......................................................................18

*Marcus v. ABC Signature Studios, Inc.*,
  2017 WL 4081885 (C.D. Cal. Sept. 13, 2017) ...................................................19, 22

*McCormick v. Sony Pictures Entm't*,
  2009 WL 10672263 (C.D. Cal. July 20, 2009), *aff'd*, 411 F. App'x 122
  (9th Cir. 2011)...............................................................................................................10

*McGee v. Benjamin*,
  2012 WL 959377 (D. Mass. Mar. 20, 2012) ........................................................... 19

*Metro-Goldwyn-Mayer v. Honda Am. Motor Co.*,
  900 F. Supp. 1287 (C.D. Cal. 1995) ..................................................................... 8

*Midas Prods., Inc. v. Baer*,
  437 F. Supp. 1388 (C.D. Cal. 1977) ..................................................................... 17

*Novak v. Warner Bros. Pictures, LLC*,
  387 F. App'x 747 (9th Cir. 2010) ......................................................................... 24

*Olson v. Nat'l Broad. Co.*,
  855 F.2d 1446 (9th Cir. 1988) ...................................................................... 10, 12

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
  602 F.3d 57 (2d Cir. 2010) ................................................................................. 15

*Rice v. Fox Broadcasting Co.*,
  330 F.3d 1170 (9th Cir. 2003) ...................................................................... 11, 14

*Schkeiban v. Cameron*,
  2012 WL 5636281 (C.D. Cal. Oct. 4, 2012) ........................................................ 13

*Segal v. Rogue Pictures*,
  2011 WL 11512768, at *5 (C.D. Cal. Aug. 19, 2011), *aff'd*, 544 F.
  App'x 769 (9th Cir. 2013) .................................................................................. 14

*Shame on You Prods., Inc. v. Banks*,
  120 F. Supp. 3d 1123, 1163–64 (C.D. Cal. 2015), *aff'd sub nom.* 690
  F. App'x 519 (9th Cir. 2017) ........................................................................ 12, 14

*Sheldon Abend Revocable Tr. v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010) ........................................................... 21, 22

*Smart Inventions, Inc. v. Allied Cmcn's Corp.*,
  94 F. Supp. 2d 1060 (C.D. Cal. 2000) ................................................................. 19

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ........................................................................... 15

*Toho Co. v. William Morrow & Co.*,
  33 F. Supp. 2d 1206 (C.D. Cal. 1998) ................................................................... 8

-iv-

*Walt Disney Prods. v. Air Pirates*,
   581 F.2d 751 (9th Cir. 1978) ........................................................9

*Weiss v. DreamWorks SKG*,
   2015 WL 12711658 (C.D. Cal. Feb. 9, 2015) ...........................7, 14

*Wild v. NBC Universal*,
   513 F. App'x 640 (9th Cir. 2013) .................................................1

*Williams v. Crichton*,
   84 F.3d 581 (2d Cir. 1996) .........................................................21

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007) ............................13, 14, 17

TREATISES

4 Nimmer on Copyright § 13.03[B][4] (2007) .................................19

4 Nimmer on Copyright, § 13.03[D] (2007) ...................................25

I.      **INTRODUCTION**

Plaintiffs' Second Amended Complaint ("SAC") does not fix the fundamental flaw in their claims: their characters are not sufficiently developed to be afforded copyright protection.  As for the reallegation that Disney/Pixar copied the characters for *Inside Out* from the pilot episode of *The Moodsters*, a straightforward comparison demonstrates that this is not so.

This Court has already evaluated Plaintiffs' materials and determined that their characters are not independently protected by copyright separate from the underlying works in which the characters appear.  The Court found the generic, stereotypical attributes of Plaintiffs' characters to fall short of the Ninth Circuit standard for copyright protection independent of the underlying works—that is, to have especially distinctive characters recognizable wherever they appear.  Plaintiffs do not allege any attributes of their characters that they have not already alleged.  Instead, they assert that scientific research was employed in developing their pilot to help preschoolers identify emotions—further confirming that the Moodsters were intended to express universal emotions generically.

The SAC also fails to state a claim because Plaintiffs still cannot show the requisite high degree of substantial similarity between protectable elements of the Moodsters and the characters in *Inside Out*.  More fundamental than the overwhelming number of differences is that none of the asserted similarities is the kind of expression protected by copyright.  The SAC should be dismissed with prejudice.

II.     **BACKGROUND**

A.      **Dismissal of Plaintiffs' First Amended Complaint**

Plaintiff Denise Daniels filed this lawsuit on June 19, 2017, asserting a single claim for breach of implied-in-fact contract.  (Dkt. No. 1.)  Plaintiff The Moodsters Company was included in an amended complaint filed on September 20, 2017 which added copyright infringement claims founded on its copyright registrations of a 2005 "bible" for *The Moodsters*, a contemplated "animated TV show for preschoolers," and

-1-

1   the pilot episode from 2007.  (Dkt. No. 27, First Am. Compl. ("FAC"), Ex. 3 at 69; *id.,*

2   Ex. 4 (2007 pilot).)  Plaintiffs did not allege that *Inside Out* infringed either the

3   *Moodsters* bible or the pilot when considered as a whole, but rather alleged that *Inside*

4   *Out* infringed its characters: the "happy" Moodster (variously known as Zip and Zazz),

5   the "sad" Moodster (Sniff or Snorf), the "angry" Moodster (Roary or Rizzi), and the

6   "scared" Moodster (Shake or Scootz), as well as the collective ensemble of the

7   Moodsters, which included a "loving" Moodster (Olovia or Oola).

8          The Court granted Defendants' motion to dismiss Plaintiffs' copyright

9   infringement claims on the grounds that the Moodsters, whether considered

10  individually or as an ensemble, did not warrant copyright protection independent of the

11  underlying copyrighted works, and therefore could not form the premise of Plaintiffs'

12  copyright infringement claims.  (*See generally* Dkt. No. 47 at 6-9 ("Order").)  The

13  Court noted that "[c]haracters standing alone 'are not ordinarily entitled to copyright

14  protection,'" and found that the Moodsters failed to satisfy the standard for

15  independent copyright protection of graphically depicted characters set forth by the

16  Ninth Circuit in *DC Comics v. Towle,* 802 F.3d 1012 (9th Cir. 2015).  (Order at 6.)

17  The Court dismissed Plaintiffs' copyright infringement claims without prejudice in

18  light of their request for leave to amend.  Plaintiffs' implied-in-fact contract claim was

19  dismissed with prejudice.[1]

20          **B.     Plaintiffs' Second Amended Complaint**

21          Plaintiffs filed their SAC on March 1, 2018, re-asserting the same copyright

22  infringement claims premised on the same two works copyrighted by The Moodsters

23  Company, but do not state why Plaintiff Denise Daniels has standing to assert these

24

25  [1] In the SAC, Plaintiffs re-assert the implied-in-fact contract claim, but expressly
    "recognize[] that the Court has dismissed this claim without leave to amend" and state
26  that the inclusion of the allegations is "to preserve the claim for appellate review."
    (SAC at 24 n.6.) The Court did not grant Plaintiffs leave to re-allege this claim, so
27  Defendants do not address it here.

28

DEFENDANTS' MOTION TO DISMISS
CASE NO. 2:17-CV-04527-PSG-SK

1  claims. (Dkt. No. 51.) Plaintiffs add new allegations about the *Moodsters* pilot, stating

2  that emotional intelligence experts "advised Moodsters Co. about the script and

3  attributes and traits of the characters, including suggesting facial expressions and

4  dialogue for particular characters based on their review and interpretation of scientific

5  research on emotions." (*Id.* ¶¶ 147, 209, 246, 283, 319.)  Development of the pilot

6  allegedly "included focus groups with children and their parents"; the participants in

7  the focus groups "watched a version of the Pilot." (*Id.* ¶¶ 148, 210, 247, 284, 320.)

8       The SAC labels the characters depicted in the 2005 *Moodsters* bible and 2007

9  pilot—the only works registered with the Copyright Office by The Moodsters

10  Company—as the "first generation," and asserts that a "second generation of *The*

11  *Moodsters* characters were developed in the 2012-13 time frame." (*Id.* ¶ 156.)

12  According to the SAC, "[b]y 2015, various products, including toys and books

13  featuring *The Moodsters* characters [from this "second generation"] became available

14  for sale at Target." (*Id.*)  The SAC includes screenshots of products featuring the

15  "second generation" Moodsters, which show that the characters' names have changed

16  yet again: The red Moodster (previously Roary, then Rizzi) is now "Razzy"; the green

17  Moodster (previously Shake and Scootz) is now "Quigly"; the yellow Moodster

18  (previously Zip, then Zazz) is now "Coz"; and the pink Moodster (previously Olovia,

19  then Oola) is now "Lolly." (*Id.* at 34, 46.)

20       In the "Meet the Moodsters" storybook, the Moodsters are introduced as "mood

21  detectives." (RJN, Ex. C at 10; *see* SAC at 34 (screenshot of product as currently sold

22  on Amazon.com as a set with "Moodsters Meter"); *id.* (describing product as

23  "[i]nspired by the Moodsters five lovable little detectives").)  They magically burst out

24  of a magician's top hat owned by a boy named Zach and "scurried under the bed" in

25  the boy's room. (RJN, Ex. C at 5.)  Coz, the yellow Moodster, explains that they solve

26  "mood mysteries." (*Id.* at 11.) They help the boy realize he is feeling angry, and tell

27  him that each of the Moodsters also feels angry sometimes. (*Id.* at 12-19.)  The yellow

28  Moodster is shown feeling angry because his soccer game is getting rained on, and the

-3-

1   blue Moodster recounts feeling angry when the green Moodster laughed at him and

2   hurt his feelings.  (*Id.* at 19.) The boy successfully works through his anger, and all of

3   the Moodsters celebrate by doing the "Happy Dance."  (*Id.* at 22.)

   



13       Plaintiffs notably do not allege that either of them owns the copyright for any of

14   the products featuring the "second generation" Moodsters.  (*See* SAC ¶¶ 131-32

15   (stating The Moodsters Company registered copyrights in the *Moodsters* bible and

16   pilot only).)  This was not merely an oversight by Plaintiffs; the products featuring the

17   "second generation" Moodsters state that the copyright is held by "JellyJam

18   Entertainment Inc." and that "The Moodsters" is a trademark of JellyJam

19   Entertainment Inc. ("JellyJam").  (*See, e.g.,* RJN, Ex. C.)  In fact, JellyJam has

20   registered copyrights in Coz, its yellow Moodster (*id.*, Ex. B-3); Snorf, its blue

21   Moodster (*id.*, Ex. B-4); and Lolly, its pink Moodster (*id.*, Ex. B-5).

22       In addition to the change in names and ownership of the "second generation"

23   Moodsters, there are obvious visual differences. These JellyJam Moodsters look less

24   like aliens, and more like teddy bears or Teletubbies. They have lost their antennae,

25   and each wear a detective hat and capelette, apparently a nod to their jobs as

26   detectives.  While the "first generation" creatures live in fictional Moodsterville, and

27   the "second generation" detectives live under a child's bed after magically appearing

28   from a hat, it is clear that neither group are literal emotions belonging to a human.

-4-





Shake (2005)/Scootz (2007)    Olovia (2005)/Oola (2007)    Sniff (2005)/Snorf (2007)    Zip (2005)/Zazz (2007)    Roary (2005)/Rizzi (2007)
[male]                        [female]                      [male]                        [male]                    [female]



Quigly     Lolly     Snorf     Coz     Razzy
JellyJam Entertainment Inc.'s "Second Generation" Moodsters

Plaintiffs do not allege that Defendants copied JellyJam's Moodsters, nor do they allege that *anyone* affiliated with Defendants had access to JellyJam's Moodsters before developing *Inside Out.* Instead, in a section titled "Disney-Pixar's *Inside Out* Infringes Moodsters Co.'s Copyright," Plaintiffs weakly assert only that "Disney-Pixar had access to *The Moodsters* before it started working on the movie *Inside Out* in 2010"—clearly a reference to the "*first* generation" Moodsters depicted in the 2005 promotional materials and 2007 pilot actually registered with the Copyright Office. (SAC ¶ 168.)

Aside from the color selection of three characters, Plaintiffs do not contend that there are any visual similarities between *The Moodsters* (whether first or second generation) and *Inside Out* characters. Nor do they claim that there are any similarities between *Inside Out* and any work featuring the Moodsters, whether the setting, plot, dialogue, mood, pacing, sequence of events, or any other creative element. The characters from *Inside Out* which Plaintiffs contend were copied from the Moodsters

-5-

are—quite unlike the Moodsters—the literal emotions of a human being, react to events experienced by their human, and see the world literally through her eyes. (*See generally,* RJN, Ex. A (DVD of *Inside Out*).)

## III.   PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIMS FAIL.

Since Plaintiffs do not claim infringement in their copyrighted works as a whole, they must demonstrate that their characters standing alone warrant protection independent of the underlying works. The Court already considered the depiction of Plaintiffs' "first generation" Moodsters and found they did not meet this threshold requirement. Plaintiffs do not allege that the "second generation" Moodsters developed by third-party JellyJam could bear on the question whether Plaintiffs created especially distinctive and sufficiently delineated characters. Rather, Plaintiffs appear to suggest that JellyJam's "second generation" products show that the generic character traits and attributes which appeared in the 2005 bible and 2007 pilot have persisted in additional works, and that this might overcome the fact that the characters are lightly sketched. It is a glaring omission from the first two iterations of their complaint that Plaintiffs do not even hint at the existence of this "second generation" of Moodsters. Their new argument finds no support in law or logic.

Put aside that the Moodsters are not entitled to copyright protection separate from the copyright in The Moodsters Company's registered works; they are just not substantially similar to the *Inside Out* characters. A substantial similarity analysis must strip out the unprotectable elements of the characters, the only elements Plaintiffs claim to be similar. Plaintiffs also ignore the overwhelming differences that are often decisive in a substantial similarity analysis.

### A.   The Moodsters Company's Copyrights

A copyright plaintiff must first demonstrate "ownership of a valid copyright." *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624 (9th Cir. 2010). Plaintiffs identify two registered works in the SAC: the 2005 *Moodsters* bible and the 2007 pilot. (SAC ¶¶ 131-32.) Denise Daniels does not allege ownership in these copyrights, nor is

-6-

1    she listed as the owner on the registrations;[2] she therefore lacks standing to assert the

2    copyright infringement claims.  More fundamentally, the attempt to base copyright

3    infringement claims on JellyJam's products—which Plaintiffs do not allege

4    Defendants copied from or had access to—is misleading and impermissible.  *Cf. Weiss*

5    *v. DreamWorks SKG*, 2015 WL 12711658, at *4 (C.D. Cal. Feb. 9, 2015) ("The Court

6    limits its analysis of Plaintiff's copyright claims to the items registered with the

7    Copyright Office").

8          **B.**   ***The Moodsters* Characters Are Not Independently Copyrightable.**

9         "Not every comic book, television, or motion picture character is entitled to

10   copyright protection." *Towle*, 802 F.3d at 1019.  The Ninth Circuit has articulated a

11   three-part test governing the analysis of whether a  character is independently

12   copyrightable separate from the underlying copyrighted works in which the character

13   appears.  Such a character must (1) have "'physical as well as conceptual qualities,'"

14   (2) "be 'sufficiently delineated' to be recognizable as the same character whenever it

15   appears," and (3) be "'especially distinctive' and 'contain some unique elements of

16   expression.'"  *Id.* at 1020–21.  As this Court previously held, the characters from the

17   *Moodsters* bible and pilot are not sufficiently delineated or especially distinctive and

18   therefore not deserving of independent copyright protection, whether considered

19   individually or as an ensemble.[3]  The new allegations in Plaintiffs' SAC regarding

20   JellyJam's "second generation" Moodster detectives, with different names and a

21   different look, does not change that holding.

22

23   _____

     [2] RJN, Exs. B-1 (registration for 2005 *Moodsters* bible); B-2 (registration for 2007

24   pilot).

     [3] Plaintiffs' SAC contends that the ensemble of the Moodsters characters (though not

25   the individual characters) are independently protectable under "the 'story being told'

26   standard."  (SAC ¶¶ 140, 166-67.)  There is no such alternative standard for Plaintiffs

     to resort to; the Ninth Circuit consolidated relevant precedent in *Towle* to "establish[] a

27   three-part test for determining whether a character in a comic book, television

28   program, or motion picture is entitled to copyright protection."  802 F.3d at 1020-21.

-7-

### 1. The Moodsters Are Not Sufficiently Delineated and Recognizable, Nor Especially Distinctive.

To meet the Ninth Circuit's test, a "character must be 'sufficiently delineated' to be recognizable as the same character whenever it appears." *Id.* Plaintiffs previously argued that the Moodsters met this standard because they could be distinguished from one another. This Court disagreed, explaining rather that copyrightable characters "must do more than 'fit general, stereotypical categories' such that they are especially distinctive vis-à-vis *other characters*, outside of the work in which they appear." (Order at 8 (emphasis in original).) The generic attributes of the first generation Moodsters do not qualify them for independent copyright protection; this remains true even if those stereotypes are echoed in JellyJam's Coz, Quigly, Lolly, Snorf, and Razzy.

The body of case law in the Ninth Circuit on independently protectable characters provides a useful rule of thumb in determining whether characters have achieved the requisite degree of recognizability: the allegedly infringing work seeks to trade on the recognizability of the plaintiff's character. For instance, in *Towle,* the defendant car maker, doing business as "Gotham Garage," manufactured replicas of the Batmobile it intentionally advertised as the "Batmobile" and sold to fans for $90,000. 802 F.3d at 1017. The court took account of the Batmobile's "unique and highly recognizable name" in discussing its "especially distinctive" elements of expression. *Id.* at 1022. Likewise, the recognizability of Godzilla was the draw for the defendant in *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998), which published a book titled "Godzilla" featuring images of Godzilla taken from copyrighted movies. *Id.* at 1215. Likewise, James Bond's independent copyrightability was determined in a case where the defendant intentionally traded upon the recognizability of the character by creating a car commercial centered around "James Bob," and expressly asked casting directors for "'James Bond'-type actors and actresses to star in what conceptually could be 'the next James Bond film.'" *Metro-Goldwyn-Mayer v. Honda Am. Motor Co.*, 900 F. Supp. 1287, 1291-92 (C.D. Cal.

-8-

1    1995).  And in *Air Pirates,* the Ninth Circuit observed that "given the widespread

2    public recognition of the major characters involved here . . . very little would have

3    been necessary to place Mickey Mouse and his image in the minds of the readers," and

4    the defendant's "copying of the graphic image [of the characters] appear[ed] to have

5    no other purpose than to track Disney's work as a whole as closely as possible." *Walt*

6    *Disney Prods. v. Air Pirates,* 581 F.2d 751, 757-58 (9th Cir. 1978).  However a

7    character might achieve the type of status that can be capitalized on, it is clear that the

8    characters in *The Moodsters* bible and pilot do not have it.

9         Plaintiffs assert in a conclusory fashion that "[t]he traits and attributes of the

10   ensemble of Moodsters characters [and each of the individual characters], as reflected

11   in *The Moodsters* Bible and Pilot, sufficiently delineate these characters so that they

12   are recognizable whenever they appear."  (SAC ¶ 143; *id.* ¶¶ 205, 242, 279, 315 (same

13   as to each character).)  But Plaintiffs do not identify any allegedly unique traits,

14   attributes, mannerisms, or quirks embodied by the first generation Moodsters that were

15   not already considered by the Court in reviewing the copyrighted works in connection

16   with Plaintiffs' First Amended Complaint (regardless of whether shared by JellyJam's

17   Moodsters).  Nothing has changed; as the Court previously held, the Moodsters lack

18   "specific traits on par with those of the iconic characters noted above, such that they

19   would be 'instantly recognizable wherever they appear.'" (Order at 7.)

20        The characters in *The Moodsters* are instead a prime example of the type of

21   lightly sketched characters that are not independently protectable.  *See Fun With*

22   *Phonics, LLC v. LeapFrog Enters., Inc.*, 2010 WL 11404474, at *5-6 (C.D. Cal. Sept.

23   10, 2010) ("[C]haracters that are 'lightly sketched' through only short summaries and

24   'whatever insight into their characters may be derived from their dialogue and action'

25   are not entitled to independent protection.")[4]  The Court has already found that

26   _____

27   [4] *See Olson v. Nat'l Broad. Co.*, 855 F.2d 1446, 1452 (9th Cir. 1988) (same); *Jones v.*

28   *CBS, Inc.*, 733 F. Supp. 748, 753 (S.D.N.Y. 1990) (character in pilot script was "not

-9-

1    "Plaintiffs' characters have been sketched through the short summaries contained in

2    *The Moodsters* bible, and in the pilot episode"— the happy Moodster is "usually quite

3    optimistic and enthusiastic," the angry Moodster is "the most likely Moodster to get

4    frustrated and 'blow her top'," and the sad Moodster is "prone to doom and gloom."

5    (Order at 7.)  There is no personality trait or mannerism that would distinguish

6    Plaintiffs' "angry" character from a stock hot-head, or their "sad" character from

7    another stock character expressing melancholy.  *Cf. Alexander v. Murdoch,* 2011 WL

8    2802899, at *10 (S.D.N.Y. May 27, 2011) ("attraction to blonde women cannot be said

9    to be a rare or unique character trait; it is a basic character type and is not

10   copyrightable").  The repetition of these generic traits in the JellyJam Moodsters still

11   does not render Plaintiffs' first generation characters sufficiently delineated or

12   especially distinctive.  (*See* Order at 8 ("Characters are 'not particularly distinctive'

13   when they 'fit general, stereotypical categories. . . .  Consequently, these characters are

14   not entitled to copyright protection.'" (quoting *McCormick v. Sony Pictures Entm't*,

15   2009 WL 10672263, at *14 (C.D. Cal. July 20, 2009), *aff'd,* 411 F. App'x 122 (9th

16   Cir. 2011)).) [5]

17        The SAC includes allegations regarding the development of the Moodsters, to

18   the effect that "experts in the field of emotional intelligence" advised The Moodsters

19   Company "about the script and attributes and traits of the characters, including

20   suggesting facial expressions and dialogue for particular characters based on their

21   review and interpretation of scientific research on emotions."  (SAC ¶ 147.)  Whatever

22

23   one of those rare copyrightable characters, largely because she [was] too undeveloped
     in the pilot script . . . to be more than a stock character.").

24   [5] *Towle* noted that while "[t]he Batmobile has varied in appearance over the years,"

25   "its name and key characteristics as Batman's personal crime-fighting vehicle have
     remained consistent" in depictions "[o]ver the past eight decades [of] comic books."

26   802 F.3d at 1015.  DC Comics, the copyright owner of the comic books, owned a

27   copyright in derivative works featuring the Batmobile to the extent the derivative

28   works "drew on DC's underlying work." *Id.* at 1024-25.

-10-

1    The Moodsters Company intended or what its motives were in developing the
2    *Moodsters* pilot are irrelevant to whether the resulting characters as depicted are
3    copyrightable independent of the pilot.  If anything, the allegations that the Moodsters'
4    attributes and traits were based on scientific research merely serves to confirm that the
5    Moodsters depict universal emotions, expressed in a manner common to all humanity.
6    The entire purpose of Plaintiffs' project, they say, was to help preschoolers name and
7    identify emotions, and the Moodsters could not meet that objective if they did not
8    exhibit stock expressions of emotion—sadness with tears and anger by outbursts.

9          Even taking into account the alleged "focus group" testing of "a version of the
10   Pilot," the scope of the "distribution" of the copyrighted versions of *The Moodsters*
11   (the 2005 bible and the 2007 pilot) is hardly a fraction of the distribution of a video the
12   Ninth Circuit determined could not support independent character copyrightability.
13   *See Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003).  The
14   Moodsters bible and pilot do not come close to the baseline for determining that each
15   Moodster character is "recognizable as the same character whenever it appears."
16   *Towle,* 802 F.3d at 1020–21.  And the later JellyJam characters—which look very
17   different, have new names, and are assigned new jobs as detectives—could not
18   possibly contribute to the recognizability of the characters in the bible and pilot.
19   Plaintiffs' attempt to bootstrap with JellyJam's "second generation" products also runs
20   into a chronological obstacle: Defendants allegedly copied Plaintiffs' first generation
21   characters before the existence of JellyJam's products.  It should be equally obvious
22   that any toy awards that JellyJam's products received (whether in 2015, 2016, or the
23   present) could not retroactively contribute to the recognizability of the first generation
24   Moodsters such that they would qualify for independent copyright protection at the
25   point that Defendants allegedly copied them.
26
27
28

-11-

### 2. Plaintiffs Cannot Claim Copyright Protection for an Ensemble of Unprotectable Characters.

Plaintiffs again assert a claim for infringement of the ensemble of the five main characters in *The Moodsters,* contending that the "traits and attributes of the ensemble of Moodsters characters, as reflected in *The Moodsters* Bible and Pilot, sufficiently delineate these characters so that they are recognizable whenever they appear."  (SAC ¶ 143.)  Although "lightly sketched characters may be descriptive enough to sustain a finding of infringement where other [extrinsic test] factors are also copied," here Plaintiffs have not alleged copying of any other element of the copyrighted works. *Olson*, 855 F.2d at 1452-53.   Because the Moodsters are not delineated to a degree "sufficient to afford copyright protection to a character taken alone," there is no basis for independent protection of an ensemble. *Id.*

### C. *The Moodsters* Characters and the *Inside Out* Characters Are Not Substantially Similar.

Even if the Moodsters were independently copyrightable, they still are not substantially similar to the *Inside Out* characters.   "'In determining whether characters are similar, a court looks at the totality of [the characters'] attributes and traits as well as the extent to which the defendants' characters capture the total concept and feel of figures in [the plaintiff's work].'" *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1163–64 (C.D. Cal. 2015), *aff'd sub nom.* 690 F. App'x 519 (9th Cir. 2017). Courts "must take care to inquire only whether the *protect[a]ble elements, standing alone*, are substantially similar,"[6] and therefore "must be sure 'to slice or filter out the unprotectable elements' that arise from the embodiment of stock ideas in characters in a work.'" *Gallagher v. Lions Gate Entm't Inc.*, 2015 WL 12481504, at *3, *6–7 (C.D. Cal. Sept. 11, 2015).   It is also important to evaluate the differences between two characters, as noticeable differences will preclude a finding of substantial similarity. *See Benay,* 607 F.3d at 626.  Put simply, "' [t]he bar for substantial similarity in a

---

[6] *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).

character is set quite high.'"  *Gallagher,* 2015 WL 12481504, at *7.

### 1. Copyright Claims Are Regularly Dismissed on the Pleadings.

The Court has before it once again the copyrighted works owned by The Moodsters Company and the allegedly infringing work.  A straightforward comparison of the two sets of characters, taking account of judicially noticeable matters, confirms that there is no similarity of protectable expression between them.  "[T]he Ninth Circuit has noted that '[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.'"  *Zella v. E.W. Scripps Co*., 529 F. Supp. 2d 1124, 1130 (C.D. Cal. 2007) (quoting *Christianson v. West Pub. Co.,* 149 F.2d 202, 203 (9th Cir. 1945) (specifically approving of dismissal of a copyright claim by comparing the two works)). "For fifty years, courts have followed this rather obvious principle and dismissed copyright claims that fail from the face of the complaint (and in light of all matters properly considered on a motion to dismiss)." *Zella*, 529 F. Supp. 2d at 1130.[7] "Accordingly, when substantial similarity is absent after a review of the works at issue"—meaning that "no amendment could cure the complaint's deficiencies"—"dismissal with prejudice is not uncommon." *Gallagher*, 2015 WL 12481504, at *2 (collecting cases); *see also Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1116 (N.D. Cal. 2010) (lack of substantial similarity is a "defect [that] cannot be cured by amendment"); *Schkeiban v. Cameron*, 2012 WL 5636281, at *1 (C.D. Cal. Oct. 4, 2012) ("the works at issue are not substantially similar, which is a defect that cannot be cured by an amended complaint").

"In the context of copyright claims, the Court may take judicial notice of generic

---

[7] *See also Fusion Windows & Doors, Inc. v. Am. Reliable Windows, Inc.*, 2013 WL 12126108, at *3 (C.D. Cal. July 12, 2013) (Gutierrez, J.) ("Although Plaintiff contends that such an inquiry is improper for purposes of a motion to dismiss, the Ninth Circuit has recognized that non-infringement can be determined on a motion to dismiss.").

1  elements of creative works," including those that are "generally known and can be

2  verified simply by watching television for any length of time."  *Zella*, 529 F. Supp. 2d

3  at 1129.  Courts in this district routinely dismiss copyright infringement claims with

4  prejudice after taking judicial notice of common creative or cultural elements, and

5  filtering those out in the analysis of substantial similarity of protectable expression.

6  *See id.* (dismissing with prejudice for lack of substantial similarity after taking judicial

7  notice that certain elements of a "television show are common and prevalent in public

8  works").  For instance, Judge Pregerson took "judicial notice of the fact that Marilyn

9  Monroe is frequently the subject of creative works," which "one simply has to watch

10  television or movies or read books to know," and proceeded to dismiss with prejudice

11  a copyright infringement claim premised in part on alleged similarities between two

12  characters who were both brunette Marilyn Monroe impersonators.  *Weiss,* 2015 WL

13  12711658, at *3-4, *6.  Judge Birotte similarly took judicial notice of "generic literary

14  and cultural elements" identified by the defendants, including that the "possibility of

15  resurrection is a common element in religious works" as well as "in horror, fantasy and

16  science fiction books and movies," that "[d]ream sequences are a common narrative

17  device in works of fiction," that the "name Lazarus has been used in numerous

18  expressive works regarding death and resurrection," and that the "term 'The Lazarus

19  Phenomenon' has been used in medical literature" to describe spontaneous signs of life

20  in a person who is clinically dead—and dismissed with prejudice.  *Fillmore v.*

21  *Blumhouse Prods., LLC,* 2017 WL 4708018, at *2-3 (C.D. Cal. July 7, 2017).  So too

22  here.[8]

23  _____

24  [8] Plaintiffs' vague allusions to the impact of expert testimony in this case is transparent
posturing; they had the benefit of their expert's input in crafting the allegations of the

25  SAC.  Moreover, "courts routinely disregard expert testimony in conducting the
extrinsic test" for substantial similarity on copyright infringement claims, and when

26  "the court conducts an extensive analysis of the alleged similarities between works,

27  and considers every alleged similarity identified by the plaintiff, it is not required to

28  consider expert testimony concerning substantial similarity." *Shame on You*, 120 F.

-14-

1

2

      **2.**     **The Premise of Plaintiffs' Claims—That the Moodsters Are Anthropomorphized Emotions—Is Contradicted by the Works at Issue and Must Be Disregarded.**

3          Plaintiffs' pleadings describe the Moodsters as anthropomorphized emotions.

4 They rely upon this attribute as the principal similarity between the Moodsters and the

5 *Inside Out* characters. In deciding a motion to dismiss, the Court may disregard

6 allegations that are contradicted by matters properly subject to judicial notice, meaning

7 that the Court here may disregard the allegations that the Moodsters are *literal*

8 anthropomorphized emotions belonging to a human.  *Daniels–Hall v. Nat'l Educ.*

9 *Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010); *see Steckman v. Hart Brewing, Inc*., 143 F.3d

10 1293, 1295-96 (9th Cir. 1998) (courts "are not required to accept as true conclusory

11 allegations which are contradicted by documents referred to in the complaint"). "[T]he

12 works themselves supersede and control . . . contrary allegations, conclusions or

13 descriptions of the works contained in the pleadings. . . . When a court is called upon

14 to consider whether the works are substantially similar, no discovery or fact-finding is

15 typically necessary, because what is required is only a [] comparison of the works."

16 *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 64 (2d Cir.

17 2010).

18         The Moodsters are furry creatures living in the fictional Moodsterville with

19 friends and family.  Each Moodster feels a range of emotions in response to events

20 experienced in Moodsterville. (*See* SAC, Exs. 2-3.) There is no reference to an external

21 human world and no suggestion that any Moodster is the literal emotion of a human.

22 The *Moodsters* bible describes "Zip" as a yellow Moodster whose "predominating

23 emotion is happy," but "even Zip needs some help figuring out his own emotions."

24

25 Supp. 3d at 1147 (citing *Rice*, 330 F.3d at 1180 (affirming the district court's decision

26 to disregard expert testimony on a copyright infringement claim), and *Segal v. Rogue*

27 *Pictures*, 2011 WL 11512768, at *5 (C.D. Cal. Aug. 19, 2011), *aff'd*, 544 F. App'x

28 769 (9th Cir. 2013) (disregarding expert testimony on substantial similarity on a Rule 12(c) motion)).

(SAC, Ex. 3 at 71.)  The bible lays out a sample show idea, where Sniff (the purportedly sad Moodster) feels left out when his friends hang out without him; though he initially thinks he is sad, it turns out that he is actually "very angry" and "lets his anger out, big-time." (*Id.* at 82.) In short, and as the pilot repeatedly confirms, each Moodster  experiences a mix of emotions: Snorf/Sniff (the "sad" Moodster) is quite happy when he realizes his catching skills are improving (SAC, Ex. 2 at 4:40), and Scootz (née Shake) overcomes his fears—"I'm really not afraid anymore! . . . I'm feeling kind of brave!" (*Id.* at 7:10-7:30.)  Rizzi (née Roary) declares at the end of the pilot, "Hey, I'm not angry anymore, not one bit!" (*Id.* at 20:40.)  While each Moodster is described with an adjective corresponding to its predominant mood (*e.g.,* happy, sad) there is no suggestion that Zip/Zazz is literally the depiction of the human emotion of happiness as experienced in a person's mind, or similarly that Snorf/Sniff is literally the emotion of human sadness.  JellyJam's "second generation" Moodsters which Plaintiffs hold out as displaying a "persiste[nce]" of relevant traits and attributes (SAC ¶ 158) confirm this point: the JellyJam characters expressly identify themselves as "detectives," not as emotions, and admit to experiencing a range of emotions themselves. (RJN, Ex. C.)

### 3. Asserted Similarities Between the Characters Are Based on Unprotectable Elements and Must Be Filtered Out.

The alleged similarities between *The Moodsters* and the *Inside Out* characters are not protected expression that could support a finding of substantial similarity.

### (a) *Anthropomorphizing Emotions Is Unprotectable.*

A "plaintiff may claim no protection for his or her *ideas* which animate a work which is within the subject matter of copyright, as it is only the *expression* of those ideas over which a monopoly is granted. Therefore, '[s]ubstantial similarity refers to similarity of expression, not merely similarity of ideas or concepts.'" *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1176 (C.D. Cal. 2001) (quoting *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997)). Even

1  if the Moodsters were actual emotions belonging to a human, as opposed to fictional

2  characters who each have a predominant mood, the idea of anthropomorphizing

3  emotions as animated characters is not protectable expression.[9]  Copyright does not

4  "protect against the borrowing of abstract ideas contained in the copyrighted work."

5  *Midas Prods., Inc. v. Baer*, 437 F. Supp. 1388, 1390 (C.D. Cal. 1977).

6          In any event, other works show that the idea of anthropomorphizing abstract

7  concepts (whether emotions, cognition, or personality traits) is not original with

8  Plaintiffs.  The morality plays of the middle ages (the 15th-century *Everyman* and

9  *Hickscorner* are examples) were littered with such characters:  Knowledge,

10  Imagination, Contemplation, Discretion, Freewill, and so on.  (RJN at 8-11.)[10]  The

11  angel and devil on a person's shoulder is a well-trodden device showing the interaction

12  between a person's competing emotions or instincts, especially in the field of

13  animation.  (*See, e.g.,* Fig. 1.) The ubiquity of depicting the battling factions of a

14  character's conscience can be verified just by spending a Saturday morning watching

15  cartoons.  *See Zella,* 529 F. Supp. 2d at 1129 (taking judicial notice of "generic

16  elements of creative works" that "can be verified simply by watching television for any

17  length of time").  (RJN at 8-11.)

18

19  _____

[9] *See, e.g., Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1144
20  (E.D. Cal. 1987) (holding that the idea of an anthropomorphic raisin is not subject to
copyright protection); *Green v. Proctor & Gamble, Inc.,* 709 F. Supp. 418, 421
21  (S.D.N.Y. 1989) ("the idea of characterizing oral bacteria as humanoid 'cavity makers'
is hardly protectible"); *Gibson v. CBS, Inc.*, 491 F. Supp. 583, 585 (S.D.N.Y. 1980)
22  ("The attribution to an egg of the qualities normally possessed by human beings is of
course an 'idea' and no more. The idea alone is not subject to copyright protection.").
23

[10] Copies of the medieval manuscripts, written in old English, are available at
24  https://ia802609.us.archive.org/25/items/everyman00unknuoft/everyman00unknuoft.pdf
25  (*Everyman*, includes as characters Knowledge, Discretion, Strength, Fellowship) and
https://ia802304.us.archive.org/20/items/hickscornerc149747worduoft/hickscornerc14
26  9747worduoft.pdf (*Hickscorner*, includes as characters Imagination, Contemplation,
27  Freewill, Perseverance).

28



Fig. 1

The works referenced in the SAC, including Disney's own *Reason and Emotion* film from 1943, also verify this. (*See* SAC ¶¶ 180-82.) Each of the referenced works represents aspects of a person's psyche competing through characters housed in a human head—the same premise of *Inside Out* (but not of *The Moodsters*). In *Reason and Emotion,* Disney represented a man's Emotion as a caveman and his Reason as a professorial man, the two competing for control of the driver's seat and levers in a human head. (Fig. 2; RJN at 6, Ex. D-1; SAC ¶ 180 ("In this short film, the Reason character is defined as the ability to think, and the Emotion character is defined as the ability to feel.").) The SAC states that in *Herman's Head* "four human characters represented different aspects of the main character's personality" inside his head, and in "Disney's *Cranium Command* ride at Epcot Theme Park . . . different parts of the body were represented by human characters." (SAC ¶ 182; Fig. 3.)[11] Likewise, the protagonist in *Poison Berry in my Brain* had five different characters in her head governing her actions. (SAC ¶ 182; Fig. 5.)



Fig. 2          Fig. 3          Fig. 4          Fig. 5

"Generalized themes and ideas," like the idea of representing competing aspects of a person's psyche or personality as characters, "lie in the public domain and are not

---

[11] More accurately, *Cranium Command* featured a pilot named Buzzy manning the cortex of the brain in a command center evocative of the Headquarters in *Inside Out*, with other characters such as General Knowledge, Left Brain, and Right Brain. (RJN at 6, Exs. D-2, D-3; Fig. 4.) However, the distinction is not material for purposes of this motion.

-18-

copyrightable." *Madrid v. Chronicle Books*, 209 F. Supp. 2d 1227, 1241 (D. Wyo. 2002).[12]

Plaintiffs also ground their infringement claims partly in the selection of a total of five emotions as characters in *Inside Out,* four of which are the "same" generic emotion as those expressed by the characters in *The Moodsters.*  (SAC ¶¶ 80-90.) Plaintiffs' assertion that the mere selection of emotions is protectable is tantamount to claiming that Plaintiffs have a monopoly over the idea of anthropomorphizing anger, sadness, happiness, and fear—universal human emotions.  Just as the idea of anthropomorphizing emotions is unprotectable, so too is the idea of anthropomorphizing a particular emotion.  At the risk of being repetitive, Plaintiffs "fail[] to understand the fundamental difference between idea and expression," and "would ask this Court to grant [them] a monopoly on unprotected elements, such as themes, emotions, and attitudes on which [cartoons] commonly rely."  *McGee v. Benjamin*, 2012 WL 959377, at *10 (D. Mass. Mar. 20, 2012); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347-48 (1991) (facts "are part of the public domain available to every person").

### *(b)   The Traits Commonly Associated with Human Emotions Are Unprotectable.*

Plaintiffs do not dispute that basic manifestations of a human emotion (such as a sad character crying) are not protectable expression.  "[B]asic human traits . . . 'are too general or too common to deserve copyright protection.'"  *Marcus v. ABC Signature Studios, Inc.*, 2017 WL 4081885, at *10 (C.D. Cal. Sept. 13, 2017).  The *scenes a faire* doctrine also excludes from copyright protection material that is "standard," stock, or common to a particular topic, or that "necessarily follows from a common theme or setting."  *Smart Inventions, Inc. v. Allied Cmcn's Corp.,* 94 F. Supp. 2d 1060, 1067

---

[12] *See Madrid,* 209 F. Supp. 2d at 1241 ("a big, fat, furry monster with horns on its head, a small, thin child, monsters in children's bedroom closets and vice versa at night, monsters who are afraid of children—are not original, as they appear in many children's stories and are generally known in the public sphere").

(C.D. Cal. 2000) (quoting 4 Nimmer § 13.03[B][4]).  Any asserted similarities between the commonplace expressions of a particular emotion must be filtered out.

### (c)   The Association of Red With Anger, Blue With Sadness, and Yellow With Joy Is Unprotectable.

Plaintiffs claim copyright protection over "designat[ing] each character with a core color," and "select[ing] particular colors to correspond with particular emotions," namely, red for anger, blue for sadness, and yellow for happiness.  (SAC ¶¶ 189-91.)  The idea of associating colors with emotions (and particularly the association of red with anger, blue with sadness, and yellow with happiness) is a linguistic and cultural staple, not an invention of Plaintiffs.  Color-coding a character to designate its emotional state is a common extension of this natural association.

The specific association of anger with the color red, as well as heat or fire, is a common trope.  The same is true of the connections between blue and sadness, and yellow and happiness.  Our language is rife with these associations expressed in metaphoric:  an angry person is said to be hot-headed, hot under the collar, seeing red, breathing fire, or fuming, or to have a short fuse.[13]  "Blue" is literally a synonym for "sad," and has been since the middle ages.  (*See* RJN, Ex. E-6 (The Am. Heritage Dictionary of Idioms, at 142 (2d ed.) ("The use of *blue* to mean 'sad' dates from the late 1300s.")).)  Someone who is sad is said to have the blues, or to be feeling blue or singing the blues.  Another staple metaphor is the association of happiness and sunshine, a yellow glow:  A happy person is a ray of sunshine, lights up the room, radiates joy, has a sunny disposition, or is beaming.[14]  Plaintiffs even concede that red is associated with anger, blue with sadness, and yellow with happiness, and that they

---

[13] *See* RJN, Exs. E-1 (def. of "see red" is "to be angry"); E-2 (def. of "hot-headed"); *id.* (def. of "hot under the collar"); E-3 (def. of "breathe fire"); E-4 (def. of "fume about"); E-5 (def. of "short fuse").

[14] *See* RJN, Exs. E-7 (def. of "light up"; "[t]his expression transfers physical illumination to human moods"); E-8 (def. of "ray of sunshine");  E-9 (def. of "sunny"); E-10 (def. of "beam" is alternatively to "shine brightly" or "smile radiantly").

-20-

can also be associated with other concepts (red with lust, blue with peace, and yellow with cowardice).  (SAC ¶ 191.)  Plaintiffs obviously acknowledge the cultural connection between specific colors and specific emotions, and therefore that their selection of colors for the Moodsters was completely conventional.

The association of colors with emotions is also a common trope in visual creative works—so much so that there is an entire entry on the trope of  "Colour-Coded Emotions" at tvtropes.org.[15]  Consistent with the association of anger with red and heat, cartoons routinely demonstrate a character's emotional reaction of anger by having the character turn red, and even burst into flames.  (*See, e.g.,* Fig. 7.)


Fig. 7

The Court may take judicial notice of generic literary and cultural elements, which also includes the color-emotion pairings that Plaintiffs utilized in *The Moodsters. See Fillmore,* 2017 WL 4708018, at *2-3.  (RJN at 8-11.)

Plaintiffs make no attempt to explain how their purported *expression* of the idea of anthropomorphizing emotions is similar to the expression of that idea in *Inside Out.*[16]  The similarities asserted between *The Moodsters* and *Inside Out* characters do not clear "[t]he bar for substantial similarity in a character [which] is set quite high."

---

[15] http://tvtropes.org/pmwiki/pmwiki.php/Main/ColourCodedEmotions.

[16] *See Funky Films, Inc. v. Time Warner Ent'mt Co.*, 462 F.3d 1072, 1077-81 (9th Cir. 2006) (no substantial similarity in protectable expression between two works about family-run funeral home); *Williams v. Crichton,* 84 F.3d 581, 589 (2d Cir. 1996) (no substantial similarity between works both based on "the unprotectible idea of a dinosaur zoo"); *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045-46 (9th Cir. 1994) (no substantial similarity in protectable expression between two family comedy/adventure films about people who are accidentally shrunk); *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985), *cert. denied*, 474 U.S. 826 (1985) (no substantial similarity in protectable expression between two works about exposing a criminal organization that murders healthy people and sells their organs for transplants).

*Sheldon Abend Revocable Tr. v. Spielberg*, 748 F. Supp. 2d 200, 208–09 (S.D.N.Y. 2010).  In *Hogan v. DC Comics,* 48 F. Supp. 2d 298 (S.D.N.Y. 1999), for instance, "the two main characters were both half-human, half-vampires named Nicholas Gaunt; both were young white males with pale skin, a medium build, dark, tired eyes, and dark, scraggly hair; both sought to learn the truth about their origins; both learned about their origins through flashbacks or memories; both faced the choice of pursuing good or evil; and both were indoctrinated into the forces of evil. The *Hogan* Court nonetheless found that the two Nicholas Gaunts were not substantially similar because the similarities were among 'unprotectable ideas and themes that do not represent any original elements of plaintiffs' work.'"  *Sheldon*, 748 F. Supp. 2d at 208-09 (discussing holding in *Hogan*).  The same result is compelled here.

### 4. Differences Between the Characters Also Precludes a Finding of Substantial Similarity.

Plaintiffs' claim of substantial similarity also fails on account of the many differences between the characters in *The Moodsters* and *Inside Out.  See, e.g., Benay*, 607 F.3d at 626–27 (finding that differences between two characters' traits including marital status, job, dreams/nightmares, and ideology prevented a finding of substantial similarity).  As discussed, the Moodsters are not the literal emotions belonging to a human; the characters in *Inside Out* are. (*See infra,* Section II.C.2.)  As a result, the roles the characters play, and their relationships with other characters, are strikingly different.  Because the *Inside Out* characters are the actual emotions of an 11-year-old girl, they respond to stimuli experienced by the girl, direct the girl's actions in response, and mold her memories. They have no family of their own; they are a component of the human girl.  By contrast, the Moodsters live in the fictional world of Moodsterville with family and friends, and without any connection to the human world (much less an existential connection with a particular human).  *See Benay*, 607 F.3d at 627 (noting that characters in one work did not have a parallel in the other); *Marcus,* 279 F. Supp. 3d at 1069 (characters not substantially similar where plaintiff's work

1    "set up a love interest for Kimberly, while there is no equivalent love interest for

2    [defendants'] Zoey").  The differences in the cast of characters also highlights the

3    absurdity of their claim for infringement of the "ensemble" of Moodsters: The *Inside*

4    *Out* characters include a green-skinned Disgust, without any purported analogue in *The*

5    *Moodsters*, and *The Moodsters* characters include a pink-furred Olovia/Oola (the

6    "loving" character), without any analogue from *Inside Out*.

7         Plaintiffs assert that the Moodsters are not androgynous, claiming that as a point

8    of similarity with the *Inside Out* characters.  But the *Moodsters* bible explicitly assigns

9    genders which are mostly the opposite of the allegedly parallel characters from *Inside*

10   *Out.*  (Zip/Zazz is supposedly male; Joy is female.  Roary/Rizzi is female; Anger is

11   male.  Sniff/Snorf is male; Sadness is female.)



Anger [male]; Disgust [female]; Joy [female]; Fear [male]; Sadness [female]

17        The *Inside Out* characters and the Moodsters are also strikingly different in

18   appearance.  Three of the *Inside Out* characters are humanoids with human features,

19   skin, and hair, whereas all of the Moodsters appear to be some species of furry alien

20   animal with antennae and tails.  *Inside Out*'s brick-like Anger and bug-like Fear

21   likewise bear no resemblance to the furry animal-like Moodsters.  The *Inside Out*

22   characters all wear clothes, in their own personal style; the "first generation"

23   Moodsters do not wear clothes.  The *Inside Out* characters have distinct, adult vocal

24   patterns and pitches, whereas the Moodsters all have tiny, childlike voices.  *See*

25   *Esplanade Prods., Inc. v. Walt Disney Co.,* 2017 WL 5635027, at *11 (C.D. Cal. Nov.

26   8, 2017) (finding character design not substantially similar where "none of the [parties'

27   character] pairings actually include the same animals" and "the *Looney* characters are

28   unclothed while the *Zootopia* characters are all elaborately costumed").

-23-

Plaintiffs' allegation that each of the allegedly infringing *Inside Out* characters are the same color as the allegedly infringed Moodsters is demonstrably wrong. *Inside Out*'s Fear is purple, but Plaintiffs' Shake/Scootz (the "scared" character) is green. *Inside Out*'s Joy has flesh-toned skin, a green dress, and a blue pixie haircut. Joy exudes a warm glow, like a ray of sunshine, but is not herself colored yellow; Plaintiffs' Zip/Zazz (the "happy" character) is covered in yellow fur. While the association of red with anger and blue with sadness is a generic cultural element that should be filtered out in conducting the substantial similarity analysis, even taking into account the similar color of *Inside Out*'s Anger and Sadness and *The Moodster*'s Roary/Rizzi and Sniff/Snorf does not constitute *substantial* similarity under the extrinsic test, especially in light of the many differences between the characters. *Cf. Fun With Phonics*, 2010 WL 11404474, at *6 ("Once it is recognized that the humanizing of the letter J is noncopyrightable, the only similarity remaining is the choice of similar shades of pink," and "[t]he choice of a similar color, taken alone, is insufficient basis for a reasonable jury to find substantial similarity under the extrinsic test" in comparing artworks).

In light of the unprotectable superficial similarities between the characters, and the overwhelming differences, Plaintiffs fall short of the very high bar for legally actionable substantial similarity in this context.

### 5.   The Inverse Ratio Rule Does Not Salvage Plaintiffs' Claims.

Plaintiffs will likely attempt to invoke the so-called inverse ratio rule, which "ostensibly lessens the quantum of proof required to show copying when the plaintiff can show that the defendant had a 'high degree of access' to the protected work." *Novak v. Warner Bros. Pictures, LLC*, 387 F. App'x 747, 749 (9th Cir. 2010). This rule applies "only in cases in which the alleged copier has conceded access to the work while also containing numerous similarities; neither of which is present in the current

-24-

1  case." *Gallagher*, 2015 WL 12481504, at *14 n.12 (decided on a motion to dismiss).[17]

2        Even if the inverse ratio rule were applied, it does not relieve Plaintiffs of their

3  burden to prove substantial similarity of protectable expression. "Plaintiff[s] confuse[]

4  the issues of copying *as a factual matter* and actionable copying"; "no matter how

5  steeped in plaintiff's work [a] defendant may have been, if the resulting product is non-

6  actionable as a matter of law, then the absence of substantial similarity that must

7  underlie every successful claim still dooms the infringement suit." *Bensbargains.Net,*

8  *LLC. v. Xpbargains.Com*, 2007 WL 2385092, at *3 (S.D. Cal. Aug. 16, 2007) (quoting

9  4 Nimmer on Copyright, § 13.03[D] (2007)).  Indeed, courts routinely grant dismissal

10  on the pleadings for lack of substantial similarity after assuming access by

11  defendants.[18]

12  ## IV.  CONCLUSION

13        For the foregoing reasons, Defendants request that this Court dismiss Plaintiffs'

14  Second Amended Complaint with prejudice.

15  DATED:  March 15, 2018      MUNGER, TOLLES & OLSON LLP
                         GLENN D. POMERANTZ

16                           ERIN J. COX

17                           KENNETH M. TRUJILLO-JAMISON

18             By:     */s/ Erin J. Cox*

19                     ERIN J. COX

20           Attorneys for Defendants

21

22

---

[17] *See also Idema*, 162 F. Supp. 2d at 1175-76 (inverse ratio rule inapplicable where

23  "Defendants have assumed (as is not uncommon in claims of copyright infringement)
that they had sufficient access to Plaintiffs' works to satisfy the first element of the

24  test" for copyright infringement).

25  [18] *See, e.g., Wild v. NBC Universal,* 513 F. App'x 640, 642 (9th Cir. 2013) (affirming
dismissal without leave to amend for lack of substantial similarity; noting district court

26  "assumed that NBC had access to the work"); *Identity Arts v. Best Buy Enter. Servs.
Inc.,* 2007 WL 1149155, at *8, *18 (N.D. Cal. Apr. 18, 2007) (access uncontested;

27  granting Rule 12(c) motion for lack of substantial similarity); *Gallagher*, 2015 WL
12481504, at *14 (granting motion to dismiss for lack of substantial similarity;

28  defendants' "degree of access to the work is irrelevant").