RONALD J. SCHUTZ (admitted *pro hac vice*)
Email: rschutz@robinskaplan.com
PATRICK M. ARENZ (admitted *pro hac vice*)
Email: parenz@robinskaplan.com
RUTH L. OKEDIJI (admitted *pro hac vice*)
Email: rokediji@robinskaplan.com
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:  612–349–8500
Facsimile:   612–339–4181

MICHAEL A. GEIBELSON (STATE BAR NO. 179970)
Email: mgeibelson@robinskaplan.com
**ROBINS KAPLAN LLP**
2049 Century Park E., Suite 3400
Los Angeles, CA 90067
Telephone: 310-552-0130
Facsimile:   310-229-5800

Attorneys for Plaintiffs Denise Daniels and
The Moodsters Company

**ROBINS KAPLAN LLP**
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Denise Daniels and The Moodsters Company;<br><br>        Plaintiffs,<br><br>v.<br><br>The Walt Disney Company; Disney Enterprises, Inc.; Disney Consumer Products and Interactive Media, Inc.; Disney Interactive Studios, Inc. Disney Shopping, Inc.; and Pixar<br><br>        Defendants. | Case No. 2:17−cv−04527−PSG−SK<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**Judge:** Hon. Philip S. Gutierrez<br><br>**Date:**  May 14, 2018<br>**Time:**  1:30 p.m.<br>**Place:**  Courtroom 6A<br><br>**Action Filing Date:**  June 19, 2017 |

**Table of Contents**

Page

Introduction ............................................................................................ 1

Factual Background ............................................................................... 2

Argument ............................................................................................... 3

    I.    The Amended Complaint pleads a plausible claim that *The
        Moodsters* characters are copyrighted. ............................................... 3

        A.    Disney ignores Ninth Circuit law that character
            copyrightability is an issue of fact. ............................................ 4

        B.    Moodsters Co. alleged a plausible claim that *The Moodsters*
            are copyrighted characters. .......................................................... 7

            1.    *The Moodsters* characters as an ensemble satisfy the
                 three-element test in *DC Comics v. Towle.* ............................ 7

                a.    The Amended Complaint details *The Moodsters*
                     sufficient delineation because the characters are
                     not lightly sketched and have persisted for over a
                     decade. ....................................................................... 8

                b.    *The Moodsters* are especially distinctive because
                     they are not generic or stock characters from
                     earlier works. ........................................................... 10

            2.    Disney's footnote-response to Moodsters Co.'s "story
                 being told" allegations does not support dismissal. ............ 12

        C.    Moodsters Co. alleged a plausible claim that each individual
            Moodsters character is a copyrighted character. ....................... 12

         D.    Disney's remaining arguments miss the mark. ......................... 14

            1.    Disney manufactures a non-existent "rule of thumb" ......... 14

            2.    Disney's conclusory arguments about the second
                 iteration of *The Moodsters* are irrelevant. ........................... 15

    II.    The Amended Complaint alleges a plausible claim of substantial
        similarity ............................................................................................ 17

        A.    Disney's attacks on *The Moodsters* go to originality, which is a
            question of fact. ........................................................................ 17

         B.    The inverse-ratio rule is binding precedent that
            commensurately lowers Moodsters Co.'s burden. ..................... 19

C.  Disney offers no argument about the similarity between the combination of expressive elements in the *Inside Out* and *The Moodsters* characters. .................................................................. 20

D.  Disney's arguments about isolated elements still fail. ................. 21

Conclusion ...................................................................................................... 25

**Table of Authorities**

**Cases**

*Anderson v. Stallone,*
    1989 U.S. Dist. LEXIS 11109 (C.D. Cal. Apr. 26, 1989).....................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................................3

*Bach v. Forever Living Prods., Inc.,*
    473 F. Supp. 1127 (W.D. Wash. 2007) ..............................................11, 12, 16, 20

*Baxter v. MCA, Inc.,*
    812 F.2d 421 (9th Cir. 1987) ........................................................................19, 25

*Bensbargains.net v. XPbargains.com,*
    2007 U.S. Dist. LEXIS 60544 (S.D. Cal. Aug. 16, 2007) ...................................20

*Blizzard Entm't, Inc. v. Lilith Games Co.,*
    149 F. Supp. 3d 1167 (N.D. Cal. 2015)................................................................7

*Bullen v. De Bretteville,*
    239 F.2d 824 (9th Cir. 1956)................................................................................3

*Cap Co., Ltd. v. McAfee, Inc.,*
    2015 U.S. Dist. LEXIS 83522 (N.D. Cal. June 26, 2015) ...................................3

*Cory Van Rijin v. Cal. Raisin,*
    697 F. Supp. 1136 (E.D. Cal. 1987) ...................................................................6

*DC Comics v. Towle,*
    802 F.3d 1012 (9th Cir. 2015).....................................................................passim

*Dezendorf v. Twentieth Century,*
    99 F.2d 850 (9th Cir. 1938)................................................................................17

*Disney Enterprises, Inc. v. Sarelli,*
    No. 1:16-cv-02340, Dkt. No. 60 (S.D.N.Y. Oct. 13, 2017) ..................................4

*Divine Dharma Meditation v. Inst. of Latent Energy Studies,*
    2016 U.S. Dist. LEXIS 68890 (C.D. Cal. May 25, 2016)...................................18

*Edgar Rice Burroughs, Inc. v. Mann's Theatres,*
    195 U.S.P.Q. 159 (C.D. Cal. 1976)....................................................................4

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Feist Publ'ns v. Rural Tel. Service Co., Inc.*,
  499 U.S. 340 (1991) ...................................................................................... 17

*Feltner v. Columbia Pictures*,
  523 U.S. 340 (1998) ........................................................................................ 5

*Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*,
  772 F. Supp. 2d 1135 (C.D. Cal. 2008) ..................................................... 4, 16

*Fun with Phonics v. Leapfrog*,
  2010 U.S. Dist. LEXIS 146641 (C.D. Cal. Sept. 10, 2010 ........................... 6, 7

*Gaiman v. McFarlane*,
  360 F.3d 644 (7th Cir. 2004) ..................................................................... 4, 11

*Gallagher v. Lions Gate*,
  2015 U.S. Dist. LEXIS 122441 (C.D. Cal. Sept. 11, 2015) ....................... 19, 20

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997) ........................................................................ 10

*Halicki Films, LLC v. Sanderson Sales & Marketing*,
  547 F.3d 1213 (9th Cir. 2008) (*Halicki I*) ....................................... 1, 4, 5, 8, 14

*Halicki v. Shelby Int'l*,
  2005 U.S. Dist. LEXIS 28214 (C.D. Cal. Nov. 11, 2005) ............................... 17

*Halicki v. Shelby Int'l*,
  No. 04-08813, Dkt No. 330 (C.D. Cal. Aug. 12, 2009) (*Halicki II*) ..... 6, 8, 11, 12

*Idema v. Dreamworks*,
  162 F. Supp. 2d 1129 (C.D. Cal. 2001) .......................................................... 20

*Identity Arts v. Best Buy*,
  2007 U.S. Dist. LEXIS 32060 (N.D. Cal. Apr. 18, 2007) ................................ 20

*JB Oxford & Co. v. First Tenn. Bank*,
  427 F. Supp. 784 (M.D. Tenn. 2006) ............................................................... 4

*Jones v. CBS, Inc.*,
  733 F. Supp. 748 (S.D.N.Y. 1990) ................................................................... 6

*Jones v. Johnson*,
  781 F.2d 769 (9th Cir. 1986) ........................................................................... 3

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ............................................................... 23

*McCormick v. Sony*,
2011 U.S. App. LEXIS 1596 (9th Cir. Jan. 24, 2011) .......................... 7

*MGM v. Honda*,
900 F. Supp. 1287 (C.D. Cal. 1995) ........................................... 7, 12, 14

*Neilson v. Union Bank of Cal.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................... 23

*Olson v. Nat'l Broad. Co.*,
855 F.2d 1446 (9th Cir. 1988) .......................................................... 6, 8

*Optima Tax Relief v. Channel Clarity*,
2015 U.S. Dist. LEXIS 186829 (C.D. Cal. Aug. 26, 2015) ................. 17

*Paramount Pictures v. Axanar Prod. Inc.*,
2017 U.S. Dist. LEXIS 19670 (C.D. Cal. Jan. 3, 2017) ................... 7, 11

*Pasillas v. McDonald's Corp.*,
927 F.2d 440 (9th Cir. 1991) ............................................................... 14

*Rice v. Fox*,
330 F.3d 1170 (9th Cir. 2003) ...................................................... passim

*Saban Entm't, Inc. v. 222 World Corp.*,
865 F. Supp. 1047 (S.D.N.Y. 1994) ..................................................... 23

*Sapon v. DC Comics*,
2002 U.S. Dist. LEXIS 5395 (S.D.N.Y. Mar. 29, 2002) ....................... 7

*Shame on You v. Banks*,
120 F. Supp. 3d 1123 (C.D. Cal. 2015) ............................................... 18

*Sheldon v. Metro-Goldwyn Pictures, Corp.*,
81 F.2d 49 (2d Cir. 1936) .................................................................... 24

*Smith v. Jackson*,
84 F.3d 1213 ....................................................................................... 19

*Stewart v. Abend*,
495 U.S. 207 (1990) ............................................................................ 15

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ............................................................17, 18, 19, 21

*Teixeira v. City of Alameda*,
    873 F.3d 670 (9th Cir. 2017) ........................................................................ 3, 16

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) ................................................................................ 18

*Toho Co., Ltd. v. William Morrow & Co.*,
    33 F. Supp. 2d 1206 (C.D. Cal. 1998) ................................................................. 15

*Vassigh v. Bai Brands LLC*,
    2015 U.S. Dist. LEXIS 90675 (N.D. Cal. July 15, 2015) ..................................... 5

*Walt Disney Products v. Air Pirates*,
    581 F.2d 751 (9th Cir. 1978) ............................................................. 4, 5, 7, 9, 15

*Wild v. NBC*,
    513 Fed. Appx. 640 (9th Cir. 2013) .................................................................... 20

*Williams v. Gaye*,
    2018 U.S. App. LEXIS 7057 (9th Cir. Mar. 21, 2018) .......................... 18, 19, 20

*Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007)  ............................................. 7

**Statutes**

17 U.S.C. §§ 101-1101 .............................................................................................. 16

U.S. Code §302 ........................................................................................................... 16

U.S. Code § 504 ......................................................................................................... 17

**Rules**

Fed. R. Civ. P. 12 ............................................................................................. 7, 21, 24

**Introduction**

Moodsters Co.'s copyright claims are ripe to move forward on the merits. The Second Amended Complaint addresses each of the Court's concerns from its earlier order. Denise Daniels and her team at Moodsters Co. expressed an idea that neither Disney nor anyone had ever done before. Moodsters Co.'s five single-emotion, color-coded characters—*The Moodsters*—have persisted since 2005, including through toys and books available at retail stores and online across the country; the focus of international news outlets; and the basis for various national toy awards. Moodsters Co. has also added more detail to the Amended Complaint about focus groups at Yale University that shows the characters' well-defined nature. And unlike a stock magician wearing stock magician garb, *The Moodsters* are unlike any characters that came before them. They are not, thus, generic, stereotypical, or stock characters. At a minimum, the added detail in this Amended Complaint alleges a plausible claim that *The Moodsters* are copyrighted.

Ninth Circuit case law—that Disney ignores—confirms this conclusion. In *Halicki v. Sanderson*, the Ninth Circuit remanded the issue over whether an inanimate car was a copyrighted character because it was a "fact intensive issue." On remand, Judge Otero found the car's thematic and abstract qualities sufficient to present an issue of fact for the jury to decide. Here, the standard is much lower—only whether the Amended Complaint states a *plausible* claim—and *The Moodsters* are more expressive and particularized than the car in *Halicki*.

This case should proceed on the merits. Disney bases its opposition, especially when it comes to substantial similarity, on efforts to offer evidence to compare early works with *The Moodsters*. But that is not how the Federal Rules of Civil Procedure work. The Amended Complaint sets forth detailed, particular, and—above all—plausible claims. The parties should now prepare their cases and develop evidence to submit to the trier of fact on the merits.

/ / /

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Factual Background**

Denise Daniels has dedicated her 40-year career to children's social and emotional health. SAC ¶¶26-35. This passion led her to found The Moodsters Co. to develop an animated program featuring single-emotion characters that reside inside a child. *Id.* ¶¶37-38. Ms. Daniels recruited a high-profile team with proven industry success to execute on her idea. *Id.* ¶¶39-43. She raised over $3 million for investment in Moodsters Co. *Id.* ¶146. With that investment, Moodsters Co. developed an original collection of five single-emotion characters that reside inside a child to express an idea for an animated program featuring emotion characters that had never been done before. Moodsters Co. tested these characters at Yale University, which confirmed children's interest in *The Mooodsters*. *Id.* ¶¶147-50. Moodsters Co. then finalized its professional production of the pilot featuring three-dimensional computer-generated imagery (CGI).

*The Moodsters'* success continues to this day. Toys and books featuring an updated version of *The Moodsters* became available for sale in 2015 at Target, and through Toys 'R Us, Amazon, Walmart, and other international stores. *Id.* ¶156.[1] National and international media outlets have featured *The Moodsters*. *Id.* ¶158. *The Moodsters* are the subject of many awards and recognitions too. *Id.* ¶157.

Disney has enjoyed success from *The Moodsters* as well. Daniels and her team pitched *The Moodsters* to Disney from 2005 through 2009. *Id.* ¶¶60-71. Disney's access reached the highest levels, including Thomas Staggs (then CFO of The Walt Disney Co.), Rich Ross (then Chair of Walt Disney Studios), and Pete Docter (Director at Pixar). *Id.* Up until this time, Disney had never before released an animated feature that anthropomorphized emotions as individual characters. *Id.* ¶¶96-105. But shortly after Docter's detailed conversation with Daniels about *The*

---

[1] The toys are also available to the U.S. Military through the Army Air Force Exchanges. *Id.* ¶156. *The Moodsters* were released recently in New York and Chicago Public Schools as well.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Moodsters*, Docter led Disney's efforts on *Inside Out*—a movie that featured five single-emotion, color-coded characters, just like *The Moodsters*. *Id.* ¶¶71-73, 84-85. Disney released *Inside Out* five years later, which has generated over $1 billion.

Disney's copying of *The Moodsters* led to this litigation. Following the Court's order earlier this year, Moodsters Co. filed a Second Amended Complaint that addressed the Court's previous concerns about the copyrightability of *The Moodsters*. This Amended Complaint includes Ms. Daniels' *Desny* claim as Count 1,[2] and Moodsters Co.'s copyright claims as Counts 2-5.

## Argument

Disney's motion fails to acknowledge or apply the law governing its motion to dismiss. Moodsters Co. needs not prove its case in the Complaint. *Cap Co., Ltd. v. McAfee, Inc.*, 2015 U.S. Dist. LEXIS 83522, at *3 (N.D. Cal. June 26, 2015). Indeed, Moodsters Co. must allege only a *plausible* claim, even if it is not probable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court presumes all facts alleged in the Complaint to be true, and resolves all reasonable inferences in Moodsters Co.'s favor. *Teixeira v. City of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). The Court's role here is not to decide facts because "[a]ny weighing of the evidence is inappropriate on a 12(b)(6) motion." *Jones v. Johnson*, 781 F.2d 769, 772 n.1 (9th Cir. 1986). The Amended Complaint sets forth plausible claims.

## I.    The Amended Complaint pleads a plausible claim that *The Moodsters* characters are copyrighted.

Disney bases its motion on a heightened standard for copyright protection that does not exist. While famous characters like Batman, Godzilla, and Tarzan are protected by copyright, so too are lesser known characters. "Cheeta," the chimp in

---

[2] "[I]t is hornbook law that an amended pleading supersedes the original, the latter being treated thereafter as non-existent." *Bullen v. De Bretteville*, 239 F.2d 824, 833 (9th Cir. 1956). The Amended Complaint, thus, names Ms. Daniels as a Plaintiff for Count 1 to preserve that claim for appeal. The Amended Complaint recognizes explicitly that the Court has dismissed that claim with prejudice. Dkt. No. 51 at 24 n.6.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Tarzan, for instance, is a copyrighted character. *See Edgar Rice Burroughs, Inc. v. Manns Theatres*, 195 U.S.P.Q. 159 (C.D. Cal. 1976); 1 Nimmer on Copyright § 2.12 [3] n.50.[3] So is "Bill," a dollar-bill costumed character featured in several banking commercials. *JB Oxford & Co. v. First Tenn. Bank*, 427 F. Supp. 2d 784, 799 (M.D. Tenn. 2006) ("While Bill is perhaps not as distinctive as Superman, Godzilla, James Bond or Rocky, he is certainly more distinctive than the 'Magic Magician' in *Rice*."). As Disney itself has represented to another federal court, "a character []has a specific name and a specific appearance . . . [n]o more is required for a character copyright." Dkt No. 40-3 at 21 (*Disney Enterprises, Inc. v. Sarelli*, No. 1:16-cv-02340, Dkt. No. 60 (S.D.N.Y. Oct. 13, 2017) (quoting *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004)). Indeed, this Court should not ignore the development of the Ninth Circuit's law on this point: literary characters require a heightened standard to establish copyright protection; animated characters do not. *See, e.g., Walt Disney Products v. Air Pirates*, 581 F.2d 751, 755 (9th Cir. 1978); *Fleischer Studios, Inc. v. A.V.E.L.A. Inc.*, 772 F. Supp. 2d 1135, 1144 (C.D. Cal. 2008). The standard for copyrighting an animated character is not as rigorous as Disney contends.

### A.    Disney ignores Ninth Circuit law that character copyrightability is an issue of fact.

This Court should not decide the copyrightability of *The Moodsters* characters on a motion to dismiss. In *Halicki Films, LLC v. Sanderson Sales & Marketing*, the Ninth Circuit considered whether the car "Eleanor" in the movie *Gone in 60 Seconds* was a copyrighted character. 547 F.3d 1213, 1224-25 (9th Cir. 2008) (*Halicki I*). The district court did not expressly address that issue in its summary judgment order, but had implied that Eleanor was a copyrighted character. *Id.* at 1225. The Ninth Circuit thus remanded the "fact-intensive issue" for the

---

[3] The appendix shows that the distinction between the Cheeta from Tarzan and any random chimp from a zoo is a fine one. *See* Appendix A.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

district court to determine "whether Eleanor is entitled to copyright protection." *Id.* Disney's motion here fails from the start as a result because courts do not resolve fact issues on the pleadings. *See, e.g.*, *Vassigh v. Bai Brands LLC*, 2015 U.S. Dist. LEXIS 90675 at *9 (N.D. Cal. July 15, 2015) ("the Court will not 'assume the role of the fact-finder in the guise of determining plausibility' when deciding a motion to dismiss").

The relevant facts in *Halicki I* confirm that Disney is not entitled to any relief here. The Eleanor character appeared in two movies: the original *Gone in 60 Seconds* released in 1971, and Disney's remake of the same movie in 2000. *Halicki I,* 547 F.3d at 1217-18. The original Eleanor was a yellow 1971 Fastback Ford Mustang, while the remake Eleanor was a grey 1967 Shelby GT-500. *Id.; see also* Appendix B.

The cars in these movies have no personality, nor can they emote. The cars are simply cars—capable only of doing things that cars typically do. Even so, and despite obvious physical changes to the model and color in the original and remake Eleanor, the Ninth Circuit acknowledged that Eleanor "'display[s] consistent, widely identifiable traits,' and is 'especially distinctive.'" *Id.* at 1225. The court explained that "[i]n both films, the thefts of the other cars go largely as planned, but whenever the main human character tries to steal Eleanor, circumstances invariably become complicated." *Id.* The Ninth Circuit then remanded the fact-intensive issue about "whether Eleanor's 'physical as well as conceptual qualities [and] . . . unique elements of expression' qualify Eleanor for copyright protection." *Id.* (quoting *Air Pirates*, 581 F.2d at 755) (ellipsis in original). On remand, Judge Otero determined that a jury must resolve the fact dispute over the protectability of the Eleanor character.[4] *Halicki v. Shelby Int'l*, No. 04-08813, Dkt No. 330 at 1, 13-16 (C.D. Cal.

---

[4] Juries, of course, decide issues of fact in copyright cases. *See, e.g., Feltner v. Columbia Pictures*, 523 U.S. 340, 348-49 (1998) ("Before the adoption of the Seventh Amendment . . . this country granted copyright owners causes of action for

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Aug. 12, 2009) (*Halicki II*) (attached as Ex. A).

Just as the Ninth Circuit and Judge Otero were unable to resolve the fact issues in *Halicki* (even with a complete record following discovery), so must Disney's motion to dismiss the copyright claims about *The Moodsters* fail here. *The Moodsters* characters are far more original, detailed, and descriptive than the inanimate cars in *Gone in 60 Seconds*. The Amended Complaint sets forth detailed allegations of facts that support the copyrightability of *The Moodsters* characters, including comparisons with earlier works, alternative methods for expressing the idea of single-emotion characters, and an identification of a preeminent expert witness who will opine on material issues. *See, e.g.*, SAC ¶¶138-65; 179-92; 201-23; 238-60; 275-97; 308-333. This record sets forth a plausible claim, and Moodsters Co. should have the opportunity to develop its case for the trier of fact to decide on the merits.

Nor has Disney identified a *single* case in which a district court has found a character unprotected on a motion to dismiss. The only cases Disney relied on in Section I of its brief that found a character unprotected were *Rice v. Fox* and *Fun with Phonics v. Leapfrog*, both of which involved summary judgment on a full record. [5] Disney also relied on *Olson v. NBC* and *Jones v. CBS* in a footnote, but both cases involved literary scripts—not animated character copyright claims—and neither was decided on a motion to dismiss. [6] In fact, Disney did not even address

_____

infringement . . . before juries.").

[5] Nor is either decision similar on substance. *Rice* involved a magician who dressed in "standard magician-garb—black tuxedo with tails, a white tuxedo shirt, a black bow tie, and a black cape with red lining" and limited his role "to performing and revealing the magic tricks." 330 F.3d 1170, 1175 (9th Cir. 2003). Nothing about this character was unique. And *Leapfrog* dealt with inanimate single-flash card drawings. 2010 U.S. Dist. LEXIS 146641, at *19-20 (C.D. Cal. Sept. 10, 2010). Here, previous animated characters do not express the traits and characteristics of *The Moodsters*, and *The Moodsters* are described in a professional production of a 24-minute animated pilot episode. *E.g.*, SAC ¶¶94-105, 164-65; Ex. 2.

[6] In Section II of its brief, Disney relies on *Cory Van Rijin v. Cal. Raisin, 697 F.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

the Rule 12 standard on copyrightability. If Disney raises new arguments about this issue in its reply brief, this Court should find them waived. *Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need no consider arguments raised for the first time in a reply brief."). Disney has not established that the Moodsters Co.'s 85-page Amended Complaint should be the first character copyright case dismissed on the pleadings.

### B.   Moodsters Co. alleged a plausible claim that *The Moodsters* are copyrighted characters.

#### 1.   *The Moodsters* characters as an ensemble satisfy the three-element test in *DC Comics v. Towle*.

Moodsters Co. set forth a plausible claim that *The Moodsters* characters are protected by copyright under the three-part *DC Comics v. Towle* test. 802 F.3d 1012, 1021 (9th Cir. 2015). Moodsters Co. has alleged, and Disney does not dispute, that the characters have physical as well as conceptual qualities because the characters "appeared graphically." *Id.* (quoting *Air Pirates*, 581 F.2d at 755); SAC ¶142. Disney disputes the remaining two elements, although its brief conflates them. *See* D. Br. at 8-12. The Amended Complaint provides extensive allegations that specifically address the Court's concerns from its earlier order, and dispense with Disney's limited arguments.

---

*Supp.* 1136, 1144 (E.D. Cal. 1987). D. Br. at 17 n.9. While that decision granted a motion to dismiss, it did so on lack of substantial similarity, not the threshold issue of character copyrightability. *See id.*

  None of the cases in the Court's earlier order on character copyrights involved substantive decisions on a motion to dismiss either. *See* Dkt. No. 47 at 6-9. In addition to *Leapfrog* and *Rice* already discussed, the district court decided a preliminary injunction and summary judgment in *MGM v. Honda*, 900 F. Supp. 1287, (C.D. Cal. 1995); four of the remaining decisions addressed summary judgment, *see Towle*, 802 F.3d at 1017, *Sapon v. DC Comics,* 2002 U.S. Dist. LEXIS 5395 at *11-12 (S.D.N.Y. Mar. 29, 2002), *McCormick v. Sony*, 2011 U.S. App. LEXIS 1596, at *1 (9th Cir. Jan. 24, 2011); *Paramount Pictures v. Axanar Prod. Inc.*, 2017 U.S. Dist. LEXIS 19670, at *4 (C.D. Cal. Jan. 3, 2017); and *Blizzard Entm't, Inc. v. Lilith Games Co.*, 149 F. Supp. 3d 1167, 1173-74 (N.D. Cal. 2015) addressed insufficient detail— including the failure to identify specific characters in the complaint—but not a merits decision.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

a.   **The Amended Complaint details *The Moodsters* sufficient delineation because the characters are not lightly sketched and have persisted for over a decade.**

The Amended Complaint establishes a ripe fact dispute about whether the characters are "'sufficiently delineated' to be recognizable as the same character[s] whenever [they] appear." *Towle*, 802 F.3d at 1021. Both *Halicki I* and *II* are instructive. The Ninth Circuit found a fact issue over Eleanor's "consistent, widely identifiable traits" based solely on the car's role in the thematic storyline of *Gone in 60 Seconds*. *Halicki I*, 547 F.3d at 1225 ("the thefts of the other cars go largely as planned, but whenever the main human character tries to steal Eleanor, circumstances invariably become complicated."). On remand, Judge Otero confirmed that a fact issue existed "as to whether 'Eleanor' is 'sufficiently delineated'" because of Eleanor's role in the "central theme" as a "unicorn" for the main character in the movie, and intangible qualities such as Eleanor's portrayal as "sensitive and temperamental," and her "strength, talent, and endurance." *Halicki II*, at 14-15. Such thematic and abstract qualities were enough to overcome summary judgment and go to the jury. *Id.*

Here, the bar is far lower than *Halicki* because the question is only whether the claim is plausible. Yet the Amended Complaint sets forth traits and attributes of *The Moodsters* that are far more concrete and detailed than those identified in *Halicki*. SAC ¶143. The Amended Complaint also provides an overview of evidence Moodsters Co. will marshal here to support these allegations and address the Court's earlier order. *Id.* ¶¶144-58.

***The Moodsters* characters are not lightly sketched.** The Amended Complaint pleads a plausible claim that *The Moodsters* characters are not lightly sketched. To begin with, it is important to consider that the "lightly sketched" moniker is not a legal test for the character copyright at issue here; *Towle* does not address it. To the contrary, the Ninth Circuit applied that consideration in *Olson v. NBC*, which involved literary characters. 855 F.2d at 1448. Again, the standard for

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

copyrightability of literary characters is far higher than the standard for animated characters. *See, e.g., Air Pirates*, 581 F.2d at 755 (contrasting animated characters and explaining that "many literary characters may embody little more than an unprotected idea"). Even so, the Amended Complaint identifies objective evidence that the characters are not so lightly sketched.

To start, the Amended Complaint attaches a professionally produced CGI pilot episode. SAC Ex. 2. This pilot alone cost over a third of the $3.3 million invested in Moodsters Co. *See id.* ¶146. Additionally, leading professors at Yale University conducted focus groups across socioeconomic backgrounds, which testing provides objective evidence of *The Moodsters* characters' delineation.[7] *See id.* ¶148. These focus groups confirmed that children understood, recognized, and enjoyed the characters. *Id.* ¶¶148-49. Two leading experts lauded *The Moodsters* characters as well. *Id.* ¶¶155-52. These facts support the reasonable inference that *The Moodsters* are sufficiently developed—and Moodsters Co. is entitled to all such inferences for this motion.

And there is more. Leading entertainment companies reviewed *The Moodsters* characters. *Id.* ¶153. None of these companies, including Disney, remarked that *The Moodsters* lacked detail. *Id.* ¶154. In fact, these companies praised *The Moodsters*. *Id.* Perhaps Disney has memoranda in its files that set forth a contrary—or perhaps a confirmatory—opinion. But that just confirms the need for discovery. The allegations in the Amended Complaint rebut any finding now that *The Moodsters* characters lacked distinctive qualities.

Finally, Moodsters Co. has retained an expert witness who will opine about

---

[7] While Disney tries to downplay the relevance of academic involvement in the refinement of *The Moodsters*, Disney purportedly used the same process for *Inside Out*. *See, e.g.*, SAC ¶¶78, 183, 186-87. Such inconsistencies, while relevant to the reasonableness of inferences that the Court should draw in Moodsters Co.'s favor, also underscore the importance of deciding this dispute on the merits. Disney's inconsistent positions, here and elsewhere, lack credibility.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*The Moodsters* characters. Professor Furniss, a leading animation historian at CalArts, has the expertise to expound on the developed nature of *The Moodsters*, and specifically that these characters exhibit agency to engage and drive a narrative. *Id.* ¶155 & Ex. 9. The adversarial system should allow Moodsters Co. the opportunity to develop and present its case—and for Disney to rebut that case—on a proper record. *See, e.g., Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997).

*The Moodsters* **have persisted over time.** The Amended Complaint adds detailed allegations that *The Moodsters* characters have persisted over time. *The Moodsters* have now been around for over a decade. SAC ¶¶156-58. Not limited to the Bible or pilot episode, retail stores and websites sell *The Moodsters* toys and books across the country. *Id.* ¶156. International media outlets and organizations—like MSN.com, The Huffington Post, The Today Show, among others—have featured *The Moodsters* as well. *Id.* ¶157. *The Moodsters* have won many prestigious awards too. *Id.* ¶156. Far from ephemeral or lightly sketched, the Amended Complaint thus alleges a plausible claim that *The Moodsters* are sufficiently delineated.

### b. *The Moodsters* **are especially distinctive because they are not generic or stock characters from earlier works.**

The Amended Complaint describes a plausible claim that *The Moodsters* meet the especially distinctive prong. One of the considerations this Court addressed before is whether *The Moodsters* characters "'fit general, stereotypical categories' such that they are especially distinctive vis-à-vis *other characters*, outside of the work in which they appear." Dkt. No. 47 at 8. This standard tracks the Ninth Circuit's emphasis that a character may not be a stock character. *See, e.g., Towle,* 802 F.3d at 1021 (explaining that the character "cannot be a stock character" and finding the Batmobile "is not merely a stock character"); *Rice,* 330 F.3d at 1175 (rejecting claim that magician in standard magician garb differed "from an ordinary

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

magician").[8] The Amended Complaint addresses—and exceeds—this standard.

*The Moodsters* are not generic. The Amended Complaint includes detailed allegations about earlier works that do not feature a collection of five single-emotion characters like *The Moodsters*. Disney has never offered such a work. *E.g.*, SAC ¶¶96-103. Disney's Pete Docter conceded as much. *Id.* ¶76. Single-emotion characters conflict with the approach to animation that made Disney so famous. *Id.* ¶104. *The Moodsters* characters thus standout as especially distinctive because no other characters from earlier works featured their core traits and characteristics.

Nor should the Court make a determination about *The Moodsters* especially distinct qualities based on Disney's attorney argument. While this stage of the case makes it inappropriate for the parties to offer evidence, Disney has not offered even an allegation that any earlier works feature five single-emotion characters with the particular colors and emotions expressed in *The Moodsters*. If Disney wishes to defend this case by arguing that *The Moodsters* are generic and stereotypical, then it should bear the burden to prove that argument with evidence, not attorney hunches. As set forth in the Amended Complaint, Moodsters Co. is prepared to prove that *The Moodsters* are original, and not generic or stereotypical, including through opinion and analysis of Professor Furniss—a witness most qualified to provide evidence of whether *The Moodsters* are generic, stereotypical, or stock characters. They are not. *E.g.*, SAC ¶¶160-65.

The Amended Complaint's extensive allegations about previous works exceeds the analysis in *Halicki II*. In *Halicki II*, Judge Otero found a triable issue

---

[8] Other courts focus on differentiating stock characters as well. *See, e.g., Axanar*, 2017 U.S. Dist. LEXIS 19670, at *11 (affording copyright protection because character's identity sets him apart from a stock spaceship officer); *Bach v. Forever Living Prods., Inc.*, 473 F. Supp. 1127, 1136 (W.D. Wash. 2007) (finding anthropomorphized seagull copyrighted because "[h]e is not a stock character"); *Gaiman*, 360 F.3d at 660 (explaining that character with specific name and specific appearance was not a stock character).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

based on the car's thematic and abstract qualities. The court did not require the copyright owner to prove that Eleanor was the first "unicorn" object pursued by a human character. Based on this analysis, along with the difference in procedural posture, Disney's motion here fails.

### 2. Disney's footnote-response to Moodsters Co.'s "story being told" allegations does not support dismissal.

Disney relegates its response to Moodsters Co.'s allegation that *The Moodsters* are copyrighted because they represent the "story being told" to a footnote. D. Br. at 7 n.3. Disney's strategy to ignore Moodsters Co.'s allegation is bold because the Ninth Circuit did not address the "story being told" standard in *Towle*. Instead, the Ninth Circuit cited with approval various cases that had independently applied that standard. *See, e.g., MGM Inc. v. Am. Honda*, 900 F. Supp. 1287, 1296 (C.D. Cal. 1995); *Anderson v. Stallone*, 1989 U.S. Dist. LEXIS 11109, at *20-23 (C.D. Cal. Apr. 26, 1989) (finding ensemble of "Rocky characters – Rocky, Adrian, Apollo Creed, Clubber Lang, and Paulie" copyrighted as "story being told"). Other courts have not hesitated to apply the standard either. *See, e.g.*, *Rice*, 330 F.3d at 1176; *Halicki II* at 15-16; *Bach*, 473 F. Supp. 2d at 1136. Disney has no substantive response to these well-pleaded allegations. That *The Moodsters* state a plausible claim under the "more rigorous test" for copyrighting literary characters further only confirms that they should meet the lesser three-part test in *Towle*. *See Anderson*, 1989 U.S. Dist. LEXIS 11109, at *16-17.

### C. Moodsters Co. alleged a plausible claim that each individual Moodsters character is a copyrighted character.

The Amended Complaint details plausible claims that each individual Moodsters character is copyrighted. *See, e.g.*, SAC ¶¶201-223, 238-260, 275-297, 311-333. Disney does not address each character in its motion. *See* D. Br. at 7-11. Moodsters Co. sets forth below how the Amended Complaint sets forth a plausible claim that the Anger character is protected by copyright, as representative of its allegations for the remaining individual characters.

1    Like the ensemble above, Disney concedes that the Anger character has
2 physical and conceptual characteristics. *E.g.*, SAC ¶278.

3    The Anger character is "sufficiently delineated" as well. *Id.* ¶¶279-91. The
4 Amended Complaint details an overview of the Anger character's traits and
5 attributes. *Id.* ¶279. These traits and attributes notably include the single emotion of
6 anger; the red body color; the role the Anger character plays in the cohesive group
7 of other four single-emotion characters, each of which has a single body color; and
8 other unique features described in the Amended Complaint. *Id.* Perhaps most
9 expressive, the Anger character explodes from the head when most angry. *Id.* All of
10 these traits and attributes have persisted over time, as reflected in the current
11 iteration of the Anger character. *Id.* ¶¶290-91.

12    Nor is the Anger character lightly sketched. The pilot episode features the
13 Anger character. *See* SAC Ex. 2. Professor Furniss is prepared to explain how the
14 Anger character is sufficiently developed to establish that character's agency and
15 drive a narrative. *Id.* ¶290. Moodsters Co.'s focus group results with Yale
16 University shows again diverse audiences gravitated to the Anger character. *See id.*
17 ¶¶284-85. The titans of the entertainment industry also praised *The Moodsters*—
18 which included the Anger character, and omitted any concerns that the Anger
19 character was generic or not developed. *Id.* ¶¶287-88.

20    For the third *Towle* element, the Anger character is especially distinctive. The
21 Amended Complaint details how and why the Anger character is not a stock
22 character. *Id.* ¶¶292-97. Unlike the generic magician in *Rice*, the Amended
23 Complaint explains that no such character with the traits and attributes of the Anger
24 character existed before *The Moodsters*. *Id.* ¶¶296-97. The large body of animated
25 works before *The Moodsters*, thus, fails to establish generic or stereotypical single-
26 emotion angry characters that are red and explode from the head. *See id.* These
27 allegations set forth a plausible claim that the Anger character is protected.

28    Disney fails to offer any new arguments to the contrary, and which

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Moodsters Co. did not address in the section on the ensemble above. Its contention that the unique attributes of the Anger character are no different from a "stock hot-head," which Disney compared to the abstract "attraction to blonde women," bears no resemblance to Moodsters Co.'s detailed allegations. *See* D. Br. at 10. A "hot-head" character may lack originality. But *The Moodsters* Anger character represents the single emotion of anger, and expresses particularized attributes that make it unlike other characters that came before. *See, e.g.,* SAC ¶279. Donald Duck, for instance, has a temper. But he is not red. He does not only represent the single emotion of anger, or maintain a role with other single-emotion characters. And he does not explode from his head when angry.[9] In the end, Disney's arguments underscore why the Ninth Circuit has found this issue so "fact intensive." *Halicki I*, 547 F.3d at 1225. Evidence, not attorney argument, should decide these issues. Moodsters Co.'s detailed Amended Complaints alleges a plausible claim to allow it to discover, develop, and offer that evidence.

### D.    Disney's remaining arguments miss the mark.

#### 1.    Disney manufactures a non-existent "rule of thumb."

Disney's "rule of thumb" that focuses on an infringing work to determine if the original work is copyrighted is incorrect. D. Br. at 8-9. To put it simply, whether copyright law protects a character is a distinct issue from whether a second character infringes that copyright. *See, e.g.*, *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991) (identifying two elements for copyright claim). Disney's case law citations are not to the contrary. The pin citation to the James Bond case refers to background facts, not character copyrightability. *Am. Honda*, 900 F. Supp. at 1291-92. Disney's citation to the district court's reference to the book titled "Godzilla" refers to a conclusion on trademark infringement, and the Godzilla

---

[9] The same is true for human characters known for angry outbursts, such as Walter from *The Big Lebowski* or George Costanza from *Seinfeld*.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

images used in the infringing work addressed the unremarkable proposition that a copyright registration covered the images in dispute. *Toho Co., Ltd. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1215 (C.D. Cal. 1998). The reference in *Towle* to the infringing work's "Gotham Garage" and "Batmobile" references are again set forth in background facts. 802 F.3d at 1017. Even more misleading, the *Air Pirates* quote is in the section "Infringement and Fair Use," not the earlier section on copyrightability. 581 F.2d at 757-58.

The legal test for copyright is also not means or fame-dependent, and thus cannot depend on whether a character has "achieved" a "requisite degree of recognizability." D. Br. at 8; *cf. Stewart v. Abend*, 495 U.S. 207, 229 (1990) ("The limited monopoly granted to the artist is intended to provide the necessary bargaining capital to garner a fair price for the value of the works passing into public use."). Copyright law does not allow Disney to copy original characters artists pitch to them simply because the artists, unlike Disney, lack the means to publicize widely their characters. In short, Disney manufactures a rule of thumb on character copyrights that does not exist.

## 2. Disney's conclusory arguments about the second iteration of *The Moodsters* are irrelevant.

Disney tries to ignore the persistence of *The Moodsters* with three conclusory sentences without legal authority. To start, Disney contends that the second generation *Moodsters* are not sufficiently similar. D. Br. at 11. This argument suffers from two flaws. First, the Ninth Circuit has recognized minor—sometimes even major—differences among character iterations are irrelevant. *See, e.g., Towle*, 802 F.3d at 1022 (recognizing dramatic differences in batmobile did not affect copyrightability).[10] The *Moodsters* two iterations are much more similar than drastic character changes in other cases, and both *Moodsters* iterations retain core

---

[10] *See also* Appendix C which sets forth protected characters with far greater differences among iterations than *The Moodsters*.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

characteristics and traits. SAC ¶158.[11] Second, at most Disney's argument is one of fact, which the Court may not resolve against *The Moodsters* on the pleadings based on Disney's attorney argument. *See, e.g.*, *Teixeira*, 873 F.3d at 678.

Disney next presents an unsupported "chronological obstacle" for *The Moodsters* second generation. D. Br. at 11. Moodsters Co. disagrees that a character is protected only if delineated over time.[12] But if that test is applied, the copyright term still begins when the original character traits were first "sufficiently fixed." *See Fleischer*, 772 F. Supp. 2d at 1138, 1147 (finding character copyright in the "well-known Betty Boop character" existed "prior to July 1931"); 17 U.S. Code §302 (starting copyright term "from creation").[13] So, if future iterations are relevant to the copyrightability of *The Moodsters*, they confirm a plausible claim that *The Moodsters* are copyrighted in 2005 (bible)—and no later than 2007 (pilot)—when the character traits were sufficiently fixed.[14] Even accepting Disney's argument in

---

[11] Individual character name is not one of those traits. *See Fleischer*, 772 F. Supp. 2d at 1147 (finding "Betty Boop" character copyrighted even before the character adopted the name Betty Boop). Even so, the name for the ensemble of characters—*The Moodsters*—has not changed.

[12] *Bach*, 473 F. Supp. 2d at 1136 ("the fact that his character has not been delineated *over time* is *inconsequential*") (emphasis added).

[13] In *Vigil v. Walt Disney Co.*, the court explained "[c]opyright protection pursuant to 17 U.S.C. §§ 101-1101 begins as soon as a copyrightable expression is reduced to tangible form." 1995 U.S. Dist. LEXIS 15560, at *9 (N.D. Cal. Oct. 16, 1995).

[14] Disney's factual background section of its brief focused much attention on the fact that JellyJam (another company owned by Ms. Daniels) has registered copyrights for some Moodsters products, implying that poses some kind of problem for this lawsuit. But while another entity can hold a copyright in a derivative work, "the owner of the underlying work retains a copyright in that derivative work with respect to all elements that the derivative creator drew from the underlying work and employed in the derivative work." *Towle*, 802 F.3d at 1023; *see also Halicki v. Shelby Int'l, Inc.,* 2005 U.S. Dist. LEXIS 28214, at *14 (C.D. Cal. Nov. 11, 2005) ("If the Remake Eleanor is deemed a derivative work of the Original Eleanor, Plaintiffs, as the author of the Original Eleanor, would also have the exclusive right to the Remake Eleanor."). To the extent a third party copies elements in both a derivative and underlying work, it infringes the copyright in the underlying work. *See Towle,* 802 F.3d at 1023. Disney did not offer any authority to the contrary.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

full, Moodsters Co.'s claim is still viable because Disney continues to infringe to this day by selling copies of *Inside Out* and related merchandise. *See generally* 17 U.S. Code § 504. Disney has provided no legal authority to the contrary either.

## II.   The Amended Complaint alleges a plausible claim of substantial similarity.

Disney's motion seeks to avoid proper analysis of Moodsters Co.'s copying allegations. Its brief asks this Court to decide issues of fact on the pleadings over the protectability and originality of expressive elements without complete evidence; ignores the effect of the inverse-ratio rule because of Disney's extensive access; and tries to isolate elements of *The Moodsters* characters, even though the combination of traits is what makes up a copyrighted character. Even then, the Amended Complaint shows the contested nature of Disney's fact-based arguments. The question here is whether Moodsters Co.'s allegations of copying are plausible. The Amended Complaint identifies specific expressive elements for *The Moodsters*—as an ensemble and for each individual character—which are all in the *Inside Out* characters. SAC ¶¶176, 226, 254, 263, 299, 336.

### A.   Disney's attacks on *The Moodsters* go to originality, which is a question of fact.

Disney is not entitled to resolve Moodsters Co. allegations about original and protectable expression on the pleadings. The second prong of a copyright claim is "copying of constituent elements of the work that are *original*." *Feist Publ'ns v. Rural Tel. Service Co., Inc.*, 499 U.S. 340, 361 (1991) (emphasis added). Courts use "original" and "protected" interchangeably. *See, e.g., Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004). Regardless of semantics, this question is one of fact improper for a motion to dismiss. "The question of originality in copyright law 'is one of fact, not of law; one that may not be disposed of upon a motion to dismiss, but which must be established by proof." *Optima Tax Relief v. Channel Clarity*, 2015 U.S. Dist. LEXIS 186829, at *9 (C.D. Cal. Aug. 26, 2015) (quoting *Dezendorf*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*v. Twentieth Century*, 99 F.2d 850, 851 (9th Cir. 1938) (emphasis added)); *see also Divine Dharma Meditation v. Inst. of Latent Energy Studies*, 2016 U.S. Dist. LEXIS 68890, at *12-13 & n.5 (C.D. Cal. May 25, 2016). Indeed, the extrinsic test, which tracks objective criteria of complete works, often requires expert testimony. *Williams v. Gaye*, 2018 U.S. App. LEXIS 7057 at *15 (9th Cir. Mar. 21, 2018) (quoting *Swirsky*, 376 F.3d at 845)).[15]

Disney premises its argument on disputed factual issues by comparing *The Moodsters* with earlier works. If Disney wishes to challenge the originality of *The Moodsters* by relying on plays from the middle ages, so be it. *See* D. Br. at 17. Disney can prepare its case as it sees fit.[16] Moodsters Co. will do the same, including with expert testimony (*see* Dkt. No. 40-7), and rebut Disney's fact-based arguments. The parties then can submit competing evidence to the trier of fact. That is what the Ninth Circuit—and the Federal Rules of Civil Procedure—envisions.

Disney's contention that other courts in other cases have granted motions to dismiss is irrelevant to the fact disputes here. The handful of cases Disney relies on involves the niche-area of literary script disputes and an 8-factor test. Disney does not contend this test applies here. Nor is any of these cases factually analogous to the Amended Complaint, particularly on characters. In *Shame on You*, for instance, the district court determined that the "concept of an attractive, blond 'good girl' is in the public domain" and "the mere fact that the male leads are 'nice guys' is not a protectable character trait." *Shame on You v. Banks*, 120 F. Supp. 3d 1123, 1164-66

---

[15] *See also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (applying clear error standard for review of "factual determinations regarding extrinsic test").

[16] Such a strategy is aggressive for a company like Disney, which is notorious for converting Hans Christian Anderson fairytales into its own movies. If *The Moodsters* are not protectable over unidentified characters from middle age plays, then Disney's expressions of Mr. Anderson's specific works certainly are not as well. Yet Disney is as aggressive as any company in the enforcement of its copyrighted characters. *See, e.g.*, Dkt No. 40-5&6.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

(C.D. Cal. 2015). Likewise, in *Gallagher*, the district court addressed abstract comparisons between characters, such as two characters "both are 'sweet dark-haired female[s] who recently ended a relationship." *See Gallagher v. Lions Gate*, 2015 U.S. Dist. LEXIS 122441, at *23 (C.D. Cal. Sept. 11, 2015). In *Zella v. E.W. Scripps Co.*, one of Disney's most cited cases, the only characters were "the hosts and the celebrities"—neither of which was anyone specific. 529 F. Supp. 2d 1124, 1137 (C.D. Cal. 2007).[17] In contrast, Moodsters Co.'s allegations are particularized and specific. If Disney contends those elements are not original, then it should do so on a proper record and subject to cross-examination.

### B. The inverse-ratio rule is binding precedent that commensurately lowers Moodsters Co.'s burden.

Disney glibly refers to the "so-called" inverse-ratio rule. But there is nothing so-called about it—the rule is the law. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996) ("In applying the extrinsic test, we require a lower standard of proof on substantial similarity when a high degree of access is shown."); *Swirsky*, 376 F.3d at 844. The Ninth Circuit has not hesitated to use the inverse-ratio rule as a basis for reversal. *See, e.g., Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987). If there was any doubt, the Ninth Circuit just recently confirmed it adheres to the rule as "binding precedent." *Gaye*, 2018 U.S. App. LEXIS 7057, at *14 n.6.

The Amended Complaint dispels any question over whether the rule applies here. Moodsters Co. alleges—and Disney does not even deny—that Disney

---

[17] Similarly, in *Fillmore v. Blumhouse* (another script case), the court rejected the comparison in antagonists that both "(1) engage in an indiscriminate killing spree and (2) are both adversely affected by reanimation." 2017 U.S. Dist. LEXIS 211021, at *26 (C.D. Cal. July 7, 2017).

Elsewhere Disney relies on *Hogan v. DC Comics*. D. Br. at 22. To do so, Disney ignores that the court decided the case on summary judgment, not the pleadings. 48 F. Supp. 2d 298, 299 (S.D.N.Y. 1999). The court reviewed and cited extensive past works that described and expressed characteristics of dhampires—a half human, half vampire. *Id.* at 311 n.5. That *evidence* negated originality in the character at issue in that case—a half human and half vampire. *Id.* at 311.

Robins Kaplan LLP
ATTORNEYS AT LAW
LOS ANGELES

accessed *The Moodsters* at the highest level, including the Director of *Inside Out*.
*E.g.*, SAC ¶¶60-72. This Court presumes these facts, and thus this access, true at
this stage. None of Disney's cases holds that this Court can ignore the inverse-ratio
rule here.[18] Moodsters Co.'s burden for substantial similarity is "lowered
accordingly." *Gaye*, 2018 U.S. App. LEXIS 7057, at *14.

### C.   Disney offers no argument about the similarity between the combination of expressive elements in the *Inside Out* and *The Moodsters* characters.

Disney's reductionist arguments are inapplicable to character infringement.
"[I]n cases that have focused substantially on character infringement, rather than
considering the character as one element of an entire story, courts have not done a
similar dissection. … Thus, it is the *unique combination of elements* that makes up a
protected character." *Bach*, 473 F. Supp. 2d at 1134-35 (emphasis added). Such is
true even for the most famous characters. Bond was not the first "overtly sexual"
character. Nor was the Batmobile the first vehicle with "up-to-date weaponry and
technology." Eleanor was not the first "unicorn" object that another character
pursued. None of these characteristics standing alone is original. Each characteristic
was part of the combination that made these characters original. Disney's efforts to
isolate aspects of *The Moodsters* is improper. Disney fails to identify a single case
from the Ninth Circuit about character infringement to hold otherwise. And Disney
did not even offer an argument that the characters in *Inside Out* lack substantial
similarity with *The Moodsters* when the characters' combination of characteristics

---

[18] The court reviewed evidence on summary judgment in *Idema v. Dreamworks*,
162 F. Supp. 2d 1129, 1132 (C.D. Cal. 2001) and *Bensbargains.net v.
XPbargains.com*, 2007 U.S. Dist. LEXIS 60544, at *1 (S.D. Cal. Aug. 16, 2007),
not allegations on a motion to dismiss. Disney's remaining cases all involved
literary scripts, the facts of which generally failed any similarity between works
among the multi-factor test for such cases. *See generally Wild v. NBC*, 513 Fed.
Appx. 640 (9th Cir. 2013) (omitting any reference to the inverse-ratio rule);
*Gallagher*, 2015 U.S. Dist. LEXIS 122441; *Identity Arts v. Best Buy*, 2007 U.S.
Dist. LEXIS 32060, at *51-52 (N.D. Cal. Apr. 18, 2007).

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

are considered. This omission alone dooms Disney's motion.

### D. Disney's arguments about isolated elements still fail.

Disney's arguments amount to mere conclusory *scenes a fair* allegations. Because Moodsters Co. has contested such allegations in detail, Disney's motion to dismiss fails. *See, e.g., Swirsky*, 376 F.3d at 850 ("It is inappropriate to grant summary judgment on the basis of *scenes a faire* without independent evidence, unless the allegation of *scenes a faire* is uncontested."). The Amended Complaint sets forth detail in spades about why the isolated elements below are not *scenes a faire*. *See, e.g.*, SAC ¶¶179-92.

*The Moodsters* **characters express more than the idea of anthropomorphized abstract concepts.** Disney's comparison of *The Moodsters* to raisins, bacteria, and eggs misses the point. D. Br. at 17 n.9. We all know what those tangible items look like. That is not true with emotions. The Director of *Inside Out* conceded as much:

> The idea [for *Inside Out*] was rather abstract, but in my enthusiasm, I didn't realize *just how **difficult** it would be to make it concrete*. Most of our films had somewhere to start: bugs, fish, robots . . . even our monsters were based on some combination of animals. *But what do* **emotions** *look like*? Or abstract thought? . . . Here we had nothing to measure against, *nothing **concrete*** to tell us when we'd got it right.

SAC ¶76. Such an admission eviscerates Disney's argument here—on the pleadings—that the particularized expressive elements that shape both *The Moodsters* and *Inside Out* characters were generic and not original. Disney's arguments—and purported evidence—only confirms this conclusion. Even if Disney's evidence is considered (it should not on a Rule 12 motion), none of these past works depicts emotions. Disney's "angel" and "devil" depictions are not emotions. Nor do the expressive elements set forth in the Amended Complaint include the identifiable expressive features in those images—such as, devil horns, pitchfork, halo, wings, and miniaturized versions of the underlying character. D. Br. at 18. The same is true for the works identified in the Amended Complaint. *Id.*

ROBINS KAPLAN LLP<br>ATTORNEYS AT LAW<br>LOS ANGELES

None of *Reason and Emotion*, *Cranium Command*, *My Poison Berry Brain*,[19] and *Herman's Head* represent any emotions, let alone the particular emotions used in *The Moodsters*. And Disney's new reliance on plays from the middle ages does not even purport to show characters representing single emotions, let alone with the expressive characteristics of *The Moodsters*. *Id.* at 17. That Disney has been unable to even offer a *single* work depicting single-emotion characters, even after examining over 600 years of past works, confirms at least a fact dispute exists over the protectability of *The Moodsters*.

**The selection of single-emotion characters in *The Moodsters* and *Inside Out* is expressive as well.** Moodsters Co. does not claim to have a monopoly over the emotions used by *The Moodsters* and *Inside Out* characters. That said, the selection of the specific number of single-emotion characters (5) and the particular emotions Moodsters Co. chose for its ensemble of characters is original. The Amended Complaint sets forth a detailed factual background confirming the originality and multitude of options that Moodsters Co. and Disney had available to them. *See, e.g.*, SAC ¶¶77-81, 185-87. Disney, for example, considered a range of single-emotion characters from three to twenty-seven based on disagreement in the scientific community. *Id.* ¶¶78-79, 186. Ultimately, Disney copied Moodsters Co.'s selection of five characters and emotions. *Id.* ¶80. Disney publicly stated it considered emotions much different from those used by *The Moodsters* as well. *Id.* ¶79. But here again, Disney settled on copying four of the five same emotions used by *The Moodsters*. *E.g., id.* ¶81. Disney's attorney argument now, years later, that the number and particular emotions selected by Moodsters Co. and Disney lack originality should be given no weight.

A proper record is especially appropriate here. Disney contends that *The*

---

[19] Disney's reliance on this movie is unusual because it was released in 2015—ten years *after The Moodsters*.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

*Moodsters* was limited to helping "preschoolers identify emotions." D. Br. at 1. *Inside Out* was not so limited, and targeted to a much broader audience. The main character, moreover, is not a preschooler but an 11-year old adolescent. Based on these different circumstances and audiences, it is reasonable to expect Disney would have selected more complex emotions that adolescents and more mature audiences are familiar with. But Disney did not do so. It used the number of emotions and four of the exact same emotions that *The Moodsters* used. At a minimum, the reasonable inference here supports the conclusion that Disney copied *The Moodsters*. This Court need not resolve this dispute here. The dispute just underscores the fact-based nature of this issue—and indeed, the entire case.

**The application of specific colors for each character's body is expressive.** Disney's copying of specific colors is probative of Disney's copying *The Moodsters*. Yet Disney did not only copy specific colors tied to specific characters. Disney also copied how *The Moodsters* expressed those colors; specifically, by making the *Inside Out* characters' *bodies* a particular color. *See* SAC at 13-16, 20-21. Far less has supported copying. *See, e.g., Saban Entm't, Inc. v. 222 World Corp.*, 865 F. Supp. 1047, 1052 (S.D.N.Y. 1994) (finding use of primary colors on costumes "probative of copying").

Disney's arguments do not negate such a finding on the pleadings here. To start, Disney's arguments fail as a procedural matter. Disney relies on "tropes" and various cartoon figures without even providing the underlying works to the Court. Nor is consideration of these tropes or works as evidence in support of Disney's arguments appropriate for judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-90 (9th Cir. 2001); *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1151 (C.D. Cal. 2003); *see also* Opposition to Disney's Request for Judicial Notice filed herewith. Disney's arguments not only are contrary to allegations in the pleading, SAC ¶¶189-91, which must be accepted as true, but raise factual issues. Above all, none of the works Disney marshalled pertains to single-emotion animated

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

characters. Nothing in Disney's arguments required, as a scene that "must be done," that the *Inside Out* characters—let alone their bodies—associate with a single color. A cursory review of the materials Disney cites in it motion just makes clear that Disney's particular color choices also is a subject for fact and expert discovery. Dr. Seuss, for instance, did not find it necessary to pair the particular colors and specific emotions as used by *The Moodsters* and *Inside Out*. *See id.* ¶190. Even Disney's Internet evidence—a quintessential example of improper evidence to consider on Rule 12—rebuts Disney's arguments that certain colors must have been used.[20]

In fact, Disney's arguments underscore the importance and Moodsters Co.'s originality of its selection and identification of the five emotions of the character ensemble. For instance, it is unclear how Disney would have designated a core color to the 27 different characters they considered. *Id.* ¶191. And Disney leaves out of its brief what color is linked to awe, schadenfreude, surprise, among other emotions Disney considered but did not use. *Id.* ¶¶79, 191. The use of the selected colors for the five *Moodsters* characters, individually and combined with other elements, is original, and is part of the expression substantially copied by Disney.

**Disney's attorney argument about differences between characters does not negate copying.** Disney cannot evade copyright infringement by claiming it did not copy every aspect of *The Moodsters*. *L.A. Printex Indus. Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012); *Sheldon v. Metro-Goldwyn Pictures, Corp.*, 81 F.2d 49, 56 (2d Cir. 1936) ("It is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate."). Nor should this Court resolve Disney's arguments on the pleadings. In *Baxter*, for instance, the Ninth Circuit reversed a finding of summary judgment because a "six-note sequence" in an introductory song to the movie *E.T.* may alone

---

[20] For example, one of Disney's references suggests that the hero should be "red" or "blue," among other designations that are inconsistent with Disney's arguments. http://tvtropes.org/pmwiki/pmwiki.php/Main/ColorCodedCharacters.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

suffice, eloquently explaining that "the ear of the court must yield to the ears of jurors." 812 F.2d at 425. "Even if a copied portion be relatively small in proportion to the entire work, if qualitatively important, the finder of fact may properly find substantial similarity." *Id.* Disney's arguments, some of which do not even relate to the characters, do not excuse Disney's copying of the key expressive elements. At most, those alleged differences would be relevant to the intrinsic test's "total concept and feel" for the jury to decide. *See, e.g.*, *L.A. Printex*, 676 F.3d at 848.

The same is true with Disney's contention that *The Moodsters* express flashes of emotions other than the single emotion each character represents. D. Br. at 15-16. Far from evidencing non-infringement, Disney's arguments confirm it. Disney designed the *Inside Out* characters in the same way that it now criticizes *The Moodsters*: "Even though our characters are specific emotions, we realized they're going to need to act out full range of emotions and not just stick to their one particular emotion. Therefore Sadness would have to act happy as well." D. Br. Ex. A, Extras at 2:40-55. Disney's argument thus fails—especially on the pleadings.

### Conclusion

This case cries out for a case schedule. The Amended Complaint details the case Moodsters Co. will marshal. Disney has contested it with evidence it intends to develop. The case should move forward so that the parties can try their cases to a jury on the merits.

Dated:  April 2, 2018

Robins Kaplan LLP
  Ronald J. Schutz (pro hac vice)
  Michael A. Geibelson (#179970)
  Patrick M. Arenz (pro hac vice)
  Ruth L. Okediji (pro hac vice)

By: */s/ Ronald J. Schutz*
  Ronald J. Schutz (*Pro Hac Vice*)

Attorneys for Plaintiffs Denise Daniels and The Moodsters Company

Robins Kaplan LLP
ATTORNEYS AT LAW
LOS ANGELES