UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**     The Court GRANTS Defendants' Motion to Dismiss

Before the Court is Defendants Walt Disney Company, Disney Enterprises, Inc., Disney Consumer Products and Interactive Media, Inc., Disney Interactive Studios, Inc., Disney Shopping, Inc., and Pixar's ("Defendants" or "Disney") motion to dismiss Plaintiffs Denise Daniels and The Moodsters Company's ("Plaintiffs") second amended complaint. *See* Dkt. # 55 ("*Mot.*"). Plaintiffs timely opposed, *see* Dkt. # 59 ("*Opp.*") and Defendants replied, *see* Dkt. # 62 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving papers, the Court **GRANTS** Defendants' motion.

I.     Background

Plaintiff Denise Daniels is a nationally recognized child development expert with over 40 years of experience working in the field of children's social and emotional development. *See* Dkt. # 51, *Second Amended Complaint* ("*SAC*") ¶¶ 26-35. She co-founded the national non-profit National Childhood Grief Institution and she has been called upon to help children cope with grief and loss, after such events as Desert Storm, Hurricane Katrina, Columbine, and September 11. *Id*. ¶ 28. She has appeared on national television and has published nine children's self-help books relating to emotional wellbeing. *Id*. ¶¶ 31, 35.

Daniels developed *The Moodsters*, a cartoon world populated by characters that embody individual emotions, to help children understand and regulate their emotions. *Id.* ¶ 36. Each Moodster is color-coded and anthropomorphic, and each represents a single emotion: happiness (yellow), sadness (blue), anger (red), fear (green), and love (pink). *Id.* ¶ 53. Plaintiffs recruited top industry talent and emotional intelligence experts to develop and produce *The Moodsters*. *Id.* ¶¶ 40?46. In November 2005, Plaintiffs published a "bible" for *The Moodsters*, a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

contemplated "animated TV show for preschoolers." *Id.* ¶ 48. In 2007, Plaintiffs created the pilot episode for *The Moodsters*. *Id.* ¶ 49.

Between 2006 and 2009, Plaintiffs allege they pitched *The Moodsters* to Disney every year; many high-ranking Disney executives received the pitch materials, allegedly passing them around to other division heads. *Id.* ¶¶ 67-69. Ultimately, Plaintiffs allege that a conversation about *The Moodsters* occurred between Daniels and Pete Docter, subsequently director of *Inside Out*. *Id.* ¶ 71. In 2010, Disney Pixar began development on *Inside Out*, a feature film about the anthropomorphized emotions that live inside the head of an 11-year-old girl. The film features five color-coded emotions as characters—joy (yellow), sadness (blue), anger (red), fear (purple), and disgust (green). *Id.* ¶¶ 86-90. *Inside Out* grossed more than $350,000,000 domestically and over $850,000,000 worldwide. *Id.* ¶ 93.

Plaintiff Daniels filed suit on June 19, 2017, alleging breach of implied-in-fact contract arising from Plaintiffs' disclosure of *The Moodsters* to Disney, which Disney then allegedly used without compensating Plaintiffs, and copyright infringement of the individual characters and the ensemble of characters. *See* Dkt. # 1, *Complaint*. Plaintiffs subsequently filed a first amended complaint on September 20, 2017. *See* Dkt. # 27, *First Amended Complaint* ("*FAC*"). Defendants filed a motion to dismiss the implied-in-fact contract claim and all of the copyright infringement claims, *see* Dkt. # 32, which the Court granted. *See* Dkt. # 47 ("*Order*"). Plaintiffs then filed a second amended complaint, which Defendants again move to dismiss.

II. <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

III.    <u>Discussion</u>

The Court notes at the outset that Plaintiffs were not granted leave to amend their implied-in-fact contract breach claim (the first cause of action), but it remains in the amended complaint "in order to preserve the claim for appellate review." *SAC* 24 n. 6. The Court will therefore not address it here. What remains are Plaintiffs' copyright infringement claims regarding each individual character and the ensemble of characters.

    A.    <u>Claims Three through Six: Individual Characters</u>

Plaintiffs allege that Defendants infringed their copyrights in the Happy (count 3), Sadness (count 4), Anger (count 5), and Fear (count 6) characters. *See generally SAC*. In its prior Order, the Court determined that Plaintiffs' characters did not meet the Ninth Circuit's rigorous standard for copyrightability of a stand-alone character outside of the work it inhabits. *See Order* at 9. Characters standing alone "are not ordinarily entitled to copyright protection." *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1173?74 (N.D. Cal. 2015). To be copyrightable independent of the underlying work in which the character appears, the character must (1) have "physical as well as conceptual qualities," (2) "be 'sufficiently delineated' to be recognizable as the same character whenever it appears," and (3) be "'especially distinctive' and 'contain some unique elements of expression.'" *DC Comics v. Towle*, 802 F.3d 1012, 1020?21 (9th Cir. 2015). The test is conjunctive; Plaintiffs must establish that all three elements are met. The parties agreed that the first element of the test was met, because *The Moodsters* characters are graphically depicted in both the bible and pilot. The Court previously determined, however, that the characters were neither sufficiently delineated nor especially distinctive, and therefore not independently protectable. *See Order* at 6?9. The Court determined that the characters lacked "specific traits on par with those of the iconic characters" that had achieved independent copyrightability, such as Sherlock Holmes, Tarzan, Superman, and James Bond. *Id*. at 7. The Court distinguished those characters, who are "instantly recognizable as the same character[s] whenever they appear," from the Moodsters. *Id*. The Court further stated,

> Plaintiffs' characters have been distributed only twice: once in *The Moodsters* bible, and once in the YouTube pilot. With a viewership of only 1,400, the pilot did not likely engender the kind of "widely identifiable" recognition of the characters' traits envisioned by the Ninth Circuit; that court denied protection for a character that had "appeared in only one home video that sold approximately 17,000 copies," for lack of "consistent, widely identifiable traits." *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1175 (9th Cir. 2003). More problematic for

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

Plaintiffs is the requirement that such traits be persistent enough, over time or over multiple iterations, to produce such recognition. Here, the characters have appeared only twice—and their names had all changed from the first appearance to the second.

*Id*. at 7-8.

That the first element of the three-part test is met is again undisputed. *See generally Mot.*, *Opp*. Plaintiffs' amended complaint, and the factual allegations regarding each specific character, contain two new arguments: that the existence of the "second generation" of characters demonstrates the characters are sufficiently delineated, and the development process for each character demonstrates they are especially distinctive. The Court will address each new argument in turn.

    *i.*    *Sufficiently Delineated: "Second Generation" Moodsters*

Plaintiffs continue to assert that the characters, "as reflected in *The Moodsters* Bible and Pilot, sufficiently delineate these characters so they are recognizable whenever they appear." *SAC* ¶¶ 143, 205, 242, 279, 315. To bolster this claim, Plaintiffs now contend that there is a "second generation" of Moodsters that was developed in 2012-13 by a company called JellyJam. *SAC* ¶ 156; *Mot*. 4. Merchandise based on the second generation characters was sold at Target and later through many online retailers. *SAC* ¶ 156. Plaintiffs did not mention the second generation Moodsters in their first two complaints; nevertheless, Plaintiffs now argue that this second generation of characters is evidence that *The Moodsters* characters "have persisted over time." *Opp*. 10. Plaintiffs allege that "both Moodsters iterations"—the bible and pilot being the first iteration, and the JellyJam characters being the second iteration—"retain core characteristics and traits." *SAC* ¶ 158; *Opp*. 16.

Defendants begin by arguing that Plaintiffs are not even the copyright owners of the second generation characters; JellyJam is. *Mot*. 4. Plaintiffs assert that JellyJam is simply "another company owned by Ms. Daniels," and as owner of the copyright in the original characters, she retains certain rights to the JellyJam characters as well. *Opp*. 16; *see also Towle*, 802 F.3d at 1023 ("The owner of the underlying work retains a copyright in that derivative work with respect to all elements that the derivative creator drew from the underlying and employed in the derivative work."). Defendants also argue that it is "misleading and impermissible" for Plaintiffs to allege copyright infringement of JellyJam's products, which were developed *after Inside Out*. *Mot*. 7. Neither of Defendants' arguments are relevant, however, because Plaintiffs are not alleging that Defendants infringed the JellyJam characters. Rather, they present the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

second generation characters as evidence that traits and attributes which appeared in the 2005 bible and 2007 pilot have persisted over time, in additional works and media (the second generation), and "continue to this day." *SAC* ¶ 156; *Opp*. 10.

Plaintiffs assert that the second generation characters bolster their claim that *The Moodsters* are instantly "recognizable wherever they appear," because their traits "have persisted from creation through—and beyond—the pilot episode in 2007." *SAC* ¶ 243. The second generation characters, however, undermine that very argument. In its prior Order, the Court noted that the (first generation) characters' names had not even remained constant from the bible to the pilot. *See Order* at 7?8. The JellyJam characters *again* have new names, constituting the third set of names in as many iterations. *See SAC* ¶¶ 57; *Mot*. 3.[1] The fear character, for instance, began as Shake in the bible and became Scootz in the pilot; in the JellyJam products, he is called Quigly. *SAC* ¶ 57; *Mot*. 3. Additionally, the first generation of Moodsters lived in a world called Moodsterville, which had its own geographic landmarks and destinations, while the new characters live in a magician's top hat under a child's bed. *Mot*. 3. The characters are now "mood detectives" and "little detectives," and wear detective hats and capelettes. *Id*. 3; *SAC* ¶ 156.

In addition to these basic biographical changes, the second generation characters bear little *physical* resemblance to the first. The first set of characters have an alien- or insect-like appearance, with elaborate antennae and eyes, and sometimes horns, sitting atop their heads. *See SAC* ¶ 53. They are very thin with large, furry feet, and arms that reach nearly to the ground. *See id*. The JellyJam characters have a wholly different look. They are plump and round, with traditional placement of the eyes in the face. They have no antennae or horns; they wear glasses, hats, and costumes. *See id*. ¶ 156. They have regularly-proportioned arms, hands, and feet. *See id*. Their hands are now humanoid, while their feet are no longer covered in large fur tufts. *See id*. They have a soft, teddy-bear-like shape and appearance, unlike the bug or alien-like appearance of the first characters. Only each character's color is the same as in the first generation of characters. *See id*. ¶¶ 53, 156.

---

[1] Defendants request that the Court take judicial notice of the "Meet the Moodsters" storybook in which the second generation characters are described. *See* Dkt. # 56, *Request for Judicial Notice*, Ex. C. Plaintiffs do not object. *See* Dkt. # 60, *Plaintiffs' Opposition to Disney's Request for Judicial Notice* at 3. The storybook is also referenced in the complaint. *See SAC* ¶¶ 156, 194. Defendants' request for judicial notice of the "Meet the Moodsters" Storybook is therefore **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

Characters that courts *have* found sufficiently delineated despite changes in appearance over time include James Bond and Godzilla. The Ninth Circuit explained,

> The character "James Bond" qualifies for copyright protection because, no matter what the actor who portrays this character looks like, James Bond always maintains his "cold-bloodedness; his overt sexuality; his love of martinis 'shaken, not stirred;' his marksmanship; his 'license to kill' and use of guns; his physical strength; [and] his sophistication." Similarly, while the character "Godzilla" may have a different appearance from time to time, it is entitled to copyright protection because it "is always a pre-historic, fire-breathing, gigantic dinosaur alive and well in the modern world."

*Towle*, 802 F.3d at 1020.

The Court is unpersuaded that the second generation Moodsters could be "widely" or "instantly" recognized as being the same characters as those in the bible and pilot despite their wholesale changes in appearance. The inclusion in the amended complaint of the second generation characters undermines Plaintiffs' argument; it demonstrates that the majority of the characters' traits, including such basic qualities as their names, are fluid. The underlying traits that remain the same do not give rise to the instant recognition enjoyed by James Bond or Godzilla.

Plaintiffs further argue that if this second generation of characters is "relevant to the copyrightability of *The Moodsters*," it would confirm that copyright arose in 2005 when the original characters were "sufficiently fixed." *Opp*. 16. Where character traits change or develop over time, however, courts look to when the character first "displayed *consistent, widely identifiable* traits" and "attributes [that are] *consistently* portrayed" to assess when copyright arose. *Fleisher Studios, Inc. v. A.V.E.L.A., Inc.*, 772 F. Supp. 2d 1135, 1147 (C.D. Cal. 2008) (emphasis added). Therefore, even if the second generation characters *did* render *The Moodsters* characters distinctive enough for independent copyrightability, the characters would become protectable at the point when they displayed consistent, widely identifiable traits—in other words, when the second generation characters were developed. As Defendants note, "it would not have retroactive effect to make the 'first generation' characters independently protectable *at the time of the alleged copying*." *Reply* 6 (emphasis added). A derivative work is "independent of, and does not affect or enlarge the scope . . . of, any copyright protection in the preexisting material." 17 U.S.C. § 103(b). The Court agrees that even if the second generation characters "could have helped the Moodsters cross the threshold into independent copyrightability," *Reply* 6, the first generation characters, who had not yet demonstrated consistent, widely identifiable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

traits, would not retroactively become protectable—and thus would not have been subject to copyright at the time of the alleged infringement.

> ii. *Especially Distinctive: Development Process*

Plaintiffs have also added facts surrounding the development of the characters, which Plaintiffs point to as evidence that the characters are especially distinctive. The Court begins by noting that the specific traits and attributes of each character, which the Court in its prior Order found were *not* especially distinctive—and thus did not meet the third element of the test—remain the same from the first to the second amended complaint. *Compare, e.g.*, FAC ¶¶ 168, 169, 170 *with* SAC ¶¶ 199, 200, 205 (describing the Happy character), and *FAC* ¶¶ 182, 183, 184 *with* SAC ¶¶ 236, 237, 242 (describing the Sadness character). Plaintiffs allege that development of *The Moodsters* characters was aided by emotional intelligence experts who advised Plaintiffs "about the script and attributes and traits of the characters, including suggesting facial expressions and dialogue for particular characters based on their review and interpretation of scientific research on emotions." *SAC* ¶¶ 147, 209, 246, 283, 310. Plaintiffs also used "focus groups with children and their parents," led by "leading professors at Yale University," in developing the characters. *Id*. ¶¶ 146, 148, 210, 247, 284, 320. The children "understood, recognized, and enjoyed the characters," and 96% of children polled liked the show. *Id*. ¶ 148. Moreover, the pilot "cost over a third of the $3.3 million invested in The Moodsters Co." *Id*. ¶ 146. Finally, Plaintiffs add that "[l]eading entertainment companies reviewed" *The Moodsters*, including PBS, Toys "R" Us, and Nickelodeon, and none of them remarked that the characters lacked detail. *Id*. ¶ 154.

Plaintiffs assert that these new facts are "objective evidence that the characters are not so lightly sketched." *Opp*. 9. The Court disagrees. None of the new contentions bear on the finished product: the characters that appeared in *The Moodsters* bible and pilot, which the Court has already considered. For instance, the Court has already noted that characters must be especially distinctive "vis-à-vis *other characters*, outside of the work in which they appear." *Order* at 8 (emphasis in original). That children in a focus group recognized the characters as distinct from one another (rather than from other characters outside of the pilot) is immaterial; similarly, that the children enjoyed the show or that their focus group was led by leading professors has no bearing on the Court's analysis of the characters themselves and how they were represented in the bible and pilot once Plaintiffs' extensive development process was complete.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

The Court in its prior Order assessed the distinctiveness of the characters and determined that they fell short of the Ninth Circuit's rigorous test for independent copyrightability. The process by which those characters were developed does not change the finished result.

The Court determines that Plaintiffs' amended complaint suffers from the same deficiencies as the first amended complaint, and the characters are not independently copyrightable. Plaintiffs have failed to meet both the second and third prongs of the Ninth Circuit's three-part test. Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' third, fourth, fifth, and sixth causes of action.

  B. <u>Claim Two: Ensemble of Characters</u>

Plaintiffs also include a claim for infringement of the ensemble of characters. *SAC* ¶ 135. Plaintiffs begin by devoting numerous paragraphs to detailing Disney's past efforts to protect their own copyrights, such as by lobbying for the "Mickey Mouse Protection Act," which extended the term of copyright protection, and noting that Disney "recognizes the importance of copyrights to its business," and "provides notice to the world that [the *Inside Out*] characters are protected by copyright." *Id*. ¶¶ 126, 124, 128. That "Disney-Pixar is famous for aggressively protecting its works—and specifically its animated characters—by copyright" has no bearing on the Court's analysis. *Id*. ¶ 125.

In its prior Order, the Court determined that "Plaintiffs have failed to advance an argument" as to how the ensemble of "lightly sketched" characters merits copyright protection. *Order* at 9. Plaintiffs now allege that *The Moodsters* ensemble of characters is independently copyrightable under either the Ninth Circuit's three-part test, or the "story being told" standard. *Id*. ¶ 140; *Opp*. 7, 12. They first argue that the three-part test is met because the "traits and attributes of the ensemble of Moodsters characters, as reflected in *The Moodsters* Bible and Pilot, sufficiently delineate these characters so that they are recognizable whenever they appear." *Id*. ¶ 143. Plaintiffs also allege that the characters are "unique" and "individual," and "no previously animated works featured a collection of five characters each represented by a single emotion." *Id*. ¶ 164. The "originality of these characters" renders them "especially distinctive." *Id*. Plaintiffs' amended complaint regarding the ensemble claim includes the same new contentions regarding the characters' development and the second generation characters to support their argument that the ensemble merits copyright protection under the Ninth Circuit test. The Court has already addressed the three-part test as to the individual characters, and agrees with Defendant that the characters are neither delineated nor distinctive "to a degree 'sufficient to afford copyright protection to a character taken alone,'" and thus as an ensemble, under the Ninth Circuit test.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

Plaintiffs next allege, in the alternative, that the ensemble is protectable as "the story being told" because "*The Moodsters only* exists because of *The Moodsters* characters." *Id.* ¶¶ 166?67. Defendants argue that there is no longer any such standard after *Towle*, which consolidated relevant precedent when it established the three-part test. *Mot.* 7. Plaintiffs disagree, countering that "courts have not hesitated to apply the [story being told] standard," and that Defendants therefore have offered "no substantive response" to Plaintiffs' "story being told" claim. *Opp.* 12. Defendants are correct, however, that the cases cited by Plaintiffs were decided *before Towle*, not after it; furthermore, in cases that dealt with visually depicted characters (rather than literary characters), "'the story being told test' [was] inapplicable." *Anderson v. Stallone,* No. 87–0592 WDKGX, 1989 WL 206431, at *6?7 (C.D. Cal. Apr. 25, 1989); *see also Metro-Goldwyn-Mayer, Inc. v. Am. Honda Motor Co.*, 900 F. Supp. 1287, 1295?96 (C.D. Cal. 1995) (questioning the continued viability of the story being told test as applied to graphic characters). As Defendants note, after *Towle*, copyright in graphically depicted characters "is available only 'for characters that are especially distinctive.' To meet this standard, a character must be 'sufficiently delineated' and display 'consistent, widely identifiable traits.'" *Towle*, 820 F. 3d at 1019 (quoting *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170 (9th Cir. 2003).

Because the Court has determined that Plaintiffs' characters, either individually or as an ensemble, do not meet this standard, it **GRANTS** Defendants' motion to dismiss Plaintiffs' second cause of action.

### IV. Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Because the Court has already granted Plaintiffs leave to amend their complaint and they have failed to alleviate the Court's concerns, the Court determines that amendment would be futile. Leave to amend is therefore **DENIED**.

### V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' second, third, fourth, fifth, and sixth causes of action. Plaintiffs' first cause of action has already

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-4527 PSG (SKx) | Date | May 9, 2018 |
|---|---|---|---|
| Title | Denise Daniels and The Moodsters Company v. The Walt Disney Company, et al | | |

been dismissed, but remains in the amended complaint to preserve it for appellate review. This order therefore closes the case.

**IT IS SO ORDERED.**